IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAVID A. DOWS, : | |
|                            Plaintiff : | |
| : | No. 04-341 Erie |
| v. : | Judge McLaughlin |
| : | |
| KATHERINE E. HOLTZINGER : | |
| CONNER, ESQ., Chairman : | Electronically Filed Document |
| PENNSYLVANIA CIVIL SERVICE : | |
| COMMISSION and JOHN DOE, : | |
| : | |
|                           Defendants : | |

**DEFENDANT'S BREIF IN SUPPORT OF THE MOTION
FOR SUMMARY JUDGMENT**

**STATEMENT OF THE CASE**

David A. Dows ("Plaintiff") filed an Amended Complaint against Katherine E. Holtzinger Conner, the Pennsylvania Civil Service Commission ("Commission") and John Doe, alleging violations of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.* ("Title VII"), the Age Discrimination in Employment Act at 29 U.S.C. § 621 *et. seq.* ("ADEA"), 42 U.S.C. § 1983 and the Pennsylvania Human Relations Act ("PHRA"). Plaintiff alleged age and gender discrimination, as well as retaliation, and sought compensatory and punitive damages, as well as injunctive relief and attorneys fees.

Defendants filed a Motion to Partially Dismiss the Amended Complaint. After briefing and argument, the Court issued an Order dated July 5, 2005, dismissing all claims except a Title VII claim against the Commission and permitting Plaintiff additional time to file an amended complaint to plead with requisite specificity a Fourteenth Amendment equal protection claim. (Docket Entry #s 9, 10).

Plaintiff filed a Second Amended Complaint against only the Pennsylvania Civil Service Commission and John Doe defendants alleging age and gender discrimination in violation of Title VII and the ADEA against the Commission, and a Fourteenth Amendment claim pursuant to 42 U.S.C. § 1983 against the John Doe defendants. Plaintiff sought compensatory and punitive damages, as well as injunctive relief and attorneys fees.[1] Defendant filed an Answer to the Second Amended Complaint, discovery has been completed and the Commission has filed a Motion for Summary Judgment. This Brief is submitted in support of that motion.

## STATEMENT OF RELEVANT FACTS

The facts relevant to the Motion for Summary Judgment can be found in the Statement of Undisputed Material Facts filed with the Motion and Brief.

## QUESTIONS PRESENTED

    I.    **WHETHER, AS A MATTER OF LAW, PLAINTIFF FAILS TO STATE ANY CLAIM FOR RELIEF PURSUANT TO TITLE VII?**

    II.    **WHETHER PLAINTIFF FAILS TO STATE A CLAIM PURSUANT TO 42 U.S.C. § 1983?**

---

[1] Although Plaintiff has alleged violations of the law by John Doe Defendants he has not identified any John Doe defendants nor has he amended his Complaint as of this date to identify any John Doe defendants.

**ARGUMENT**

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); Jalil v. Advel Corp., 873 F.2d 701, 706 (3d Cir. 1989), *cert. denied*, 110 S.Ct. 724 (1990). The party moving for summary judgment has the burden of demonstrating the absence of genuine issues of fact, with all reasonable inferences drawn from the record in favor of the non-moving party. Jalil, 873 F.2d at 706; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

If the non-moving party has the burden of persuasion at trial, "the party moving for summary judgment may meet its burden of showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial." Jalil, 873 F.2d at 706 (emphasis added), quoting Chipollino v. Spencer Gifts, Inc., 814 F.2d 893, 896 (3d Cir.1987), *cert. dismissed*, 483 U.S. 1052 (1987). Thus, the moving party is entitled to judgment as a matter of law if the non-moving party fails to establish the existence of a genuine issue on an essential element of his case on which he has the burden of proof at trial. Radich v. Goode, 886 F.2d 1391, 1395 (3d Cir. 1989), citing Celotex Corp. v. Catrett, 477 U.S. 317 (1986).

Applying these standards, it is clear that Plaintiff has not and cannot establish the existence of a genuine issue of fact concerning any of his claims. Also, as a matter of law, Plaintiff cannot meet his burden of proving all essential elements of each of his claims. Therefore, Defendant is entitled to summary judgment as a matter of law.

### I. AS A MATTER OF LAW, PLAINTIFF FAILS TO STATE ANY CLAIM FOR RELIEF PURSUANT TO TITLE VII.

Plaintiff alleges that the Commission discriminated against him in violation of Title VII.[2] It is not clear to the Commission from the Second Amended Complaint just how Plaintiff believes the Commission discriminated against him or under what theory he brings his claim. However, based upon Plaintiff's request for relief on pages 8-9 of the Second Amended Complaint, which seeks declaratory relief in the form of the Court holding that the Commission's maintenance of dual lists and provision of names from an intern list negatively impacts upon Plaintiff as a male, and the request injunctive relief seeking an end to the Commission's maintenance of this alleged dual list system and provision of these lists to Offices of Children and Youth in the Commonwealth, the Commission will assume that Plaintiff's claim is one of disparate impact pursuant to Title VII alleging that the supposed "dual list" system that the Commission allegedly maintains results in gender discrimination.

Furthermore the Commission will also proceed on the assumption that Plaintiff is alleging that it discriminated against him as an employment agency, not as an employer, under Title VII.[3] Plaintiff is not an employee of the Commission and has never been an employee of the Commission. (Facts at ¶ 21). However, Plaintiff has applied for and taken several civil service exams, and has passed those exams and has been placed on lists of eligible candidates for

---

[2] Plaintiff also appears to continue to allege a violation of the ADEA. However, the Court previously dismissed Plaintiff's ADEA claim in its Order dated July 5, 2005, (Docket #s 9, 10). Second, the United States Supreme Court in <u>Kimel v. Florida Bd. of Regents</u>, 528 U.S. 62, 67 (2000) has concluded that the ADEA does not validly abrogate states' Eleventh Amendment immunity from suit by private individuals in the Federal Courts. Therefore, any claim Plaintiff may arguably have pled against the Commission in the Second Amended Complaint pursuant to the ADEA is jurisdictionally barred and must again be dismissed.

[3] For purposes of this motion for summary judgment the Commission will concede that it is an employment agency within the definition provided at Section 2000e of Title VII. 42 U.S.C. §2000e.

County Caseworker 1 and 2 positions in Erie and Crawford counties, which lists are or were maintained by the Commission and are provided to appointing authorities upon request. (Facts at ¶¶ 1, 2, 3, 22, 23, 24, 25). Because the Commission is not and has never been Plaintiff's employer, but instead Petitioner has utilized the Commission and the Civil Service process to gain civil service employment, the section of Title VII governing employment agency practices is applicable in this case.[4]

Under a disparate impact theory, liability is established when a facially neutral policy affects members of a protected class in a significantly discriminatory manner. Healy v. Southwood Psychiatric Hospital, 78 F.3d 128, 131 (3d Cir. 1996), citing Dothard v. Rawlinson, 433 U.S. 321, 329 (1977). To prevail on a disparate impact claim, a plaintiff must first establish a prima facie case by demonstrating that application of a facially neutral standard has resulted in a significantly discriminatory hiring pattern. Lanning v. SETPA, 181 F.3d 478, 485 (3d Cir. 1999) and 42 U.S.C. § 20003-2(k). Once a plaintiff establishes a prima facie case, the burden shifts to defendant to show that the practice is consistent with business necessity. Id. at 485 and 42 U.S.C. § 20003-2(k). In this instance Plaintiff must show that a facially neutral standard of the Commission has resulted in the alleged gender discrimination.

Plaintiff's claims are based on several faulty "facts" or assumptions. First, Plaintiff appears to believe that the Commission maintains a "dual list" system of referring candidates for Caseworker 2 positions at County Offices of Children and Youth Offices. This is not true.

---

[4] The relevant statute reads:

(b) Employment agency practices - It shall be an unlawful employment practice for an employment agency to fail or refuse to refer for employment, or otherwise to discriminate against, any individual because of his race, color, religion, sex, or national origin, or to classify or refer for employment any individual on the basis of his race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(b).

Second, he seems to believe that he was not being referred by the Commission to Erie County Office of Children and Youth for Caseworker positions. Again, this is also not true. The following facts set forth Plaintiff's interaction with the Commission during the time frame relevant to this litigation and how the Commission fulfills its duties as an "employment agency".

It is the Commission's responsibility to accept applications from candidates for government positions, examine the candidates, score the examinations and place the names of persons who have passed the examinations on civil service lists of eligibles which are then provided, upon request, to any agency or appointing authority seeking to fill a job in the classified service. (Facts at ¶ 2). These lists are provided upon request to the agency, expire within sixty (60) days after they are provided, and may be returned unused if no position is filled from that list. (Facts at ¶ 3). If an agency fills a position from a requested list, the agency must return the list with information added to indicate who was contacted, how they responded and who was selected to fill the position. The Commission will then review the list to ensure that the selection was made appropriately and in accordance with the Civil Service Act and the Commission's rules and regulations. (Facts at ¶4).

County Social Caseworker job titles, which are at issue in this case, are civil service covered positions and Erie County is obligated to hire caseworkers through an appropriate Civil Service process. (Facts at ¶ 5). The Commission maintains eligibility lists for the following four positions that are relevant to this litigation: County Social Casework Intern, County Caseworker 1, County Caseworker 2 and County Caseworker 3 positions. (Facts at ¶ 6).[5]

---

[5] By regulation, the Commission is required to keep multiple lists as an eligible list shall be composed of as many lists as necessary to meet employment needs in locations where the jobs are available. 4 Pa. Code § 97.1.

With regard to county Social Casework Intern positions, Management Directive 580.38, Amended, Use of Intern Job Titles in the Classified Service, Section 5(c) provides that the Commission "shall recruit and examine candidates and establish employment lists for interns pursuant to Section 506 of the Civil Service Act." (Facts at ¶ 7).[6] The listed objectives are as follows: a) to provide an intensive training and work experience period for selected college students who are interested in a career in state government; b) to promote interns who successfully complete the training and work experience period to a trainee or working level job title; c) to advise interns that they will be eligible to return to state government employment upon successful completion of their collegiate studies; and d) to attract students with high potential for government work in the appropriate field and to supplement, not replace, existing efforts to recruit college graduates. (Facts at ¶ 8). Along with County Social Casework Intern, the intern job titles include Information Technology Intern, Accounting Intern, Engineering Intern and Vocational Rehabilitation Counselor Intern. (Facts at ¶ 9).

The County Social Casework Intern class originated in October 1988 and is coded as L0618. (Facts at ¶ 10). The County Social Casework Intern program, as well as the other intern programs, are in place to assist in recruitment and training of colleges students with the expectation that they will assume positions upon graduation as local government agencies in Pennsylvania experience difficulty in recruiting and retaining employees for these difficult to fill positions. (Facts at ¶ 11).

---

[6] Pennsylvania law holds that numbered management directives such as Management Directive 580.38, announcing detailed policies, responsibilities and procedures that are relatively permanent in nature and which have been signed by the head of any commission under the Governor's jurisdiction have the force of law when they are based upon authority or duty conferred by constitution, statute or regulation. Cambria County Mental Health/Mental Retardation v. Pennsylvania State Civil Service Commission (Cotton), 756 a.2d 103, 107 (Pa. Cmwlth. 2000).

7

The County Social Casework Intern list is comprised of full-time college students with junior or senior standing in an accredited undergraduate bachelor's degree program in sociology, social welfare, psychology, gerontology or other related social sciences, who have completed the first semester of their junior year (or 75 credits) and have satisfactorily completed fifteen (15) credits in one of the major fields of study. (Facts at ¶ 12). County Social Casework Intern applicant's tests/applications are scored and they are ranked by experience and training as permitted by Section 502 of the Civil Service Act. (Facts at ¶ 13). Contrary to Plaintiff's belief, individuals on the County Social Casework Intern list are only eligible to be hired into student intern positions and these intern lists are not used by Erie County Office of Children and Youth ("OCY") in place of Caseworker 1, 2 or 3 lists to hire Caseworker 1, 2 or 3s. (Facts at ¶ 14). Student interns are hired by Erie County OCY over and above the normal complement of Caseworkers employed by OCY and the student interns are paid either by the Erie County OCY or by the state through a CWEB program. (Facts at ¶ 15). However, a Social Casework Intern who successfully completes a six-month internship program in a local government agency, such as Erie County OCY, and has received a bachelor's degree, is then eligible for promotion by means of position reclassification to a position as a County Caseworker 2 or an Aging Care Manager 2. (Facts at ¶ 16). A County Caseworker 1 is also eligible for promotion to a Caseworker 2 position after six 96) months of experience as a Caseworker 1. (Facts at ¶19).

The County Social Caseworker 1, 2 and 3 lists are comprised of individuals who have met the minimum requirements for the positions, who have taken and passed the civil service exam and are then ranked by examination. (Facts at ¶¶ 17, 18). Applicants for County Caseworker 2 positions who have not participated in and completed the six-month internship program or who are not promoted from a Caseworker 1 position, must meet minimum

8

experience and training requirements and pass a written examination for appointment to the position.  (Facts at ¶ 19).

Plaintiff applied for, took the civil service exams, passed the exams and was placed on the Civil Service Commission's lists of eligibles for County Caseworker 1 and 2 positions in Erie and Crawford Counties.  (Facts at ¶¶ 22, 23, 25).  Plaintiff is a veteran and had, at all times relevant to this litigation, the highest final earned rating of Erie County residents on the County Caseworker 1 list and the second highest final earned rating on the County Caseworker 2 eligibles lists.  (Facts at ¶ 24).

The Civil Service employment application asks applicants to indicate all types of employment for which they are available, (full-time, part-time, limited term and/or temporary). Applicants can elect as many of these categories as they wish and they can also contact the Commission at any time and make changes to their availability selections.  (Facts at ¶ 26). Plaintiff had only made himself available for full-time employment and never changed his availability during the time at issue in this litigation.  (Facts at ¶ 27).

Without the knowledge or consent of the Commission, Erie County appointed Plaintiff to a Caseworker position on August 4, 2003 as a "per diem" worker, without the benefit of a certification of eligibles.  (Facts at ¶ 28 ).  Plaintiff was subsequently terminated from this position on October 10, 2003.  (Facts at ¶ 29).  In the meantime, on September 24, 2003, Erie County requested a County Caseworker 1 part-time certification list for part-time appointments. (Facts at ¶ 30).  Plaintiff's name did not appear on this certification because he had not indicated that he was interested in or available for part-time employment.  (Facts at ¶ 31).  Two Erie County residents were appointed from this Certification, Karen Dabrowski, effective November 10, 2003 and Kimberly Warchol, effective December 24, 2003.  (Facts at ¶ 32).  The

Commission then became aware that on or about January 30, 2004, Ms. Warchol was notified that the position in which she was hired part-time would become permanent full-time position effective February 17, 2004. (Facts at ¶ 33).

On October 28, 2003, Erie County requested a County Caseworker 2 certification of eligibles for a full-time, substitute appointment. Plaintiff was the highest rated candidate on the certification and the only county resident veteran. To the Commission's knowledge, the eligibles on this list were not contacted, no appointments were made and the certification was returned unused to the Commission on November 3, 2003. (Facts at ¶¶ 34). On October 29, 2003, Erie County requested a County Caseworker 2 certification of eligibles for part-time, substitute appointment. Plaintiff's name did not appear on this certification because he had not indicated that he was interested in or available for part-time employment. (Facts at ¶ 35). Erie County resident Tina Trohoske was appointed to the part-time position, as she had changed her availability for employment to add part-time on October 8, 2003. The Commission later learned that she was moved to a permanent full-time caseworker position on February 9, 2004. (Facts at ¶ 36). Erie County did not request any lists of eligibles from the Commission in December 2003. (Facts at ¶ 37).

In November 2003, the Commission, through employee Steve Shartle, learned of Plaintiff's "per diem" appointment to a caseworker position and his subsequent termination by OCY Erie County and a review of the Commission's records revealed that the appointment and termination actions were never reported to the Commission by Erie County OCY. (Facts at ¶¶ 38, 39). The Commission was advised by an Erie County human resources person, Patrice Berchtold, that "per diem" hires were made without Civil Service certification and without notification to the Commission to determine if the candidate's performance warranted permanent

10

employment from the certification of eligibles. (Facts at ¶ 40). This employment practice as described was inconsistent with all civil service hiring regulations and procedures and an on-site audit of Erie County was conducted by Commission staff in February 2004. (Facts at ¶ 41).

In the meantime, the Commission had received a Request for Removal of Eligible pursuant to Management Directive 580.34, as amended, for David Dows from Erie County on February 23, 2004. The request asked to have Plaintiff's name removed from all certification lists issued to Erie County for a position as either a County Caseworker 1 or County Caseworker 2. (Facts at ¶¶ 42, 43). Erie County's justification for the request included a reference to Plaintiff's previous employment as an "emergency per diem County Caseworker from 8/4/03 to 10/10/02." (Facts at ¶ 44).[7] During the pendency of a list removal request review, the individual that is being requested to be removed remains on the list of eligibles. (Facts at ¶ 46). If the requesting agency then makes any appointments from a list on which the individual they seek to remove remains, it is up to the agency requesting the removal to choose whether they want to pass over that individual's name pending its removal and appoint another eligible, or not fill the vacant position until after the request is decided. (Facts at ¶ 47). However, if the list removal request is denied and an appointment or appointments have been made not choosing that individual, the Commission will order that the individual passed over because of a pending list removal request be provided a remedy consistent with Commission Management Directives, which may include being hired. (Facts at ¶ 48).

Erie County had been made aware by a Commission employee, Steven Shartle, that if Plaintiff's name appeared on a list of eligibles during the list removal process and that others

---

[7] Consistent with Management Directive 580.34, a copy of the agency's request to remove his name was forwarded to Plaintiff for response and Plaintiff did respond to the request asking that the request be denied. (Facts at ¶ 45).

11

were hired instead of Plaintiff, that if Plaintiff's name was not then removed from the list that there would be consequences and he would then have to be hired. (Facts at ¶ 49). During the pendency of the list removal request for Plaintiff Dows, his name remained on the Caseworker 2 list. (Facts at ¶ 50).[8]

On April 23, 2004, after the investigation was completed and after reviewing the report, the Commission denied the request to have Plaintiff's name removed from the certification lists issued to OCY Erie County and it issued an order directing that Plaintiff's name remain on the list for an extended period of time to compensate him for the time that his name was essentially deactivated while the request for his removal was pending. (Facts at ¶ 53). The Commission subsequently learned that Plaintiff had been passed over for appointment to a position of Caseworker 2 in Erie County when two (2) selections were made of certification # 02615 on April 19, 2004. Upon learning this, the Commission rescinded its previous order of April 23,

---

[8] Action on the list removal request was deferred by the Commission and the Bureau of Audit and Technical Services ("BATS") within the Commission undertook an investigation into the facts and circumstances of Plaintiff's employment with OCY Erie County. (Facts at ¶ 51).

The Commission also ordered a civil service hearing under Section 951(d) of the Civil Service Act, 71 P.S. § 741.951(d), which permits the Commission to investigate, on its own motion, any personnel action that takes place within the classified service. The purpose of the hearing would be to have OCY Erie County explain its unusual hiring practices, including the hiring of "per diem" employees into non-civil service positions and of converting part-time employees to full-time employees shortly after they are hired. (Facts at ¶ 52).

On November 23, 2004, the Civil Service Commission issued an adjudication regarding OCY Erie County's hiring and promotion practices and concluded that OCY Erie County had made appointments to civil service positions without the use of eligibility lists as required by law, that it failed to promptly report appointments or changes in positions as required by Commission rules, and that it promoted employees to positions without following the law and procedures. (Facts at ¶ 60).

2004 and issued a new order dated May 4, 2004, which directed that Plaintiff should be promptly offered an equivalent position as a County Caseworker 2 by OCY Erie County. (Facts at ¶ 54).[9]

Contrary to Plaintiff's beliefs or assumptions, the practice of local government agencies concerning hiring of caseworkers, and specifically Erie County, Local government agencies, including Erie County, do not predominately promote interns into Caseworker 2 positions. Local government agencies predominately hire County Caseworker 2s from the County Caseworker 2 eligibility list or by promoting Caseworkers 1s because there are just not enough individuals who have completed internships who are eligible to be reclassified into Caseworker 2 positions. (Facts at ¶ 61).

Statistics kept by the Commission from October 1, 2002 to September 30, 2004, show that 176 County Social Casework Interns were appointed across the state and thus, could have been eligible for appointment as a County Caseworker 2 upon successful completion of the internship and upon graduation. (Facts at ¶ 62). However, just because they could have been appointed does not mean these individuals were appointed. During that same period from October 1, 2002 to September 30, 2004, 438 County Caseworker 2s were actually appointed across the state from the lists of those who passed the examination for the position. Those lists did not include County Social Casework Interns. (Facts at ¶ 63). Clearly, many more

---

[9] On June 1, 2004, Plaintiff was appointed as a County Caseworker 2 by Erie County OCY in a probationary status as directed by the Commission. (Facts at ¶ 55). On January 28, 2004, Plaintiff had filed a charge of discrimination with the EEOC at Charge # 172-2004-00755 against the Erie County Office of Children ("OCY") and Youth alleging that OCY discriminated against him based upon age, sex and disability when he was discharged from OCY on October 10, 2003 and then denied another appointment in December 2003 to a Caseworker 2 position. (Facts at ¶ 56).As a part of the settlement during the mediation of this EEOC complaint against Erie County, Plaintiff resigned his position of Caseworker 2, to which he had been appointed in June 2004. (Facts at ¶ 57).

appointments were made from the Caseworker 2 lists, than could have been made by promotion from an Intern to a Caseworker 2 position as permitted by regulation. (Facts at ¶ 16).

Furthermore, there were more females than males on the County Social Casework Intern list of eligibles in the period between October 1, 2002 to September 30, 2004. Of the 176 County Social Casework Interns referenced above, 11.4% were male and 88.6% were female. (Facts at ¶ 64). There were also more females than males on the County Social Caseworkers 2 list of eligibles during that same time frame. Of the 438 County Caseworker 2s referenced above, 22.6% were male and 77.4% were female. (Facts at ¶ 65).

To put these numbers in an even broader perspective, as of November 2, 2004, there were 2,756 County Caseworker 2s employed in Pennsylvania with 527 or 19.1% of them being male and 2,229 or 80.9% of them being female. (Facts at ¶ 66). During this same period of time 608 County Caseworker 1s were appointed from the list of those who had passed the examination for that position with 25.3% being male and 74.7% being female. (Facts at ¶ 67).

These statistics kept by the Commission indicate that having multiple lists is not the reason there are more females than males in County Caseworker 2 positions, or any county caseworker position for that matter. The statistics show that there are simply more females than males in any County Caseworker position because there are simply more females applying for the positions, taking the civil service tests, passing those tests and getting their names placed on the lists of eligibles than there are males doing that very same thing.

Plaintiff has failed to meet his burden of proving disparate impact in this case. Plaintiff has not and cannot show that the Commission, as an employment agency, failed to or refused to refer him for employment as a county caseworker at all or even because he was male. In fact, Plaintiff was referred to Erie County OCY on those lists for which he had made himself available

14

for work during the time frame at issue here.  (Facts at ¶¶ 22, 23, 24, 25, 27, 30, 31, 34, 35, 50, 54).  Furthermore, after learning of the employment practices of Erie County OCY that were inconsistent with all civil service hiring regulations and procedures and after declining to remove Plaintiff's name from the lists of eligibles certified to Erie County OCY, the Commission ordered Erie County OCY to hire Plaintiff into a caseworker 2 position and it do so.  (Facts at ¶¶ 41, 53, 54, 55).  Plaintiff then voluntarily chose to settle litigation on an EEOC claim against Erie County OCY and give up his position as a caseworker.  ( Facts at ¶¶ 56, 57).

It is clear from the undisputed facts that the reasons that Plaintiff was either hired and then discharged from a caseworker position, or not hired and then directed to be hired by the Commission to a caseworker position, were not because of any policy or standard maintained by the Commission.  Instead, Plaintiff's long saga of being hired, fired, not hired and then directed to be rehired were all due to behavior of the Erie County OCY and not any policy, standard or rule of the Commission.

Furthermore, even if the Court could conclude that the Commission maintains some neutral standard or policy that results in more females being hired than males, such as the recruitment of interns and the maintenance of an intern list, this practice is consistent with business necessity.  The facts clearly demonstrate that county caseworker position are and have historically been difficult positions to fill and to keep qualified workers and effort is needed to attempt to find and keep qualified candidates for these positions. (Facts at ¶¶ 7, 8, 11).

For these reasons the Commission's motion for summary judgment as to Plaintiff's Title VII disparate impact claim based upon gender should be granted and Plaintiff's claims dismissed.

## II.   PLAINTIFF FAILS TO STATE ANY CLAIM FOR RELIEF PURSUANT TO 42 U.S.C. § 1983.

Plaintiff alleges a Fourteenth Amendment violation pursuant to 42 U.S.C. § 1983 against Defendant John Doe, presumably an employee of the Commission.  In order to state a claim for relief under Section 1983, Plaintiff must meet two threshold requirements:  1) the alleged misconduct must have been committed by a person acting under color of state law; and 2) Defendants' conduct must have deprived Plaintiff of rights, privileges or immunities secured by the Constitution of or laws of the United States.  Parratt v. Taylor, 451 U.S. 527, 535 (1982), Hicks v. Jeeney, 770 F.2d 375, 377 (3d Cir. 1985).  Plaintiff has failed to meet this threshold requirement.

Plaintiff has failed to name any alleged John Doe Defendant in any Amended Complaint as of this date.  A defendant in a Section 1983 Civil Rights action must have personal involvement in the alleged wrongdoing.  Rode v. Dellarciprete, 617 F.Supp. 721, 723 (M.D.Pa. 1985), *aff'd*, 845 F.2d 1195 (3d Cir. 1988), 845 F.2d at 1207.  Personal involvement can be shown through allegations of personal direction or actual knowledge and acquiescence.  Id. Plaintiff is required to indicate or show, via the complaint's allegations, what personal involvement each of the defendants had in each alleged violation of a constitutional right.  See Rode, 845 F.2d at 1207; Rizzo v. Goode, 423 U.S. 362 (1976) and Hampton v. Holmesburgh Prison Officials, 546 F.2d 1077 (3d Cir. 1976).  Plaintiff has not done so here by failing to name the John Doe defendant or defendants. Furthermore, Fed.R.Civ.P. 10(a) does not contemplate the use of a fictitious defendant.

Because Plaintiff has failed to specifically set forth in an Amended Complaint allegations of who the John Doe or Does might be nor has he specified any personal involvement in the

16

alleged violations of his civil rights, any claim under the Fourteenth Amendment pursuant to Section 1983 must be dismissed for failure to state a claim.

## **CONCLUSION**

Wherefore, as a matter of law for the reasons set forth in the arguments above, Defendant's motion for summary judgment should be granted and Plaintiff's Second Amended Complaint dismissed in its entirety.

                                              **Respectfully submitted,**

                                              **THOMAS W. CORBETT, JR.**

                                              **Attorney General**

                                **By:**     *s/ Linda S. Lloyd*
                                              **LINDA S. LLOYD**

**Office of Attorney General**                 **Senior Deputy Attorney General**
**15th Floor, Strawberry Square**             **Attorney ID 66720**
**Harrisburg, PA 17120**
**Phone: (717) 705-7327**                          **SUSAN J. FORNEY**
**Fax:   (717) 772-4526**                         **Chief Deputy Attorney General**
[llloyd@attorneygeneral.gov](mailto:llloyd@attorneygeneral.gov)                      **Chief, Civil Litigation Section**

**Date:  April 3, 2006**                               **Counsel for Defendant**

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DAVID A. DOWS,** | : | |
| Plaintiff | : | |
| | : | No. 04-341  Erie |
| v. | : | Judge McLaughlin |
| | : | |
| **KATHERINE E. HOLTZINGER CONNER, ESQ.**, Chairman **PENNSYLVANIA CIVIL SERVICE COMMISSION** and **JOHN DOE,** | : : : : | |
| | : | |
| Defendants | : | |

**CERTIFICATE OF SERVICE**

    I, Linda S. Lloyd, Senior Deputy Attorney General for the Commonwealth of Pennsylvania, Office of Attorney General, hereby certify that on April 3, 2006, I caused to be served a true and correct copy of the foregoing document titled Defendant's Brief in Support of the Motion for Summary Judgment by Electronic Filing to the following:

**William Taggart, Esquire
1400 Renaissance Centre
1001 State Street
Erie, PA  16501-1834**
*Counsel for Plaintiff*

                                                           s/ Linda S. Lloyd
                                                       **LINDA S. LLOYD**
                                                       Senior Deputy Attorney General