IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAVID A. DOWS, | : | |
| Plaintiff | : | |
| | : | No. 04-341  Erie |
| v. | : | Judge McLaughlin |
| | : | Electronically Filed Document |
| KATHERINE E. HOLTZINGER | : | |
| CONNER, ESQ., Chairman | : | |
| PENNSYLVANIA CIVIL SERVICE | : | |
| COMMISSION and JOHN DOE, | : | |
| | : | |
| Defendants | : | |

## STATEMENT OF UNDISPUTED MATERIAL FACTS

1.      The Pennsylvania Civil Service Commission is an independent State agency whose primary function is to ensure that persons are selected for state civil service and classified service jobs on the basis of merit and fitness.  (Exhibit 1 at ¶ 2).

2.      To accomplish this end, the Commission accepts applications from candidates for government positions, examines the candidates, scores the examinations and places the names of persons who have passed the examinations on civil service lists of eligibles which are then

provided, upon request, to any agency or appointing authority seeking to fill a job in the classified service.  (Exhibit 1 at ¶ 3).

3.     Lists are provided upon request to the appointing authority, expire within sixty (60) days after they are provided, and may be returned unused if no position is filled from that list.  (71 P.S. §§ 741.601 and 741.602; Exhibit 1 at ¶ 4).

4.     If a position is filled from a requested list, the agency must return the list with information added to indicate who was contacted, how they responded and who was selected to fill the position.  The Commission will then review the list to ensure that the selection was made appropriately and in accordance with the Civil Service Act and the Commission's rules and regulations.  (Exhibit 1 at ¶ 5).

5.     County Social Caseworker job titles are civil service covered positions and Erie County is obligated to hire caseworkers through an appropriate Civil Service process.  (Exhibit 1 at ¶ 6).

6.     The Commission maintains eligibility lists for the following four positions that are relevant to this litigation: County Social Casework Intern, County Caseworker 1, County Caseworker 2 and County Caseworker 3 positions.  (Exhibit 1 at ¶ 7).

7.     Management Directive 580.38, Amended, Use of Intern Job Titles in the Classified Service, Section 5(c) provides that the Commission "shall recruit and examine candidates and establish employment lists for interns pursuant to Section 506 of the Civil Service Act."  (Exhibit 1 at ¶¶ 8, 9; Exhibit 2).

8.     The listed objectives are as follows:  a) to provide an intensive training and work experience period for selected college students who are interested in a career in state government; b) to promote interns who successfully complete the training and work experience

period to a trainee or working level job title; c) to advise interns that they will be eligible to return to state government employment upon successful completion of their collegiate studies; and d) to attract students with high potential for government work in the appropriate field and to supplement, not replace, existing efforts to recruit college graduates.  (Exhibit 1 at ¶¶ 9, 10; Exhibit 2).

9.    Along with County Social Casework Intern, the intern job titles include Information Technology Intern, Accounting Intern, Engineering Intern and Vocational Rehabilitation Counselor Intern.  (Exhibit 1 at ¶¶ 9, 11 ; Exhibit 2).

10.    The County Social Casework Intern class originated in October 1988 and is coded as L0618.  (Exhibit 1 at ¶¶ 12, 13; Exhibit 25).

11.    The County Social Casework Intern program, as well as the other intern programs, are in place to assist in recruitment and training of colleges students with the expectation that they will assume positions upon graduation, as local government agencies in Pennsylvania experience difficulty in recruiting and retaining employees for these difficult to fill positions.  (Exhibit 7 at pgs. 26, 27, 40, 41; Exhibit 20 at pgs. 8, 9; Exhibit 22 at pgs. 50, 51).

12.    The County Social Casework Intern list is comprised of full-time college students with junior or senior standing in an accredited undergraduate bachelor's degree program in sociology, social welfare, psychology, gerontology or other related social sciences, who have completed the first semester of their junior year (or 75 credits) and have satisfactorily completed fifteen (15) credits in one of the major fields of study.  (Exhibit 1 at ¶ 14).

13.     County Social Casework Intern applicant's tests/applications are scored and they are ranked by experience and training as permitted by Section 502 of the Civil Service Act. (71 P.S. § 741.502; Exhibit 1 at ¶ 15).

14.     Individuals on the County Social Casework Intern list are only eligible to be hired into student intern positions and these intern lists are not used by Erie County Office of Children and Youth ("OCY") in place of Caseworker 1, 2 or 3 lists to hire Caseworker 1, 2 or 3s. (Exhibit 7 at pgs. 9, 16, 17, 86, 87).

15.     Student interns are hired by Erie County OCY over and above the normal complement of Caseworkers employed by OCY and the student interns are paid either by the Erie County OCY or by the state through a CWEB program. (Exhibit 7 at pg. 85; Exhibit 13 at pgs. 14, 15).

16.     A county Social Casework Intern who has successfully completed a six-month internship program in a local government agency, such as Erie County OCY, and received a bachelor's degree, is eligible for promotion by means of position reclassification to a position as a County Caseworker 2 or an Aging Care Manager 2. (Exhibit 1 at ¶¶ 16, 17, 18; Exhibit 4; Exhibit 24).

17.     The County Social Caseworker 1, 2 and 3 lists are comprised of individuals who have met the minimum requirements for the positions, who have taken and passed the civil service exam. (Exhibit 1 at ¶ 19).

18.     County Social Caseworkers 1, 2 and 3s are then ranked by examination scores. (Exhibit 1 at ¶ 20; Exhibit 4).

19.     Applicants for County Caseworker 2 positions who have not participated in and completed the six-month internship program or who are not promoted from a Caseworker 1

position, must meet minimum experience and training requirements and pass a written examination for appointment to the position.  (Exhibit 1 at ¶ 21; Exhibit 4).

20.     An appointing agency may ask the Civil Service Commission for any of these lists and may requests lists for only those individuals interested in full-time work, part-time work, temporary work, seasonal work or limited term work, at which time the list generated and provided would only list those interested in the category of work the appointing agency is seeking. (Exhibit 1 at ¶ 22; 71 P.S. §§ 601, 602).

21.     Plaintiff is not and never has been an employee of Defendant Pennsylvania Civil Service Commission.  (Exhibit 1 at ¶ 23).

22.     Plaintiff applied for, took the civil service exam, passed the exam and was placed on the Civil Service Commission's list of eligibles for County Caseworker 1 positions on November 12, 2002. (Exhibit 1 at ¶ 24).

23.     Plaintiff applied for, took the civil service exam, passed the exam and was placed on the Civil Service Commission's list of eligible for County Caseworker 2 positions on June 24, 2003. (Exhibit 1 at ¶ 25).

24.     Plaintiff is a veteran and had, at all times relevant to this litigation, the highest final earned rating of Erie County residents on the County Caseworker 1 list and the second highest final earned rating on the County Caseworker 2 list.  (Exhibit 1 at ¶ 26).

25.     Plaintiff stated his preference on his application for employment to be employed only in Erie and Crawford counties.  (Exhibit 5 at pgs. 36, 37; Exhibit 6).

26.     The Civil Service employment application also asks applicants to indicate all types of employment for which they are available, (full-time, part-time, limited term and/or temporary).

Applicants can elect as many of these categories as they wish and they can also contact the Commission at any time and make changes to their availability selections. (Exhibit 1 at ¶¶ 27, 28; Exhibit 6).

27.     Plaintiff had only made himself available for full-time employment and never changed his availability during the time at issue in this litigation. (Exhibit 5 at pg. 36; Exhibit 6).

28.     Without the knowledge or consent of the Commission, Erie County appointed Plaintiff to a Caseworker position on August 4, 2003 as a "per diem" worker, without the benefit of a certification or list of eligibles. (Exhibit 1 at ¶ 29; Exhibit 5 at pgs. 8, 9, 21 ).

29.     Plaintiff was subsequently terminated from this "per diem" caseworker position on October 10, 2003. (Exhibit 5 at pgs. 8, 10, 11, 21).

30.     In the meantime, on September 24, 2003, Erie County requested a County Caseworker 1 part-time certification list for part-time appointments. (Exhibit 1 at ¶¶ 30, 31; Exhibit 8).

31.     Plaintiff's name did not appear on this certification because he had not indicated that he was interested in or available for part-time employment. (Exhibit 1 at ¶¶ 31, 32; Exhibit 8).

32.     Two Erie County residents were appointed from this Certification, Karen Dabrowski, effective November 10, 2003 and Kimberly Warchol, effective December 24, 2003. (Exhibit 1 at ¶ 33).

33.     The Commission then became aware that on or about January 30, 2004, Ms. Warchol was notified that the position in which she was hired part-time would become a permanent full-time position effective February 17, 2004. (Exhibit 1 at ¶ 34).

34.     On October 28, 2003, Erie County requested a County Caseworker 2 certification of eligibles for a full-time, substitute appointment. Plaintiff was the highest rated candidate on the

certification and the only county resident veteran.  To the Commission's knowledge, the eligibles on this list were not contacted, no appointments were made and the certification was returned unused to the Commission on November 3, 2003.  (Exhibit 1 at ¶¶ 35, 36; Exhibit 9).

35.    On October 29, 2003, Erie County requested a County Caseworker 2 certification of eligibles for part-time, substitute appointment.  Plaintiff's name did not appear on this certification because he had not indicated that he was interested in or available for part-time employment.  (Exhibit 1 at ¶¶ 37, 38; Exhibit 10).

36.    Erie County resident Tina Trohoske was appointed to the part-time position, as she had changed her availability for employment to add part-time on October 8, 2003.  The Commission later learned that she was moved to a permanent full-time caseworker position on February 9, 2004.  (Exhibit 1 at ¶ 39).

37.    Erie County did not request any lists of eligibles from the Commission in December 2003.  (Exhibit 1 at ¶ 40).

38.    In November 2003, the Commission, through employee Steve Shartle, learned of Plaintiff's "per diem" appointment to a caseworker position and his subsequent termination by OCY Erie County.  (Exhibit 1 at ¶ 41).

39.    A review of the Commission's records revealed that the appointment and termination actions were never reported to the Commission by Erie County OCY.  (Exhibit 1 at ¶ 42; Exhibit 21 at pg. 34).

40.    The Commission was advised by an Erie County human resources person, Patrice Berchtold, that "per diem" hires were made without Civil Service certification and without

notification to the Commission to determine if the candidate's performance warranted permanent employment from the certification of eligibles.  (Exhibit 1 at ¶ 43; Exhibit 21 at pgs. 39, 40).

41.     This employment practice as described was inconsistent with all civil service hiring regulations and procedures and an on-site audit of Erie County was conducted by Commission staff in February 2004.  (Exhibit 1 at ¶ 44; Exhibit 20 at pg. 17; Exhibit 21 at pgs. 35-40).

42.     In the meantime, the Commission had received a Request for Removal of Eligible, David Dows, from Erie County on February 23, 2004.  The request asked to have Plaintiff's name removed from all certification lists issued to Erie County for a position as either a County Caseworker 1 or County Caseworker 2.  (Exhibit 1 at ¶¶ 45, 46; Exhibit 11).

43.     This request was made pursuant to management Directive 580.34, as amended, which describes the procedure an agency must follow when it seeks to have the name of an eligible removed from a civil service eligibles list for appointment to a position in a classified service. (Exhibit 1 at ¶¶ 47, 48; Exhibit 12).

44.     Erie County's justification for the request included a reference to Plaintiff's previous employment as an "emergency per diem County Caseworker from 8/4/03 to 10/10/02."  (Exhibit 1 at ¶¶ 46, 49; Exhibit 11).

45.     Consistent with Management Directive 580.34, a copy of the agency's request to remove his name was forwarded to  Plaintiff for response and Plaintiff did respond to the request asking that the request be denied.  (Exhibit 1 at ¶¶ 48, 50; Exhibit 5 at pgs. 48, 49; Exhibit 12).

46.     During the pendency of a list removal request review, the individual that is being requested to be removed remains on the list of eligibles.  (Exhibit 1 at ¶ 51; Exhibit 20 at pgs. 48-50).

47.     If the requesting agency then makes any appointments from a list on which the individual they seek to remove remains, it is up to the agency requesting the removal to choose whether they want to pass over that individual's name pending its removal and appoint another eligible or not fill the vacant position until after the request is decided.  (Exhibit 1 at ¶ 52; Exhibit 21 at pgs. 90-93).

48.     However, if the list removal request is denied and an appointment or appointments have been made not choosing that individual, the Commission will order that the individual passed over because of a pending list removal request be provided a remedy consistent with Commission Management Directives which may include being hired.  (Exhibit 1 at ¶¶ 48, 53; Exhibit 12).

49.     Erie County had been made aware by a Commission employee, Steven Shartle, that if Plaintiff's name appeared on a list of eligibles during the list removal process and that others were hired instead of Plaintiff, that if Plaintiff's name was not then removed from the list that there would be consequences and he would then have to be hired.  (Exhibit 13 at pgs. 41, 42).

50.     During the pendency of the list removal request for Plaintiff Dows, his name remained on the Caseworker 2 list.  (Exhibit 1 at ¶ 54; Exhibit 13 at pgs. 42, 43).

51.     Action on the list removal request was deferred by the Commission and the Bureau of Audit and Technical Services ("BATS") within the Commission undertook an investigation into the facts and circumstances of Plaintiff's employment with OCY Erie County.  (Exhibit 1 at ¶ 55).

52.     The Commission also ordered a civil service hearing under Section 951(d) of the Civil Service Act, 71 P.S. § 741.951(d), which permits the Commission to investigate, on its own

motion, any personnel action that takes place within the classified service. The purpose of the hearing would be to have OCY Erie County explain its unusual hiring practices, including the hiring of "per diem" employees into non-civil service positions and of converting part-time employees to full-time employees shortly after they are hired. (Exhibit 1 at ¶ 56).

53.     On April 23, 2004, after the investigation was completed and after reviewing the report, the Commission denied the request to have Plaintiff's name removed from the certification lists issued to OCY Erie County and it issued an order directing that Plaintiff's name remain on the list for an extended period of time to compensate him for the time that his name was essentially deactivated while the request for his removal was pending. (Exhibit 1 at ¶¶ 57, 58; Exhibit 14).

54.     The Commission subsequently learned that Plaintiff had been passed over for appointment to a position of Caseworker 2 in Erie County when two (2) selections were made from certification # 02615 on April 19, 2004. Upon learning this, the Commission rescinded its previous order of April 23, 2004 and issued a new order dated May 4, 2004, which directed that Plaintiff should be promptly offered an equivalent position as a County Caseworker 2 by OCY Erie County. (Exhibit 1 at ¶¶ 59, 60; Exhibit 15).

55.     Plaintiff was appointed as a County Caseworker 2 on June 1, 2004, in a probationary status as directed by the Commission. (Exhibit 5 at pgs. 21, 22).

56.     On January 28, 2004, Plaintiff had filed a charge of discrimination with the EEOC at Charge # 172-2004-00755 against the Erie County Office of Children ("OCY") and Youth alleging that OCY discriminated against him based upon age, sex and disability when he was discharged from OCY on October 10, 2003 and then denied another appointment in December 2003 to a Caseworker II position. (Exhibit 5 at pgs. 11-15; Exhibit 16).

57.     As a part of the settlement during the mediation of this EEOC complaint against Erie County, Plaintiff resigned his position of Caseworker 2, to which he had been appointed in June 2004.  (Exhibit 5 at pgs. 19, 20, 24).

58.     On April 28, 2004, Plaintiff filed a charge of discrimination with the EEOC at Charge # 172-2004-00756 alleging that the Commission discriminated against him on the basis of age, sex, and disability because it did not refer him for a Case Worker II position with the Erie County Office of Children and Youth and also because the Commission allows interns to be hired He received a right to sue letter for Charge # 172-2005-00221 dated August 30, 2004. (Exhibit 17).

59.     On December 10, 2004, Plaintiff filed a charge of discrimination with the EEOC at Charge # 172-2005-00221 alleging that the Commission discriminated against him on the basis of age and sex by maintaining two eligibility lists for civil service position of caseworker.  He received a right to sue letter for Charge # 172-2005-00221 dated March 3, 2005.  (Exhibit 18).

60.     On November 23, 2004, the Civil Service Commission issued an adjudication regarding OCY Erie County's hiring and promotion practices and concluded that OCY Erie County had made appointments to civil service positions without the use of eligibility lists as required by law, that it failed to promptly report appointments or changes in positions as required by Commission rules, and that it promoted employees to positions without following the law and procedures.  (Exhibit 1 at ¶¶ 61, 62; Exhibit 19).

61.     Local government agencies, including Erie County, do not predominately promote interns into Caseworker 2 positions.  Local government agencies predominately hire County Caseworker 2s from the County Caseworker 2 eligibility list or by promoting Caseworkers 1s because there

are just not enough individuals who have completed internships who are eligible to be reclassified into Caseworker 2 positions. (Exhibit 1 at ¶ 63; Exhibit 13 at pgs. 24, 39).

62.    From October 1, 2002 to September 30, 2004, 176 County Social Casework Interns were appointed across the state and thus, could have been eligible for appointment as a County Caseworker 2 upon successful completion of the internship and upon graduation. (Exhibit 1 at ¶¶ 64, 65; Exhibit 26).

63.    During that same period, 438 County Caseworker 2s were appointed across the state from the list of those who passed the examination for the position. This list does not include County Social Casework Interns. (Exhibit 1 at ¶¶ 66, 67; Exhibit 27).

64.    There are more females than males on the County Social Casework Interns on the list of eligibles. Of the 176 County Social Casework Interns referenced above, 11.4% were male and 88.6% were female. (Exhibit 1 at ¶¶ 68, 69; Exhibit 28).

65.    There are more females than males on the County Social Caseworkers 2 list of eligibles. Of the 438 County Caseworker 2s referenced above, 22.6% were male and 77.4% were female. (Exhibit 1 at ¶¶ 70, 71; Exhibit 29).

66.    As of November 2, 2004, there were 2,756 County Caseworker 2s employed in Pennsylvania with 527 or 19.1% of them being male and 2,229 or 80.9% of them being female. (Exhibit 1 ¶¶ 67, 72; Exhibit 27).

67.    During this same period of time 608 County Caseworker 1s were appointed from the list of those who had passed the examination for that position with 25.3% being male and 74.7% being female. (Exhibit 1 at ¶¶ 73, 74; Exhibit 30).

Respectfully submitted,

**THOMAS W. CORBETT, JR.**
**Attorney General**

By:     s/Linda S. Lloyd
_____

**Office of Attorney General**          **LINDA S. LLOYD**
**15th Floor, Strawberry Square**        **Senior Deputy Attorney General**
**Harrisburg, PA 17120**                 **Attorney ID 66720**
**Phone: (717) 705-7327**
**Fax:    (717) 772-4526**               **SUSAN J. FORNEY**
**llloyd@attorneygeneral.gov**           **Chief Deputy Attorney General**
                                          **Chief, Civil Litigation Section**

**Date:  April 3, 2006**                  **Counsel for Defendant**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DAVID A. DOWS,                    :

                   Plaintiff  :

                           :   No. 04-341  Erie

           v.              :   Judge McLaughlin

                           :

KATHERINE E. HOLTZINGER  :

CONNER, ESQ., Chairman     :

PENNSYLVANIA CIVIL SERVICE  :

COMMISSION and JOHN DOE,   :

                           :

              Defendants  :

## CERTIFICATE OF SERVICE

I, Linda S. Lloyd, Senior Deputy Attorney General for the Commonwealth of Pennsylvania, Office of Attorney General, hereby certify that on April 3, 2006, I caused to be served a true and correct copy of the foregoing document titled Statement of Undisputed Material Facts along with Supporting Documents by Electronic Filing to the following:

**William Taggart, Esquire**
**1400 Renaissance Centre**
**1001 State Street**
**Erie, PA  16501-1834**
*Counsel for Plaintiff*

                                                                  _____s/Linda S. Lloyd_____
                                                    **LINDA S. LLOYD**
                                                    Senior Deputy Attorney General