## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DAVID A. DOWS,** | : | |
| **Plaintiff** | : | |
| | : | **No. 04-341  Erie** |
| **v.** | : | **Judge McLaughlin** |
| | : | |
| **KATHERINE E. HOLTZINGER** | : | |
| **CONNER, ESQ., Chairman** | : | |
| **PENNSYLVANIA CIVIL** | : | |
| **SERVICE COMMISSION and** | : | |
| **JOHN DOE,** | : | |
| **Defendants** | : | |

## DECLARATION OF J. STEPHEN SHARTLE

I, J. STEPHEN SHARTLE, declare under the penalty of perjury in accordance with 28 U.S.C. §1746, that the following facts are true and correct based upon my personal knowledge, belief and experience, and the records of the Civil Service Commission.



EXHIBIT
1

1.    I am an employee of the Pennsylvania Civil Service Commission and I am currently the Director of the Bureau of Technical and Information Services within the Commission.

2.    The Pennsylvania Civil Service Commission is an independent State agency whose primary function is to ensure that persons are selected for state civil service and classified service jobs on the basis of merit and fitness.

3.    To accomplish this end, the Commission accepts applications from candidates for government positions, examines the candidates, scores the examinations and places the names of persons who have passed the examinations on civil service lists of eligibles which are then provided upon request to any agency or appointing authority seeking to fill a job in the classified service.

4.    Lists are provided upon request to the appointing authority, expire within sixty (60) days after they are provided, and may be returned unused if no position is filled from that list.

5.    If a position is filled from a requested list, the agency must return the list with information added to indicate who was contacted, how they responded and who was selected to fill the position. The Commission will then review the list to ensure that the selection was made appropriately and in accordance with the Civil Service Act and the Commission's rules and regulations.

6. County Social Caseworker job titles are civil service covered positions and Erie County is obligated to hire caseworkers through an appropriate Civil Service process.

7. The Commission maintains eligibility lists for the following four positions that are relevant to this litigation: County Social Casework Intern, County Caseworker 1, and County Caseworker 2 and County Caseworker 3 positions.

8. Management Directive 580.38, Amended, Use of Intern Job Titles in the Classified Service, Section 5(c) provides that the Commission "shall recruit and examine candidates and establish employment lists for interns pursuant to Section 506 of the Civil Service Act."

9. Exhibit 2 is a true and correct copy of Management Directive 580.38, Amended, maintained and followed by the Commission during the time frame relevant to this litigation.

10. The listed objectives are as follows: a) to provide an intensive training and work experience period for selected college students who are interested in a career in state government; b) to promote interns who successfully complete the training and work experience period to a trainee or working level job title; c) to advise interns that they will be eligible to return to state government employment upon successful completion of their collegiate studies; and d) to attract students with

3

high potential for government work in the appropriate field and to supplement, not replace, existing efforts to recruit college graduates.

11.    Along with County Social Casework Intern, the intern job titles include Information Technology Intern, Accounting Intern, Engineering Intern and Vocational Rehabilitation Counselor Intern.

12.    The County Social Casework Intern class originated in October 1988 and is coded as L0618.

13.    Exhibit 25 is a true and correct copy of the Evaluation Guide for the County Social Casework Intern class maintained and followed by the Commission during the time frame relevant to this litigation.

14.    The County Social Casework Intern list is comprised of full-time college students with junior or senior standing in an accredited undergraduate bachelor's degree program in sociology, social welfare, psychology, gerontology or other related social sciences, who have completed the first semester of their junior year (or 75 credits) and have satisfactorily completed fifteen (15) credits in one of the major fields of study.

15.    County Social casework intern applicants' tests/applications are scored and they are ranked by experience and training as permitted by Section 502 of the Civil Service Act.

16.    A county Social Casework Intern who has successfully completed a six-month internship program in a local government agency, such as Erie County OCY, and received a bachelor's degree, is eligible for promotion by means of position reclassification to a position as a County Caseworker 2 or an Aging Care Manager 2.

17.    Exhibit 4 is a true and correct copy of the Test Announcement for the County Caseworker 1, 2 and 3 positions, maintained and used by the Commission.

18.    Exhibit 24 is a true and correct copy of Management Directive 535.5 Amended, in place and maintained and used by the Commission during the time frame relevant to this litigation.

19.    The County Caseworker 1, 2 and 3 lists are comprised of individuals who have met the minimum requirements for the positions, who have taken and passed the civil service exam.

20.    County Caseworkers 1, 2 and 3s are then ranked by examination scores.

21.    Applicants for County Caseworker 2 positions who have not participated in and completed the six-month internship program or who are not promoted from a County Caseworker 1 position must meet minimum experience and training requirements and pass a written examination for appointment to the position.

22.    An appointing agency may ask the Civil Service Commission for any of these lists and may requests lists for only those individuals interested in full-time work, part-time work, temporary work, seasonal work or limited term work, at which time the list generated and provided would only list those interested in the category of work the appointing agency is seeking.

23.    Plaintiff is not and never has been an employee of Defendant Pennsylvania Civil Service Commission.

24.    Plaintiff applied for, took the civil service exam and passed the exam and was placed on the Civil Service Commission's list of eligibles for County Caseworker 1 positions on November 12, 2002.

25.    Plaintiff applied for, took the civil service exam and passed the exam and was placed on the Civil Service Commission's list of eligible for County Caseworker 2 positions on June 24, 2003.

26.    Plaintiff is a veteran and had, at all times relevant to this litigation, the highest final earned rating of Erie County residents on the County Caseworker 1 and the second highest final earned rating on the County Caseworker 2 eligibles lists.

27.    The Civil Service employment application also asks applicants to indicate all types of employment for which they are available, (full-time, part-time, limited

6

term and/or temporary). Applicants can elect as many of these categories as they wish and they can also contact the Commission at any time and make changes to their availability selections.

28.   Exhibit 6 is a true and correct copy of the Application filed by Plaintiff with the Commission relevant to this litigation.

29.   Without the knowledge or consent of the Commission, Erie County appointed Plaintiff to a Caseworker position on August 4, 2003 as a "per diem" worker, without the benefit of a certification of eligibles.

30.   In the meantime, on September 24, 2003, Erie County requested a County Caseworker I part-time certification list for part-time appointments.

31.   Exhibit 8 is a true and correct copy of the Certification of Eligibles requested by Erie County that was issued on September 24, 2003, as maintained by the Commission.

32.   Plaintiff's name did not appear on this certification because he had not indicated that he was interested in or available for part-time employment.

33.   Two Erie County residents were appointed from this Certification, Karen Dabrowski, effective November 10, 2003 and Kimberly Warchol, effective December 24, 2003.

7

34.    The Commission then became aware that on or about January 30, 2004, Ms. Warchol was notified that the position in which she was hired part-time would become permanent full-time position effective February 17, 2004.

35.    On October 28, 2003, Erie County requested a County Caseworker II certification of eligibles for a full-time, substitute appointment. Plaintiff was the highest rated candidate on the certification and the only county resident veteran. To the Commission's knowledge, the eligibles on this list were not contacted, no appointments were made and the certification was returned unused to the Commission on November 3, 2003.

36.    Exhibit 9 is a true and correct copy of the Certification of Eligibles requested by Erie County that was issued on October 28, 2003, as maintained by the Commission.

37.    On October 29, 2003, Erie County requested a County Caseworker 2 certification of eligibles for part-time, substitute appointment. Plaintiff's name did not appear on this certification because he had not indicated that he was interested in or available for part-time employment.

38.    Exhibit 10 is a true and correct copy of the Certification of Eligibles requested by Erie County that was issued on October 29, 2003, as maintained by the Commission.

8

39.    Erie County resident Tina Trohoske was appointed to the part-time position, as she had changed her availability for employment to add part-time on October 8, 2003. The Commission later learned that she was moved to a permanent full-time caseworker position on February 9, 2004.

40.    Erie County did not request any lists of eligibles from the Commission in December 2003.

41.    In November 2003, the Commission, through declarant Steve Shartle, learned of Plaintiff's "per diem" appointment to a caseworker position and his subsequent termination by OCY Erie County.

42.    A review of the Commission's records revealed that the appointment and termination actions were never reported to the Commission by Erie County OCY.

43.    The Commission was advised by an Erie County human resources person, Patrice Berchtold, that "per diem" hires were made without Civil Service certification and without notification to the Commission to determine if the candidate's performance warranted permanent employment from the certification of eligibles.

44.    This employment practice as described was inconsistent with all civil service hiring regulations and procedures and on on-site audit of Erie County was conducted by Commission staff in February 2004.

9

45.    In the meantime, the Commission had received a Request for Removal of Eligible, David Dows, from Erie County on February 23, 2004. The request asked to have Plaintiff's name removed from all certification lists issued to Erie County for a position as either a County Caseworker I or County Caseworker II.

46.    Exhibit 11 is a true and correct copy of the Request for Removal of Eligible, David Dows, received from Erie County and maintained in the records of the Commission.

47.    This request was made pursuant to management Directive 580.34, as amended, which describes the procedure an agency must follow when it seeks to have the name of an eligible removed from a civil service eligibles list for appointment to a position in a classified service.

48.    Exhibit 12 is a true and correct copy of Management Directive 580.34 Amended, in place and maintained and used by the Commission during the time frame relevant to this litigation.

49.    Erie County's justification for the request included a reference to Plaintiff's previous employment as an "emergency per diem County Caseworker from 8/4/03 to 10/10/02."

50. Consistent with Management Directive 580.34, a copy of the agency's request to remove his name was forwarded to Plaintiff for response and Plaintiff did respond to the request asking that the request be denied.

51. During the pendency of a list removal request review, the individual that is being requested to be removed remains on the list of eligibles.

52. If the requesting agency then makes any appointments from the list on which the individual they seek to remove remains, it is up to the agency requesting the removal to choose whether they want to pass over that individual's name pending its removal and appoint another eligible, or not fill the vacant position until after the request is decided.

53. However, if the list removal request is denied and an appointment or appointments have been made not choosing that individual, the Commission will order that the individual passed over because of a pending list removal request be provided a remedy consistent with the Commission's management directives, which may include being hired by that appointing authority.

54. During the pendency of the list removal request for Plaintiff Dows, his name remained on the Caseworker 2 list.

55. Action on the list removal request was deferred by the Commission and the Bureau of Audit and Technical Services ("BATS") within the Commission

11

undertook an investigation into the facts and circumstances of Plaintiff's employment with OCY Erie County.

56. The Commission also ordered a civil service hearing under Section 951(d) of the Civil Service Act, 71 P.S. § 741.951(d), which permits the Commission to investigate, on its own motion, any personnel action that takes place within the classified service. The purpose of the hearing would be to have OCY Erie County explain its unusual hiring practices, including the hiring of "per diem" employees into non-civil service positions and of converting part-time employees to full-time employees shortly after they are hired.

57. On April 23, 2004, after the investigation was completed and after reviewing the report, the Commission denied the request to have Plaintiff's name removed from the certification lists issued to OCY Erie County and it issued an order directing that Plaintiff's name remain on the list for an extended period of time to compensate him for the time that his name was essentially deactivated while the request for his removal was pending.

58. Exhibit 14 is a true and correct copy of the Order issued by the Commission on April 23, 2004, which is maintained in the Commission's records.

59. The Commission subsequently learned that Plaintiff had been passed over for appointment to a position of Caseworker II in Erie County when two (2)

12

selections were made of certification # 02615 on April 19, 2004. Upon learning this, the Commission rescinded its previous order of April 23, 2004 and issued a new order dated May 4, 2004, which directed that Plaintiff should be promptly offered an equivalent position as a County Caseworker II by OCY Erie County.

60.    Exhibit 15 is a true and correct copy of the Order issued by the Commission on May 4, 2004, which is maintained in the Commission's records.

61.    On November 23, 2004, the Civil Service Commission issued an adjudication regarding OCY Erie County's hiring and promotion practices and concluded that OCY Erie County had made appointments to civil service positions without the use of eligibility lists as required by law, that it failed to promptly report appointments or changes in positions as required by Commission rules, and that it promoted employees to positions without following the law and procedures.

62.    Exhibit 19 is a true and correct copy of the Adjudication issued by the Commission on November 23, 2004, which is maintained in the Commission's records.

63.    Local government agencies, including Erie County, do not predominately promote interns into Caseworker 2 positions. Local government agencies predominately hire County Caseworker 2s from the County Caseworker 2 eligibility list or by promoting from a County Caseworker 1 position because there

13

are just not enough individuals who have completed internships who are eligible to be reclassified into Caseworker 2 positions.

64.     From October 1, 2002 to September 30, 2004, 176 County Social Casework Interns were appointed across the state and thus, could have been eligible for appointment as a County Caseworker 2 upon successful completion of the internship and upon graduation.

65.     Exhibit 26 is a true and correct copy of a Commission data sheet, generated from information contained in the Commission's database at that time, indicating the number of County Social Casework Interns appointed across the state from October 1, 2002 through September 30, 2004.

66.     During that same period, 438 County Caseworker 2s were appointed across the state from the list of those who passed the examination for the position. This list does not include County Social Casework Interns.

67.     Exhibit 27 is a true and correct copy of a Commission date sheet, generated from information contained in the Commission's database at that time, indicating the number of County Caseworker 2 positions across the state that were filled between October 1, 2002 through September 30, 2004, from the list of those individuals that took the merit examination.

14

68.    There are more females than males on the County Social Casework Interns on the list of eligibles. Of the 176 County Social Casework Interns referenced above, 11.4% were male and 88.6% were female.

69.    Exhibit 28 is a true and correct copy of a Commission date sheet, generated from information contained in the Commission's database at that time, indicating the number of males versus females on the County Social Casework Intern List at Exhibit 26.

70.    There are more females than males on the County Social Caseworkers 2 list of eligibles.  Of the 438 County Caseworker 2s referenced above, 22.6% were male and 77.4% were female.

71.    Exhibit 29 is a true and correct copy of a Commission date sheet, generated from information contained in the Commission's database at that time, indicating the number of males versus females on the County Casework 2 List at Exhibit 27.

72.    As of November 2, 2004, there were 2,756 County Caseworker 2s employed in Pennsylvania with 527 or 19.1% of them being male and 2,229 or 80.9% of them being female.

73.    During this same period of time 608 County Caseworker 1s were appointed from the list of those who had passed the examination for that position with 25.3% being male and 74.7% being female.

74.    Exhibit 30 is a true and correct copy of a Commission date sheet, generated from information contained in the Commission's database at that time, indicating the number of County Caseworker 1s appointed from the list of those who had passed the examination broken down by gender.

_April 3, 2006_
    DATE

_Josephen Shartle_
    J. STEHPEN SHARTLE

# *MANAGEMENT DIRECTIVE*

580.38
Number

## COMMONWEALTH OF PENNSYLVANIA
## GOVERNOR'S OFFICE

Subject:

### Use of Intern Job Titles in the Classified Service

By Direction Of:

Ronald K. Rowe, Executive Director, State Civil Service Commission

Date:

**October 8, 2004**

> This directive contains policy and procedures for the selection and professional development of interns for entrance into state government career positions. Also, *Management Directives 515.17, Computer Systems Intern Program* dated August 29, 1989; *515.19, Accounting Intern Program* dated October 7, 1985; and *580.36, Engineering Intern Program* dated January 14, 1994, are rescinded by this directive.

**1. PURPOSE.** To establish policy and procedures for selecting interns in state government career positions.

**2. SCOPE.** Applies to all state agencies with classified service positions identified in *§ 3(d), Civil Service Act of August 5, 1941, P. L. 752,* as amended.

**3. OBJECTIVES.**

**a.** To provide an intensive training and work experience period for selected college students who are interested in a career in state government.

**b.** To promote interns who successfully complete the training and work experience period to a trainee or working level job title.

**c.** To advise interns that they will be eligible to return to state government employment upon successful completion of their collegiate studies.

**d.** To attract students with high potential for government work in the appropriate field and to supplement, not replace, existing efforts to recruit college graduates.



4. **POLICY.**

a. For all benefit purposes, interns shall be considered temporary and processed accordingly. Due to program intent and need for uniformity, the Engineering Intern and Engineering Technician Intern job titles will be excluded from the Leave and Holiday Program System (see *Manual M530.7, Leave and Holiday Programs*). No accumulation or use of annual, sick, or personal leave will be granted during the internship. Leave of absence without pay (LWOP) status shall be applied to intern leaves of absence. When successful interns return to permanent state government employment, their credited service time will be adjusted to reflect time worked as an intern for purposes of future leave accrual.

b. Interns must meet the minimum experience and training requirement, be appointed from an eligible list, and serve a minimum of a six-month probationary period.

c. Interns who satisfactorily perform their training and work experience and demonstrate dependability shall be placed on LWOP in probationary status when returning to college. Extension of the limited-term wage position will be considered to accommodate an intern's LWOP status. The length of the extension should coincide with the intern's anticipated graduation and return date.

d. Employing agencies will make every effort to return interns from LWOP. Appropriate contacts will be maintained with them following return to college and confirmation of job offers will be made in a timely manner. Agencies unable to confirm job offers must immediately notify the Human Resource Development Division (HRDD), OA. Other agencies will then be contacted by the HRDD so that job offers can be extended to interns.

e. To be eligible to be returned to state government employment after completing the six-month internship, the intern must have graduated from college, on a timely basis, with the minimum credits required for the job title.

f. Interns returned from LWOP shall be promoted to the appropriate job titles as identified in Enclosure 1.

g. Interns promoted to an entry level job title will be assigned regular civil service status. Interns promoted to a trainee job title will be assigned probationary civil service status. The combined intern/trainee probationary period may not exceed 24 months. Promotions from a trainee job title to the entry level job title will be with regular status. Employees will not attain regular status as an intern or a trainee.

h. **References.** *Sections 506, 602, 603, and 701 of the Civil Service Act; 4 Pennsylvania Code 97.3, 97.37, and 101.31; Management Directives 505.2, Salaried Complement Management System, 535.5, Use of Trainee Classes in the Classified Service, 580.2, Civil Service Availability Survey/Interview Notice, 580.8, Classified Service Probationary Periods, and 580.10, Rights of Certified Eligibles in the Classified Service; and Manuals M530.7, Leave and Holiday Programs, and M580.1, Certification of Eligibles for the Classified Service.*

5. **RESPONSIBILITIES.**

a. **Agencies** shall use the intern job title to train and develop college students for career employment in the appropriate field. **EXAMPLE:** Engineering Intern shall be trained and developed for an engineering career.

b. **Intern Applicants** shall meet the minimum experience and training requirements and:

(1) obtain written approval from their college to participate in the internship program and provide written proof that credit requirements have been met.

(2) be willing to temporarily relocate, if necessary, and adjust their curriculum to accommodate the internship period.

c. **The State Civil Service Commission (SCSC)** shall recruit and examine candidates and establish employment lists for interns pursuant to *Section 506 of the Civil Service Act.*

d. **The Office of Administration (OA)** shall:

(1) approve all limited-term wage positions for each internship.

(2) assist agency training officers by serving as a consultant on developing the Work-Training Plan (WTP) (see Enclosure 2).

6. **PROCEDURES.**

a. **SCSC.** Recruits, examines, and establishes eligible lists for intern job titles.

b. **Employing Agency.**

(1) Requests the creation of limited-term wage positions (see *Management Directive 505.2*).

(a) If approved, proceeds to paragraph (2).

(b) If disapproved, stops action.

(2) Prepares WTP (completed by the supervisor of the position assisted by agency training officer) for each intern to be hired.   See Enclosure 2.

c. **Agency Training Officer.** Notifies the requesting supervisor of acceptance or rejection within 10 workdays of receipt of the completed plan.   In case of rejection, submits the reason in writing.

d. **Employing Agency.** Requests Certification of Eligibles pursuant to *Part D, Manual M580.1.*

e. **SCSC.** Issues Form SCSC-91, Certification of Eligibles, and sends to employing agency.

f. **Employing Agency.**

(1) Processes appointments after selections are made.

(2) Meets with intern(s) to discuss conditions of employment and to verify understanding of WTP.   Then, periodically meets to review progress as outlined in the WTP.

(3) Maintains file for each intern to include progress, development, evaluation, problems, etc.

g. **HRDD.** Consults with training officer who monitors quality of training and work experiences provided by employing agency.

h. **Employing Agency.**

(1) Determines which interns are performing:

(a) satisfactorily and proceeds to paragraph (2).

**(b)** unsatisfactorily and proceeds to paragraph (4).

**(2)** Requests extension of limited-term wage position from OA. The length of the extension should coincide with the anticipated graduation date and return date of the intern.

**(3)** Places interns who satisfactorily perform the training and work experience on LWOP while in probationary status to return to college.

**(4)** Removes interns who are not satisfactorily performing their training and work experience.

**(5)** Maintains contact with each intern on LWOP.

**(6)** Contacts each intern prior to LWOP return date to determine if the intern will return.

**(a)** If yes, determines date intern is to be promoted. **NOTE:** The intern must have satisfactorily completed at least 6 months of training and work experience.

**(b)** If no, processes intern's resignation during or at completion of LWOP.

**(7)** Verifies that the intern has graduated from college with the minimum credits needed to qualify for the trainee or entry level job title to which return is contemplated.

**(8)** Returns intern from LWOP.

**(9)** Promotes intern timely, using Action Code ZD, Reason Code 41 and Certification Number 99415.

**(10)** Adjusts credited service time for each intern.

2 Enclosures:

1 – Classified Service Intern Job Titles
2 – Guidelines for Developing Individual Work-Training Plans for Interns

## CLASSIFIED SERVICE INTERN JOB TITLES

| Intern Job Code | Working-Level/Trainee Job Code | Intern Job Title |
|---|---|---|
| 01600 | | Information Technology Intern |
| | 01541* | Information Technology Generalist 1 |
| | 01511* | Distributed Systems Specialist 1 |
| | 01521* | Applications Developer 1 |
| 08900 | | Accounting Intern |
| | 03020* | Accountant 1 |
| | 08850* | Accounting Systems Analyst 1 |
| | 03700* | Audit Specialist 1 |
| | 03900* | Revenue Field Auditor 1 |
| 1110A-F | | Engineering Intern (All parentheticals) |
| | 11119 | Civil Engineer Trainee |
| 12015 | | Engineering Technician Intern |
| | 12010 | Engineering Technician |
| 44825 | | Vocational Rehabilitation Counselor Intern |
| | 44828* | Vocational Rehabilitation Counselor 1 |
| | 44830* | Vocational Rehabilitation Deaf & Hard of Hearing |

*Working-level job title(s) to be identified by user agency subject to OA and SCSC review and approval.

Requests for the use of job titles not listed should be sent to the Human Resource Development Division, Bureau of Workforce Planning and Development, OA, for state agencies and the SCSC for non-state agencies.

**Current as of Executive Board Amendment No. 641**

## GUIDELINES FOR DEVELOPING INDIVIDUAL
## WORK-TRAINING PLANS FOR INTERNS

The following applies to the development of individual work-training plans.    Each will:

1.  Begin with a brief general statement of purpose to include the following elements:

    a.  Space for intern's name, social security number, employee number for state agencies, work location, and telephone number.
    b.  Name of the department/commission/bureau/division/etc. providing the internship.
    c.  Beginning and ending dates of the internship.
    d.  Specific internship experiences to be provided.
    e.  Intern job title and trainee/working level job title.

2.  Identify specific performance-based objectives to be accomplished by the conclusion of the internship.

    a.  Each objective should describe what the intern should be able to do.
    b.  Specific learning objectives should be stated for internship experiences provided by each assigning division/unit/etc.

3.  Identify the person responsible for training.

4.  Include a schedule of internship experiences to identify the step-by-step training process.  For each learning event, the schedule should contain:

    a.  Identification of learning need and what outcomes are expected.
    b.  Method for meeting each need.
    c.  Sources and/or resources needed to provide each learning event.
    d.  Time frames for accomplishment.
    e.  Name and job title of each supervisor.

5.  Identify all essential in-service and out-service training experiences to include:

    a.  Purpose.
    b.  Objectives.
    c.  Time frame.
    d.  Source.

6.  Identify the evaluator of the intern's performance for each phase of the internship experience.

7.  Provide name, position, date, and signature of intern's supervisor.

8.  Provide name, position, date, and signature of intern.

9.  Give a statement of approval or disapproval, including name, position, date, and signature of agency human resource/training officer.    If disapproval is recommended, the reasons must be stated.

| | |
|---|---|
| You must submit Application Supplement No. 1988-984-2 with your Application for Employment/Promotion. | TEST ANNOUNCEMENT NUMBER: 1988-984 AMENDED AND REISSUED: August 24, 2001 |

## Commonwealth of Pennsylvania
## State Civil Service Commission

Examination

for

## COUNTY SOCIAL CASEWORK INTERN
## (Local Government)

### NO WRITTEN TEST REQUIRED

| Exam. No. | Job Title | Job Code | Pay Schedule and Range |
|---|---|---|---|
| 1. | County Social Casework Intern | L0618 | * |

*Local government salaries vary. Contact the Personnel Office of the local government agency where you are interested in working for specific information.

APPLICATIONS WILL BE ACCEPTED UNTIL FURTHER NOTICE.

| | |
|---|---|
| **NATURE OF WORK** | **JOB REQUIREMENTS** |
| **JOB OPPORTUNITIES** | **TESTING** |
| **TEST RESULTS** | **HOW TO APPLY** |

## NATURE OF WORK

This is work of a training nature involving the performance of social casework duties. Employees participate in a structured six-month internship program in a local government agency, such as Children, Youth and Families, Mental Health/Mental Retardation, Drug and Alcohol, Area Agencies on Aging or other human services agencies. Interns may elect to serve one continuous six-month internship or two three-month internships. The six-month internship occurs sometime between the end of the first semester of the junior year and graduation. The two three-month

EXHIBIT 3

internships occur sometime between the end of the first semester of the junior year and approximately three months after graduation. (Variations of these time periods may be possible.)

Assignments are structured to provide practical work experience which applies general social work principles in order that knowledge acquired through course curriculum are transformed into working skills. Upon completion of the internship period, the employee can function competently in the field of social services. The intent of this program is to prepare employees and provide career opportunities for full-time employment in the field of social services.

## JOB REQUIREMENTS

Please make sure you meet all requirements. If after reading the requirements you are not sure you qualify, contact one of the Commission's offices listed at the end of this announcement.

You must be of good moral character and able to perform the essential functions of the job.

Some of the positions in these job titles come under the provisions of the Child Protective Services Law. If you are a final candidate for one of these positions, you will have to provide reports on your background from such sources as the Pennsylvania State Police and the Pennsylvania Department of Public Welfare. If you are a final candidate and not a Pennsylvania resident, you must also obtain a report of Federal Criminal History Record Information from the Federal Bureau of Investigation. If your background is unacceptable, you will be disqualified for employment in such positions. You will receive information about these requirements and how to obtain the required reports at the time you are being considered for employment.

Some of the positions in these job titles come under the provisions of the Older Adults Protective Services Act. If you are a final candidate for one of these positions, you will have to obtain a report of criminal record information from the Pennsylvania State Police or a statement that the State Police Central Repository contains no information relating to you. If you are a final candidate and not currently a Pennsylvania resident, or if you are currently a Pennsylvania resident and a final candidate but have not been a resident for two years prior to the date that you received notification that you are a final candidate, you are also required to furnish a report of Federal Criminal History Record Information from the Federal Bureau of Investigation. If your background is unacceptable, you will be disqualified for employment in such positions. You will receive information about this requirement and how to obtain the required reports at the time you are being considered for employment.

### Minimum Requirements:
Enrollment as a full-time student with junior standing in an accredited undergraduate bachelor's degree program in sociology, social welfare, psychology, gerontology, or other related social sciences; completion of the first semester of the junior year (or 75 credits); and satisfactory completion of fifteen (15) credits in one of

the major fields of study.

NOTE:    Students who anticipate meeting the Minimum Requirements at the end of
their current semester may apply. Selection for participation in the Intern
program is conditional upon successful completion of the required
education.

## JOB OPPORTUNITIES

### EQUAL OPPORTUNITY EMPLOYER

These positions are located throughout the State in local government Children, Youth
and Families, Mental Health/Mental Retardation, and Drug and Alcohol programs,
Area Agency on Aging (AAA) offices, and other human services agencies.

There are no current positions or expected future job openings in Philadelphia.

Employment preference may be given to residents in counties in which these job are
located.

Employment preference may be granted to individuals aged 60 and over for jobs with
the Area Agency on Aging Offices.

For the most recent information on job opportunities, contact the office(s) of the
county program(s) where you are interested in working. See your local telephone
directory for addresses and telephone numbers.

### TESTING

You will be rated on your experience and training. Your score will be based on what
you report on your Application for Employment/Promotion and Application
Supplement.

If you take the test and want to take it again, you may be retested after six months
from the date of your "Notice of Examination Results." A new application and
application supplement are required for a retest.

If your name is on an eligible list for these jobs and you take this test, your most
recent examination result will be the only one counted.

### TEST RESULTS

County and State employment lists will be established. You will be notified in writing
of your test results.

### HOW TO APPLY

Applications, Application Supplement No. 1988-984-2 and further information can be
obtained from:

1.    State Civil Service Commission:

Harrisburg: 2nd Level, Strawberry Sq. Complex,
320 Market St., P.O. Box 569, Hbg., 17108-0569;
Telephone (Voice) (717) 783-3058, Text Telephone
**(Deaf/Hard-of-Hearing callers only)** (717) 772-2685

Philadelphia: 2nd Floor, 10 South 11th St., Phila., 19107;
Telephone (Voice) (215) 560-2253, Text Telephone
**(Deaf/Hard-of-Hearing callers only)** (215) 560-4367

Pittsburgh: State Office Building, Rm. 1503, 300 Liberty Ave.,
Pgh., 15222; Telephone (Voice) (412) 565-7666, Text Telephone
**(Deaf/Hard-of-Hearing callers only)** (412) 565-2484

Internet at http://www.scsc.state.pa.us

2.    Team Pennsylvania CareerLink Centers

3.    The county government programs listed under the "JOB OPPORTUNITIES"
section of this announcement

You must submit your application directly to the State Civil Service Commission,
Bureau of Information Technology Systems, P.O. Box 569, Harrisburg, PA 17108-
0569.

For further information on testing, assistance for persons with disabilities, veterans'
preference and other items, refer to the instructions provided with the "Application
for Employment/Promotion."

Return to Summary of Civil Service Examination Programs

Rev. 7/01

| SCSC USE | | Social Security Number |
|---|---|---|

Total Score    Evaluator

**COMMONWEALTH OF PENNSYLVANIA**
**State Civil Service Commission**

**APPLICATION SUPPLEMENT NO. 1988-984-2**

**FOR**

**COUNTY SOCIAL CASEWORK INTERN**
**(L0618)**

BE SURE TO READ ANNOUNCEMENT NO. 1988-984 THOROUGHLY BEFORE YOU COMPLETE THIS SUPPLEMENT. THE ANNOUNCEMENT PROVIDES INFORMATION ON MINIMUM REQUIREMENTS, JOB DUTIES, EXAMINATION AND OTHER INFORMATION.

If you have any questions about eligibility for this job or about completing this Supplement or your Application for Employment/Promotion, contact one of the Pennsylvania Civil Service Commission's offices. The addresses and telephone numbers are listed at the end of the announcement.

**SECTION A – MINIMUM JOB REQUIREMENTS**
The following requirements must be met by all applicants.

1. Have you been or are you currently enrolled as a full-time student with junior standing in an accredited undergraduate bachelor's degree program?

Yes _____ No _____

School _____

Address _____

Graduation Date _____

2. Have you completed (by the end of the first semester of your junior year) 75 credits, which include completion of fifteen credits in your field of study? (Attach a transcript or a copy of a transcript.)

Yes _____ No _____

List field of study: _____

If you answered "No" to either of the above questions, do not complete the remainder of this Application Supplement and do not apply for this job title.

| Social Security Number | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |

If you answered "Yes" to both of the above questions, complete the rest of this Application Supplement.

## SECTION B – REPORTING YOUR EXPERIENCE AND TRAINING

Your Application and Application Supplement will be used to determine if you meet the minimum requirements for this job. It also will be used to rate your qualifications. The data you submit must be complete and accurate.

Before you complete this Supplement, please review it completely to familiarize yourself with the information you should report. Please type or print legibly. When reporting your training, list your college coursework under the appropriate subject area. When reporting your experience, be sure to report who you were employed by, your job title, when you were employed, and the section of your application where you reported this information. Enter your Social Security Number on all pages. Do not attach a resume and make remarks such as "see attached resume" to indicate your experience and/or training. Resumes do not usually contain sufficient detail as requested in this Supplement.

After you have finished, sign and date the statement in Section C on the last page of this Supplement.

2

| Social Security Number | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |

## 1. TRAINING

Listed below are a number of subject areas considered appropriate to the work of a County Social Casework Intern. Indicate under each Subject Area heading the specific courses (and course numbers) you have successfully completely or expect to complete shortly. If a course covers two or more subject areas, list it under the major subject area covered. Do not list any course more than once.

| **Subject Area** | **Sem. Hrs.** | **Subject Area** | **Sem. Hrs.** |
|---|---|---|---|
| A. Social Work | | F. Community Development | |
| | | | |
| | | | |
| B. Sociology | | G. Counseling | |
| | | | |
| | | | |
| C. Social Welfare | | H. Psychology | |
| | | | |
| | | | |
| D. Gerontology | | I. Technical Report Writing/Speech | |
| | | | |
| | | | |
| E. Interpersonal Relations | | | |

J. List below other courses you believe are related and should be considered in your rating.

K. List below (school related) clubs, extra-curricular activities in which you are a participating member, which are related to the subject areas listed above.

| Social Security Number | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |

2. EXPERIENCE

| Provide the following information for each area of work experience:<br>Employer<br>Job Title<br>Dates (From/To)<br>Application Section | Describe your work experience (paid or volunteer) relating to the job of County Social Casework Intern. This should include internships, practicums, and/or field placements. Experience can be in any of the areas listed below. |
|---|---|
| | Counseling |
| | Social Welfare Institutions |
| | Gerontology |
| | Community Development |
| | Any Other Related Field |

4

| Social Security Number | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
|  |  |  |  |  |  |  |  |  |

## SECTION C - AUTHENTICATION

I understand this Supplement and all additional sheets attached to it constitute part of my Civil Service Application for Employment/Promotion. I further understand that the oath attesting to the accuracy of the Application applies as well to all information presented in this Supplement and attachments. If requested, I will provide documentation and the names, addresses and phone numbers of persons who can verify the validity of the claims I make in this Supplement and the information reported elsewhere as part of this Application.

| Signature of Applicant | Name (Please Print) | | |
|---|---|---|---|
| Daytime Telephone Number | Date | | |
| Address | City | State | Zip Code |

PLEASE NOTE THAT THE RATING AND SCORING OF YOUR QUALIFICATIONS ARE A TEST. FOR THIS REASON, IT IS IMPORTANT THAT YOU SUBMIT COMPLETE AND ACCURATE DATA ABOUT YOUR BACKGROUND. ALL INFORMATION YOU SUPPLY IN CONNECTION WITH YOUR APPLICATION, AND THE CLAIMS YOU MAKE IN THIS SUPPLEMENT ARE SUBJECT TO VERIFICATION. ANY MISREPRESENTATION, FALSIFICATION OR OMISSION OF MATERIAL FACTS IS SUBJECT TO PENALTY.

| See the "Job Requirements" section of this announcement for information on documents you must submit with your application. | TEST ANNOUNCEMENT NUMBER: 1997-804 AMENDED AND REISSUED: October 19, 2001 |
|---|---|

## Commonwealth of Pennsylvania
## State Civil Service Commission

Examinations

for

## COUNTY CASEWORKERS

| Exam. No. | Job Title | Job Code | Starting Salary |
|---|---|---|---|
| 1. | County Caseworker 1 | L0623 | * |
| 2. | County Caseworker 2 | L0624 | * |
| 3. | County Caseworker 3 | L0625 | * |

*Local government salaries vary. Contact the Personnel Office of the local government agency where you are interested in working for specific information.

APPLICATIONS WILL BE ACCEPTED UNTIL FURTHER NOTICE.

| **NATURE OF WORK** | **JOB REQUIREMENTS** |
|---|---|
| **JOB OPPORTUNITIES** | **TESTING** |
| **TEST RESULTS** | **HOW TO APPLY** |

## NATURE OF WORK

Employees provide services to individuals, families or groups (needy, aged, people with disabilities, institutionalized or dependent adults and children) to help them attain a more satisfactory social, economic, mental or physical adjustment to their environment. They interview clients to obtain social histories, provide comprehensive information about agency programs, determine and verify eligibility for program services, provide referral services and negotiate on behalf of clients for referral services, formulate and implement social plans of action, and counsel clients to modify behavior. An important aspect of the work is the ability to manage a caseload, prepare reports and keep well-organized records.

EXHIBIT
4

County Caseworkers 1 perform beginning level social services work, under close supervision.

County Caseworkers 2 have similar duties, but work more independently under more generalized supervision.

County Caseworkers 3 are distinguished from the lower levels by the increased difficulty, complexity, and number of assigned cases.

## **JOB REQUIREMENTS**

You may be tested before your qualifications are reviewed. Your test results will count only if you meet all job requirements. If after reading the requirements you are not sure you qualify, contact one of the Commission's offices listed at the end of this announcement.

For some jobs, offers of employment will be made only if you are willing to travel. Travel expenses will be paid.

You must be of good moral character and able to perform the essential functions of the job.

Some of the positions in these job titles come under the provisions of the Child Protective Services Law. If you are a final candidate for one of these positions, you will have to provide reports on your background from such sources as the Pennsylvania State Police and the Pennsylvania Department of Public Welfare. If you are a final candidate and not a Pennsylvania resident, you must also obtain a report of Federal Criminal History Record Information from the Federal Bureau of Investigation. If your background is unacceptable, you will be disqualified for employment in such positions. You will receive information about these requirements and how to obtain the required reports at the time you are being considered for employment.

Some of the positions in these job titles come under the provisions of the Older Adults Protective Services Act. If you are a final candidate for one of these positions, you will have to obtain a report of criminal record information from the Pennsylvania State Police or a statement that the State Police Central Repository contains no information relating to you. If you are a final candidate and not currently a Pennsylvania resident, or if you are currently a Pennsylvania resident and a final candidate but have not been a resident for two years prior to the date that you received notification that you are a final candidate, you are also required to furnish a report of Federal Criminal History Record Information from the Federal Bureau of Investigation. If your background is unacceptable, you will be disqualified for employment in such positions. You will receive information about this requirement and how to obtain the required reports at the time you are being considered for employment.

Minimum Requirements:
County Caseworker 1
A bachelor's degree which includes or is supplemented by successful completion of

12 college credits in sociology, social welfare, psychology, gerontology, criminal justice, or other related social sciences; OR two years of experience as a County Social Services Aide 3 and two years of college-level course work which includes 12 college credits in sociology, social welfare, psychology, gerontology, criminal justice, or other related social sciences; OR an equivalent combination of experience and training which includes 12 college credits in sociology, social welfare, psychology, gerontology, criminal justice, or other related social sciences, and one year of experience as a County Social Services Aide 3.

### County Caseworker 2

Six months of experience as a County Caseworker 1; OR successful completion of the County Social Casework Intern program; OR a bachelor's degree with a social welfare or social work major; OR a bachelor's degree which includes, or is supplemented by 12 college credits in sociology, social welfare, psychology, gerontology, criminal justice, or other related social sciences, and one year of professional social casework experience in a public or private social services agency; OR an equivalent combination of experience and training which includes 12 college credits in sociology, social welfare, psychology, gerontology, criminal justice, or other related social sciences.

### County Caseworker 3

Two years of experience as a County Caseworker 2; OR a bachelor's degree in sociology, social welfare, psychology, gerontology, criminal justice, or other related social sciences, and three years of professional social casework experience in a public or private social services agency; OR an equivalent combination of experience and training which includes 12 college credits in sociology, social welfare, psychology, gerontology, criminal justice, or other related social sciences.

### Clarification of Requirements:

You may substitute appropriate experience for the required education, except for the 12 college-level credits in the specified areas, or appropriate education for the experience, except for the experience limitation mentioned for the County Caseworker 1 job title. Unrelated experience or education will not be accepted.

You may take the test if you have completed 90 or more credit hours and expect to receive a bachelor's degree within the next 7 months. You must provide proof of your degree before you start work.

IF YOU DO NOT HAVE A BACHELOR'S DEGREE WITH A MAJOR IN SOCIOLOGY, SOCIAL WORK, SOCIAL WELFARE, PSYCHOLOGY, GERONTOLOGY, CRIMINAL JUSTICE, OR OTHER RELATED SOCIAL SCIENCES, YOU MUST SUBMIT A LIST OF COLLEGE COURSES OR COLLEGE TRANSCRIPTS, SHOWING THE COMPLETED 12 COLLEGE-LEVEL CREDIT HOURS REQUIRED IN THESE AREAS.

## JOB OPPORTUNITIES

## EQUAL OPPORTUNITY EMPLOYER

These positions exist in county children and youth agencies, and mental health and mental retardation offices and local government housing authorities throughout Pennsylvania.

Opportunities for employment are greatest in county children and youth agencies, and generally are greater in rural areas. Opportunities for appointment depend on normal turnover due to retirements, promotions, resignations and so forth.

There are no current positions or expected future job openings in Philadelphia.

Employment preference may be given to residents of the county where jobs are located.

Promotion preference may be given to employees who work in the county where job openings occur.

For the most recent information on job opportunities contact the office of the local government program where you are interested in working (located in the telephone directory under "Government/County").

## TESTING

The 3 ½ hour written test will cover the following subject areas.

| Subject Area | Number of Questions | | |
|---|---|---|---|
| | Caseworker 1 | Caseworker 2 | Caseworker 3 |
| Principles and Methods of Social Casework | 45 | 45 | 45 |
| Counseling | 20 | 20 | 20 |
| Interviewing | 20 | 20 | 20 |
| Written Communication | 25 | 25 | 25 |
| Counseling (Advanced) | -- | 20 | 20 |
| Interviewing (Advanced) | -- | 10 | 10 |
| Written Communication (Advanced) | -- | -- | 15 |
| TOTAL | 110 | 140 | 155 |

The test will be given as soon as possible after applications are received. The test will be held in the Harrisburg, Philadelphia and Pittsburgh Civil Service offices, Monday through Friday. To make an appointment for one of these locations, submit your completed paper application to the office where you wish to be tested. The test also will be held on selected Saturdays at a variety of Statewide locations. See the "Test Information" section of your application for details.

If you take the test and want to take it again, you may be retested after six months from the date of your test. You must submit a new application to be retested.

If your name is on an eligible list for these jobs and you take this test, your most recent examination result will be the only one counted.

## **TEST RESULTS**

State and County employment and promotion lists will be established. You will be notified in writing of your test results.

## **HOW TO APPLY**

Applications and further information can be obtained from:

1.    State Civil Service Commission:

Harrisburg: 2nd Level, Strawberry Sq. Complex,
320 Market St., P.O. Box 569, Hbg., 17108-0569;
Telephone (Voice) (717) 783-3058, Text Telephone
**(Deaf/Hard-of-Hearing callers only)** (717) 772-2685

Philadelphia: 2nd Floor, 10 South 11th St., Phila., 19107;
Telephone (Voice) (215) 560-2253, Text Telephone
**(Deaf/Hard-of-Hearing callers only)** (215) 560-4367

Pittsburgh: State Office Building, Rm. 1503, 300 Liberty Ave.,
Pgh., 15222; Telephone (Voice) (412) 565-7666, Text Telephone
**(Deaf/Hard-of-Hearing callers only)** (412) 565-2484

Internet at http://www.scsc.state.pa.us

2.    Team Pennsylvania CareerLink Centers

3.    The office of the local government program where you are interested in working.

For further information on testing, assistance for persons with disabilities, veterans' preference and other items, refer to the instructions provided with the "Application for Employment/Promotion."

Return to Summary of Civil Service Examination Programs

UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT

OF PENNSYLVANIA

\* \* \* \* \* \* \* \* \*

DAVID A. DOWS,                      \*

    Plaintiff            \*    NO.   2004-341 Erie

       VS.                    \*

KATHERINE E. HOLTZINGER-   \*

CONNER, ESQ., CHAIRMAN     \*

PENNSYLVANIA CIVIL SERVICE\*

COMMISSION, and JOHN DOE,  \*

    Defendants            \*

\* \* \* \* \* \* \* \* \*

DEPOSITION

OF

DAVID A. DOWS

January 4, 2006

Any reproduction of this transcript

is prohibited without authorization

by the certifying agency.

EXHIBIT
5

Sargent's Court Reporting Service, Inc.
(814) 536-8908

8

1   the rest reserved for trial; is that correct, Mr.
2   Taggart?
3               ATTORNEY TAGGART:
4               Right, the same as before.
5               ATTORNEY LLOYD:
6               And would you like to read and sign your
7   deposition transcript?
8               ATTORNEY TAGGART:
9               We do not waive signature.  We'll try to
10  turn it around real fast, but we'll --- we want to see
11  it.  Thanks.
12              ATTORNEY LLOYD:
13              Okay.
14  BY ATTORNEY LLOYD:
15  Q.  We're here, I guess, today to talk about your
16  employment with Erie County Children and Youth.  And I
17  understand that you were employed two separate
18  occasions with that group; is that correct?
19  A.  That is correct.
20  Q.  And what were the dates of your employment?  Let's
21  start with the first time you worked with them.
22  A.  I believe it was August 4th, 2003 to sometime in
23  early October, and then again June 2nd, 2004 until
24  sometime in early September of 2004.
25  Q.  And what was your job title with the first period

1   of employment?

2   A.   I was a per diem caseworker.

3   Q.   Can you describe to me what that was supposed to

4   mean, to your understanding?

5   A.   Yes.   As I was informed when I was hired as a per

6   diem caseworker that I would be training and working

7   as a caseworker for Children and Youth, but that I

8   would be paid a dollar less an hour, would not be

9   earning any seniority, nor come under the contracts

10  that I would be able to join the union.  I would not

11  have any paid days off, nor paid holidays and would

12  not be getting a Master's Degree stipend, which is, I

13  believe, 50 cents an hour for the time I was a per

14  diem caseworker.

15  Q.   Were you told how long this per diem status was

16  supposed to last?

17  A.   No.

18  Q.   Was it your understanding then that you were not

19  --- you were also not a Civil Service employee?

20  A.   I didn't know that exact status, whether I was or

21  was not.

22  Q.   Did you make any inquiries with the Civil Service

23  Commission at that time?

24  A.   At that time when I was hired, no.

25  Q.   That would lead me to think that you did at some

10

1   point talk to the Civil Service Commission about this

2   per diem status; is that correct?

3   A.   Yes, I did.

4   Q.   And when did you speak with someone there?

5   A.   After my per diem caseworker status was

6   terminated, I was fired.  I did have occasion to call

7   the Pennsylvania Civil Service Commission and speak

8   with Steve Shartle, a previous deposition witness in

9   this case, and was informed by him that according to

10  the Civil Service computerized records, I was never

11  listed with the Civil Service as a caseworker by the

12  Erie County Office of Children and Youth when I was

13  hired.

14  Q.   What kind of job responsibilities did you have as

15  a per diem caseworker?

16  A.   Quite a bit of my time was spent in formal

17  training and classroom, but I also did a lot of

18  on-the-job training, and shadowing of caseworkers and

19  assisting caseworkers in some of their more mundane

20  tasks, which I could handle by myself.  And since I

21  was only there for a short time, I was still in a

22  training status, more or less, when I was fired.

23  Q.   So you were there maybe nine to ten weeks as a per

24  diem caseworker; is my math correct in that timeframe?

25  A.   Roughly, give or take.

11

1  Q.   And you said you were fired.  Can you tell me the

2  reasons that Children and Youth gave you for letting

3  you go?

4  A.   At the time, I was told my per diem status was

5  ending, which was the nice way they said I was fired.

6  They said that I was using or relying too much upon my

7  experience as a police officer while I was doing my

8  caseworker job.

9  Q.   Did you file any kind of administrative complaint

10  with the EEOC or PHRC with regard to your employment

11  and discharge with Children and Youth?

12  A.   Yes, I did.

13  Q.   And what did you file?

14  A.   I filed an EEOC age and gender discrimination

15  complaint as well as a complaint under the Americans

16  with Disabilities Act.

17  OFF RECORD DISCUSSION

18  BY ATTORNEY LLOYD:

19  Q.   I'm handing you what's been marked as Deposition

20  Exhibit 23, which is an EEO --- or a Pennsylvania

21  Human Relations Commission EEOC charge.

22               (Deposition Exhibit Number 23 marked

23                     for identification.)

24  BY ATTORNEY LLOYD:

25  Q.   Is this the charge that you were just referring to

1  with regard to your employment at Erie County Children

2  and Youth?

3  A.   Yes.

4  Q.   And that is your signature at the bottom?

5  A.   Correct, a copy thereof.

6               ATTORNEY LLOYD:

7                    Take a break.

8  SHORT BREAK TAKEN

9               ATTORNEY LLOYD:

10                   Back on the record.  Exhibit Number ---

11  what did we mark this, 23?

12              ATTORNEY TAGGART:

13                   This was 23.

14  BY ATTORNEY LLOYD:

15  Q.   You have marked the discrimination was based on

16  age, sex and disability; is that correct?

17  A.   That's correct.

18  Q.   And can you explain why you believe that you were

19  discriminated against because of age?

20  A.   Because I was older than all of the people who

21  were basically hired off intern lists for caseworkers,

22  an entirely separate listing that the Civil Service

23  has for counties to hire caseworkers from.  Secondly,

24  at the time I was hired as a per diem, there was also

25  a female who was under 40 who was hired on a per diem

13

1   status.  And although I was fired, she, and in direct

2   comparison, under 40, female with a Bachelor's Degree

3   instead of a Master's and less experienced that of a

4   TSS rather than myself as a mobile therapist, was kept

5   on.

6   Q.   And do you remember that individual's name?

7   A.   Yes, it's Angela Lawton, L-A-W-T-O-N.

8   Q.   Is there anything else related to your age that

9   led you to believe you were being discriminated

10  against?  Was that the reasons you just articulated to

11  me, the reasons for that charge?

12  A.   At that particular time, that was the

13  discrimination, although many people have been hired

14  from the intern lists since this was filed who weren't

15  me.

16  Q.   You have indicated that sex was a reason you

17  believe you were discriminated against.  Can you

18  explain to me why you think you were discriminated

19  against because of your sex?

20  A.   The entire Office of Children and Youth is almost

21  seven to one female caseworkers.  And again, Angela

22  Lawton, a female, was kept rather than a male, someone

23  who is in very short supply in the caseworker job

24  status.  And again, the female who was kept who has

25  less education and less experience, and I might add a

14

1  much lower Civil Service score on the merit Civil
2  Service list than me.
3  Q.  So to your knowledge Ms. Lawton is off of a merit
4  Civil Service list, not the intern list?
5  A.  That's correct.  She did.
6  Q.  You've also marked disability as a reason for
7  discrimination.  Can you tell me why you believed you
8  were being discriminated against based upon
9  disability?
10 A.  Yes.  Going back to Mr. Paul Concilla,
11 C-O-N-C-I-L-L-A, terminating me, when I was told I was
12 relying too much on my police experience and
13 background.  It was because at one home where a court
14 order was being served.  It was not the home of the
15 person the court order was being served against.  She
16 was visiting friends.  And while there, they had a TV
17 blaring and the lights off.  I had trouble seeing and
18 I asked the homeowner, or I should say home renter, if
19 some lights could be turned on so we could see in this
20 darkened room.  And I also asked if the television
21 that several children were watching could be turned
22 down so I could hear better.  And I do wear hearing
23 aids, so I wasn't hearing well at all during this
24 situation.  These two incidents were brought up to me
25 as my being too police like instead of caseworker like

15

1   in my approach, even though this wasn't the client's

2   home, and it was a home she was visiting where I asked

3   these things to be done.  Since they were claiming

4   that the fact that I didn't see very well in the dark

5   in that home and didn't hear very well over the din of

6   the television, that since I apparently don't hear as

7   well as young females and maybe don't have the vision

8   as well as the young female caseworkers I was

9   assisting that day, that I was being discriminated

10  against for my disabilities of my vision and hearing.

11  Q.   You used the word they in that description.  Who

12  is they?  Mr. Concilla, is he one of the they?

13  A.   Yes.

14  Q.   Are there any other people in the they definition?

15  A.   Yes.  After this incident, my supervisor in my per

16  diem caseworker status, who was Sue Deveny,

17  D-E-V-E-N-Y, also mentioned that I was acting like a

18  police officer in asking for lights to be turned on

19  and TV to be turned down while in the midst of service

20  of a court order.

21  Q.   As a result of this charge of discrimination,

22  Exhibit Number 23, was there any finding by either the

23  EEOC or the PHRC of any kind of discrimination?

24  A.   I received a Right to Sue, but other than that I

25  don't know how to answer your question.

19

```
 1                    ATTORNEY LLOYD:
 2                    No.  I just brought the one for me.  This
 3   is an easy question.
 4                    ATTORNEY TAGGART:
 5                    They get complex.  I'm going to ask that
 6   we take a moment out and go get some clerical support
 7   and run some copies.
 8                    ATTORNEY LLOYD:
 9                    Fine.
10   SHORT BREAK TAKEN
11   ATTORNEY LLOYD:
12   Q.  I guess this would go to the second time that you
13   had worked for Erie County Children and Youth, that
14   they insisted that you quit as part of an agreement
15   you voluntarily resigned.  Would that agreement you
16   refer to be the settlement of the EEOC charge?
17                    ATTORNEY TAGGART:
18                    Do you understand that question?
19   A.  Absolutely.  I just --- well, my legal advice is
20   whether I should answer it.
21                    ATTORNEY TAGGART:
22                    We're asking --- could you rephrase, edge
23   away from the confidentiality agreement a little bit?
24   I think that's Mr. Dows' concern is he just doesn't
25   want to ---.
```

20

1   BY ATTORNEY LLOYD:

2   Q.   You have averred that you performed your job well,

3   but despite that fact Erie County insisted that you

4   quit and as a part of an agreement you involuntarily

5   resign.   And my question is, is the agreement you

6   refer to the settlement that you and the county

7   arrived at at the mediation?

8   A.   Yes, it was.

9                ATTORNEY TAGGART:

10               Just to help, I hope, opposing Counsel,

11  by the time that mediation occurred, Mr. Dows was back

12  in his second period of employment, so he was on site

13  as a regular --- well, that's a meaningless term, as

14  an employee of the county on the day that the

15  mediation occurred.

16  BY ATTORNEY LLOYD:

17  Q.   Do you have a date for that mediation or a month

18  and day, year?

19  A.   It was in July, I believe, of 2004.

20  Q.   And did you reach the agreement that day or did

21  that come a little bit later in time?

22  A.   Basic terms were agreed upon and notated.  It took

23  a further period of time to finalize the legalities of

24  the exact agreement between Mr. Taggart and Attorney

25  Onorato, and at that time it was signed by me.

21

1  Q.  So if I'm correct, then a lawsuit was not filed
2  after you reached that agreement?
3  A.  Not a formal federal lawsuit.  Correct.  My
4  apologies.
5  Q.  That's quite okay.  Okay.  So you were hired as a
6  per diem employee and let go then in October of 2003;
7  is that correct?
8  A.  That is correct.
9  Q.  And then you were hired again in June of --- June
10  2 of 2004.  Can you explain to me what led to you
11  being hired again on June 2nd, 2004?
12  A.  At a point in February of 2004, the Erie County
13  Office of Children and Youth filed a petition to have
14  my name removed from the Civil Service list.  I
15  vigorously fought that.  When all these complaints of
16  mine to Steve Shartle and OCY about me arrived at
17  Civil Service, apparently they decided to investigate
18  the Office of Children and Youth.
19  Q.  They meaning?
20  A.  They meaning the Civil Service Commission.
21  Q.  Okay.
22  A.  And exactly in the person or the investigator,
23  Steve Shartle, who testified in an earlier deposition,
24  that he did indeed do the investigation of the Office
25  of Children and Youth.  Of course I had no idea they

1    were doing the investigation because no one ever
2    called me to interview me or tell me that they were in
3    Erie.  And after a period of time, I had occasion to
4    speak to Attorney Smith of the State Civil Service
5    Commission and found out that the State Civil Service
6    Commission was to hold a hearing in Pittsburgh for the
7    deficiencies of the Office of Children and Youth.  I
8    really wasn't invited to that meeting, but found out
9    about it by accident, but made it my business to go,
10   and at the meeting heard about my earlier per diem
11   caseworker status being testified to by previous
12   deposition witness, Steve Shartle.  And shortly after
13   that hearing, I received a letter that I would not be
14   removed from the State Civil Service list and that
15   Office of Children and Youth in a subsequent order of
16   the Civil Service Commission was ordered to hire me as
17   a county caseworker II within 30 days, which led to my
18   hiring on June 2nd.
19   Q.  So at that time, you were hired as a county
20   caseworker II?
21   A.  Now I was hired as a county caseworker II from the
22   State Civil Service listing of county caseworker II
23   eligible individuals.
24   Q.  Does Attorney Smith have a first name that you
25   recall?

24

1   Shartle from the Civil Service Commission after you
2   were discharged the first time from Children and
3   Youth?
4   A.    That's correct.
5   Q.    Did you speak with Mr. Shartle --- we'll start
6   with over the telephone any other time or times after
7   that initial conversation?
8   A.    The only time I can recall talking to Steve
9   Shartle in person again was at the hearing that
10  occurred in Pittsburgh for Office of Children and
11  Youth.   I know I did send him an e-mail, because I
12  thought he would be an avenue through which I could
13  put a statutory right to know act request.  So I know
14  I e-mailed him about a right to know request but was
15  e-mailed back that he was the improper conduit.  And
16  he gave me the name of the person to whom I was to
17  write my request.
18  Q.    So you called him after the first discharge.  You
19  spoke with him in person at the Pittsburgh hearing?
20  A.    Correct.
21  Q.    And you sent him an e-mail, which you got a return
22  response from directing you to another person.  Were
23  those the only three times you communicated with him?
24  A.    The only three times I can remember.  And the
25  e-mail occurred between the phone call and meeting him

36

1  Q.  I hand you what's been marked Deposition Exhibit

2  28, if you can take a look at that.

3                    (Deposition Exhibit Number 28 marked

4                    for identification.)

5  WITNESS REVIEWS DOCUMENT

6  BY ATTORNEY LLOYD:

7  Q.  Are you familiar with Exhibit Number 28?

8  A.  I filled it out.

9  Q.  And what is Exhibit Number 28?

10  A.  It's an application for employment/promotion

11  promulgated by the state Civil Service Commission.

12  Q.  So this would be an application for employment or

13  promotion in Civil Service positions in the state?

14  A.  Correct.

15  Q.  And on the third page, is that your signature?

16  A.  It is.

17  Q.  And it's dated July 22nd, 2002; is that correct?

18  A.  Correct.

19  Q.  And on that same page at the top, it asks you what

20  kind or kinds of employment you will accept, and you

21  have filled in the space that indicates you would

22  accept a career appointment or standard work week year

23  round; is that correct?

24  A.  That's correct.

25  Q.  Have you ever contacted the Civil Service

37

1  Commission to change that to include any of the
2  choices listed from two to five?
3  A.   No, I haven't.
4  Q.   And you indicate you're available --- your
5  availability where you'll accept employment, and this
6  is in part D, in two locations.  Are those locations
7  Erie County and Crawford County?
8  A.   They are.
9  Q.   I know they're indicated by number and of course
10 we're missing the numbers on the back, but you would
11 agree you wanted to be available in Erie County and
12 Crawford County?
13 A.   Correct.
14 Q.   Have you ever contacted the Civil Service
15 Commission to change these choices to include any
16 other counties?
17 A.   Not yet, but I'm planning to change a third
18 requested county to Mercer County.
19 Q.   So you still desire to be hired as a caseworker I,
20 II or III in either Crawford County or at some point
21 Mercer County when you change your availability; is
22 that correct?
23 A.   Yes.
24 Q.   Have you ever been contacted by Crawford County
25 for employment as a caseworker?

48

1   A.   The first time.  I don't know whether I assumed or

2   whether he mentioned that he didn't know if I had any

3   rights under Civil Service, because I wasn't a Civil

4   Service employee of OCY, which was the fault of OCY at

5   that time, hiring me as a per diem employee.

6   Q.   As part of Mr. Shartle's investigation relative to

7   hiring at OCY and its relationship to the Civil

8   Service rules and regulations, did he ever interview

9   you?

10  A.   Never.

11  Q.   Did any other representative of the Commission

12  interview you as part of that same investigation?

13  A.   They did not.

14  Q.   And were you perhaps provided written

15  interrogatories about the investigation?

16  A.   At the time that my name was requested to be

17  removed from the Civil Service list, I wrote a

18  voluminous letter to Katherine Holtzinger-Conner of

19  the Civil Service Commission and several other people

20  detailing my position.  Other than that, during the

21  investigation, which would have had to have started

22  with the Office of Children and Youth's petition to

23  have me removed, no, nothing at that time period.

24  Q.   What was your first awareness, verbal, written,

25  whatever, that the County of Erie was asking that you

49

1  be removed from the merit Civil Service list?

2  A.   Probably the first week of 2004.  I received a

3  letter from County Solicitor John Onorato,

4  O-N-O-R-A-T-O, that he was going to file that petition

5  with the Civil Service Commission.  And at that point,

6  I wrote my voluminous letter and sent a copy to him, a

7  copy to Katherine Holtzinger-Conner and a copy to the

8  head of the Pittsburgh EEOC office detailing to all of

9  them the discriminatory fashion that my name was

10  trying to be removed because I had filed the EEOC

11  complaints just in December of 2003.

12  Q.   Did your voluminous letter disagree with the

13  assertion that you should be, for cause, removed from

14  the Civil Service list?

15  A.   Yes, it did.

16  Q.   Do you recall a letter from Mr. Callen and Debra

17  Liebel stating that there was an intent to remove you

18  from the county caseworker I and II lists?

19  A.   That was the formal request sent to the state

20  Civil Service Commission, yes.

21  Q.   And you were either sent that directly or provided

22  a copy of it?

23  A.   I have seen it, yes.

24  Q.   Did anyone on behalf of OCY, other than sending

25  you the copy of the letter or the letter directed to