EEOC Form 5 (5/01)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | 172-2004-00755 |

| Pennsylvania Human Relations Commission | and EEOC |
|---|---|
| State or local Agency, if any | |

| Name (Indicate Mr., Ms., Mrs.) | Home Phone No. (Incl Area Code) | Date of Birth |
|---|---|---|
| **Mr. David A. Dows** | **(814) 756-3369** | **01-15-1946** |

| Street Address | City, State and ZIP Code |
|---|---|
| **R R 3, Edinboro, PA 16412** | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| **ERIE COUNTY, Office of Children & Youth** | **101 - 200** | **(814) 451-6600** |

| Street Address | City, State and ZIP Code |
|---|---|
| **154 West 9th Street, Erie, PA 16501** | |

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

DISCRIMINATION BASED ON *(Check appropriate box(es).)*

☐ RACE  ☐ COLOR  ☒ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN
☐ RETALIATION  ☒ AGE  ☒ DISABILITY  ☐ OTHER *(Specify below.)*

DATE(S) DISCRIMINATION TOOK PLACE
Earliest **08-04-2003**    Latest **12-31-2003**

☐ CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

1. I have been employed with the respondent since August 4, 2003, as a Case Worker II on a "per diem" basis. I was did not receive paid holidays and I am not eligible for any employment benefits. On October 10, 2003, I was discharged from my position. In December, 2003, I was denied the opportunity to apply for and be selected for one of two Case Worker II positions.

2. On October 10, 2003, Paul Consella, Administrator, told me that my "per diem" job was over and that this would be my last day. In December, 2003, the respondent did not give me a reason for denying me the opportunity to apply and be selected for a Case Worker II position.

3. I believe that the respondent discriminated against me because of my sex, male, in violation of Title VII of the Civil Rights Act of 1964, as amended, and my age, 57, in violation of the Age Discrimination in Employment Act of 1967, as amended, and my medical condition, and/or disability, and/or perceived disability, in violation of the Americans with Disabilities Act of 1990, as amended, in that, the respondent retained a less qualified, less experienced, and non-disabled individual (Angela Lawton, age 37). The respondent hired two non-disabled females, age 20's, (names unknown), for the Case Worker II positions in December, 2003.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct.<br><br>x /-28-04<br>Date    Charging Party Signature | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT<br><br>SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |

EXHIBIT 16

EEOC Form 5 (5/01)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA ☒ EEOC | 172-2004-00756 |

| **Pennsylvania Human Relations Commission** | and EEOC |
|---|---|

State or local Agency, if any

| Name (Indicate Mr., Ms., Mrs.) | Home Phone No. (Incl Area Code) | Date of Birth |
|---|---|---|
| **Mr. David A. Dows** | **(814) 756-3369** | **01-15-1946** |

| Street Address | City, State and ZIP Code |
|---|---|
| **R R 3,  Edinboro, PA 16412** | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| **PA CIVIL SERVICE COMMISSION** | **101 - 200** | **(717) 787-7811** |

| Street Address | City, State and ZIP Code |
|---|---|
| **320 Market Street,  P O Box 569,  Harrisburg, PA 17108** | |

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

DISCRIMINATION BASED ON (Check appropriate box(es).)

☐ RACE  ☐ COLOR  ☒ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN
☐ RETALIATION  ☒ AGE  ☒ DISABILITY  ☐ OTHER (Specify below.)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest **12-01-2003**     Latest **12-31-2003**

☐ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

**1.  In December, 2003, the Pennsylvania Civil Service Commission did not refer me for Case Worker II positions with Erie County Office of Children & Youth.**

**2.  In December, 2003, Paul Concella, Administrator of the Office of Children & Youth, tole me that the Civil Service rules allow him to hire interns. The Pennsylvania Civil Service Commission did not give me a reason for not referring me for a Case Worker II position with Erie County Office of Children & Youth.**

**3.  I believe that the respondent discriminated against me because of my sex, male, in violation of Title VII of the Civil Rights Act of 1964, as amended, and my age, 57, in violation of the Age Discrimination in Employment Act of 1967, as amended, and my medical condition, and/or disability, and/or perceived disability, in violation of the Americans with Disabilities Act of 1990, as amended, in that, the respondent referred and/or hired two non-disabled females, under age 40, (names unknown). I am the top scorer on the Civil Service list for the Case Worker II position.**

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| 4-28-04 <br> Date          Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year ) |

EXHIBIT
17

EEOC Form 161 (3/98)    **U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## DISMISSAL AND NOTICE OF RIGHTS

| | |
|---|---|
| To:  **David A. Dows**<br>**R. R.# 3,**<br>**Edinboro, PA 16412** | From:  **Pittsburgh Area Office**<br>**1001 Liberty Avenue**<br>**Suite 300**<br>**Pittsburgh, PA 15222** |

| ☐ | *On behalf of person(s) aggrieved whose identity is*<br>*CONFIDENTIAL (29 CFR § 1601.7(a))* |
|---|---|

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **172-2004-00756** | **Legal Unit** | **(215) 440-2828** |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

☐  The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐  Your allegations did not involve a disability as defined by the Americans with Disabilities Act.

☐  The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐  Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge.

☐  Having been given 30 days in which to respond, you failed to provide information, failed to appear or be available for interviews/conferences, or otherwise failed to cooperate to the extent that it was not possible to resolve your charge.

☐  While reasonable efforts were made to locate you, we were not able to do so.

☐  You were given 30 days to accept a reasonable settlement offer that affords full relief for the harm you alleged.

☒  The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☐  The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐  Other *(briefly state)*

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, and/or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this Notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

Enclosure(s)

**Marie M. Tomasso,**
**District Director**

cc:  **State Civil Service Commission**

08 30 04

*(Date Mailed)*

EEOC Form 5 (5/01)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | 172-2005-00221 |

| Pennsylvania Human Relations Commission | and EEOC |
|---|---|
| State or local Agency, if any | |

| Name (Indicate Mr., Ms., Mrs.) | Home Phone No. (Incl Area Code) | Date of Birth |
|---|---|---|
| **Mr. David A. Dows** | **(814) 756-3369** | **01-15-1946** |

| Street Address | City, State and ZIP Code |
|---|---|
| **R.D.# 3 Edinboro, PA 16412** | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| **PA  STATE CIVIL SERVICE COMMISSION** | **Unknown** | **(717) 787-7811** |

| Street Address | City, State and ZIP Code |
|---|---|
| **320 Market Street,  P.O. Box 569,  Harrisburg, PA 17108** | |

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

| DISCRIMINATION BASED ON (Check appropriate box(es).) | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|

| | | | | | Earliest | Latest |
|---|---|---|---|---|---|---|
| ☐ RACE | ☐ COLOR | ☒ SEX | ☐ RELIGION | ☐ NATIONAL ORIGIN | **07-18-2004** | **12-08-2004** |
| ☐ RETALIATION | ☒ AGE | ☐ DISABILITY | ☐ OTHER (Specify below.) | | ☐ CONTINUING ACTION | |

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

1. The Respondent as a referral source for the hiring of Children and Youth Services Caseworkers for County Agency/Governmental entities throughout the Commonwealth of Pennsylvania, maintains two eligibility lists for civil service positions.  One eligibility list certifies and ranks individuals based on testing and experience..  The other list identifies individuals who have completed  one semester internship in a similar or comparable position but does not rank them and does not require any testing.

2. Respondent permits the Children/Youth agency/governmental entity in each county the option to hire from either listing without  regard to the rankings of the individuals.

3. I believe that the Respondent's policy of permitting the hiring from either list discriminates against males and/or individuals who are 40 years old or older, in violation of Title VII of the Civil Rights Act of 1964, as amended, and/or the Age Discrimination in Employment Act, in that the hiring agency without guidance or direction predominantly selects applicants from the Internship List which consists primarily of females and/or individuals significantly under 40 years of age, which does have an adverse impact against males and older workers.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| x12-10-04<br>Date          Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>(month, day, year) |

EXHIBIT 18

EEOC Form 161 (3/98)          **U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## DISMISSAL AND NOTICE OF RIGHTS

To:  **Mr. David A. Dows**                          From:  **Pittsburgh Area Office**
    **RD #3**                                          **1001 Liberty Avenue**
    **Edinboro, PA 16412**                                **Suite 300**
                                **Pittsburgh, PA 15222**

[ ]  *On behalf of person(s) aggrieved whose identity is*
     *CONFIDENTIAL (29 CFR § 1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 172-2005-00221 | **Legal Unit** | (215) 440-2828 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

[ ]  The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ]  Your allegations did not involve a disability as defined by the Americans with Disabilities Act.

[ ]  The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ]  Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge.

[ ]  Having been given 30 days in which to respond, you failed to provide information, failed to appear or be available for interviews/conferences, or otherwise failed to cooperate to the extent that it was not possible to resolve your charge.

[ ]  While reasonable efforts were made to locate you, we were not able to do so.

[ ]  You were given 30 days to accept a reasonable settlement offer that affords full relief for the harm you alleged.

[X]  The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ]  The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ]  Other *(briefly state)*

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, and/or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this Notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred **more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

*Joseph M Hardiman III*               03-03-05

Enclosure(s)       **Joseph M. Hardiman, III**      *(Date Mailed)*
                **Area Director**

cc:  **PA State Civil Service Commission**

## COMMONWEALTH OF PENNSYLVANIA

State Civil Service Commission      :      State Civil Service Commission

            v.                   :

Erie County Children and Youth,    :
Erie County Child Welfare Service    :      Appeal No. 23874

Earl Dryer                           John Onorator
Attorney for State Civil Service        Attorney for Appointing Authority
   Commission

# ADJUDICATION

       The State Civil Service Commission (hereafter "Commission")[1] held an investigative hearing under Section 951(d) of the Civil Service Act to determine whether the Erie County Children and Youth, Erie County Child Welfare Service (hereinafter "Respondent") is in violation of the Civil Service Act or Rules when it makes appointments and/or enters into contractual arrangements with individuals that avoid civil service hiring procedures. A hearing was held on August 23, 2004, in the State Office Building in Pittsburgh, Pennsylvania, before Commissioner James W. Martin, Commissioner Marwan Kreidie, and Chairman Katherene E. Holtzinger Conner, who presided.

---

[1] To avoid confusion, "Commission" will be used to indicate the adjudicatory branch of the State Civil Service Commission and "SCSC" will be used to indicate the administrative branch.

EXHIBIT 19

2

The Commissioners have reviewed the Notes of Testimony and exhibits introduced at the hearing. The issues before the Commission are whether the following have been violated: (1) Section 903 of the Civil Service Act, which prohibits obstructing any person in regard to the right of appointment; (2) Section 501 of the Civil Service Act, which requires that appointments to civil service positions be accompanied by use of an eligible list established by the SCSC; (3) Rule 103.5 (4 Pa. Code § 103.5), which requires each appointing authority to report all appointments or any change in positions to the Commission's Executive Director.

## FINDINGS OF FACT

1.  An investigative hearing was convened before this Commission under Section 951(d) of the Civil Service Act.[2]

2.  In a contract dated June 26, 1973, the SCSC, the Department of Public Welfare, and Erie County entered into an agreement which provides that all positions in the County Child Welfare Agencies shall be considered to be in the classified service

---

[2] Section 951(d) provides that:

> Notwithstanding any other provisions of this section, the commission may, upon its own motion, investigate any personnel action taken pursuant to this act and, in its discretion, hold public hearings, record its findings and conclusions, and make such orders as it deems appropriate to assure observance of the provisions of this act and the rules and regulations thereunder.

71 P.S. § 741.951(d).

as defined in the Civil Service Act, and that the Civil Service Act and Rules shall apply to all Child Welfare personnel of Erie County as though originally specified[3] in the Civil Service Act. SCSC Ex. 1.

3.    In November of 2003, David Dows wrote a letter to the SCSC requesting information concerning eligible lists issued by the SCSC to Respondent for the position of Caseworker. N.T. pp. 21-22.

4.    Dows indicated to Steve Shartle, Chief of the Division of Audit and Technical Services at SCSC that he, Dows, had previously been employed as a Caseworker with Respondent: . N.T. p. 22.

   a.    Respondent appointed Dows to a per diem Professional position effective August 4, 2003. SCSC Ex. 13.

   b.    Dows was involuntarily removed from the position effective October 10, 2003. N.T. pp. 22, 25; SCSC Ex. 13.

5.    When Shartle reviewed the SCSC computer records of caseworkers for Respondent, which had no indication that Dows had been an employee of Respondent. N.T. p. 22.

---

[3] The contract contains several exceptions which are not relevant to the present case.

4

6.    Patrice Berchtold, Human Resource Analyst 2 with
       Respondent, advised Shartle that Dows had been a
       per diem employee of Respondent who had been
       fired but that this had not been reported to the
       SCSC. N.T. pp. 22, 25.

7.    Respondent hired per diem employees on a
       substitute basis to determine if they would work
       out and become permanent civil service
       employees. N.T. p. 22.

8.    Berchtold advised Shartle that Respondent had
       hired two Clerk Typists, Michele Tharp and Lisa
       Traeger, without civil service certifications. N.T.
       p. 26.

9.    Traeger was added to Respondent's payroll as a
       per diem Clerk Typist effective June 16, 2003.
       SCSC Ex. 2.

10.   Tharp was added to Respondent's payroll as a per
       diem Clerk Typist effective November 17, 2003.
       SCSC Ex. 3.

11.   Neither Traeger's nor Tharp's appointment was
       reported to the SCSC. N.T. p. 31.

12.   Respondent terminated Tharp and Traeger on March 31, 2004. N.T. pp. 27-28.

13.   In February 2004, Shartle and another SCSC staff member performed an audit of Respondent's civil service personnel transactions, including appointments, made during the prior 18 months. N.T. p. 28.

14.   As part of the audit, Shartle reviewed Respondent's personnel records and spoke with Berchtold; Colleen Locke, a Human Resource Analyst 3; and Debbie Liebel, the Administrator of Respondent. N.T. pp. 28-29.

15.   The personnel records revealed the following personnel transactions:

   a.   Respondent promoted Nicole Johnson to the position of Caseworker 1 effective May 10, 2004. N.T. pp. 38-40; SCSC Ex. 4, p. 2.

   b.   Respondent did not notify the SCSC of Johnson's promotion to Caseworker 1: the SCSC's records indicated that Johnson was appointed to Social Casework Intern (Local Government) on January 5, 2004. N.T. pp. 38, 40.

   c.   Shannon Randall worked as a County Caseworker 2 at Respondent. Randall

6

> left effective July 23, 2004 to take another position. Respondent did not report Randall's separation from employment to the SCSC. N.T. pp. 41, 79; SCSC Ex. 5.
>
> d. Effective May 24, 2004, Respondent promoted Barbara Kowalski to the position of Statistical Assistant. Respondent reported the effective date of the promotion to the SCSC as June 29, 2004. SCSC Ex. 6.
>
> e. Respondent promoted Tami Petrucelli to the position of Casework Supervisor effective May 3, 2004. Respondent reported to the SCSC that the effective date of the promotion was May 4, 2004. SCSC Ex. 6.
>
> f. Respondent promoted Edith Joseph to the position of Casework Supervisor, effective January 31, 2003. The effective date reported to the SCSC was February 3, 2003. N.T. p. 45; SCSC Ex. 6, pp. 5-6.
>
> g. A certification for Joseph's promotion was not issued by the SCSC until February 3, 2003. N.T. p. 45.
>
> h. Respondent appointed Ann Marie DeSantis to the position of Clerk 3, effective October 13, 2003. The effective date reported to the SCSC was December 12, 2003. N.T. pp. 46-47; SCSC Ex. 6, p. 7.
>
> i. Respondent promoted Karen Heberle to the position of Casework Supervisor effective October 6, 2003. The effective date reported to the SCSC was October 17, 2003. N.T. p. 47; SCSC Ex. 6, pp. 13-14.

j.    Respondent promoted Laura Deitsch from Social Casework Intern to Caseworker effective July 1, 2003. The effective date reported to SCSC was July 14, 2003. N.T. p. 47; SCSC Ex. 6, pp. 18-19.

k.    Respondent promoted Brian Davis from per diem professional to Caseworker 1, effective June 16, 2003. Respondent reported the personnel transaction to the SCSC as a promotion from Social Casework Intern to County Caseworker 2 (Local Government) on July 14, 2003. SCSC Ex. 6, pp. 20-21.

l.    Respondent promoted Rita Yannayon to Clerk Typist 3 effective May 19, 2003 while Yannayon was in probationary status as a Clerk Typist 2. The posting for the position required that candidates have regular status. N.T. p. 49; SCSC Ex. 6, pp. 22-24.

m.    Respondent reported to the SCSC an effective date of October 23, 2003 for Yannayon's promotion. N.T. p. 49; SCSC Ex. 6, pp. 22-24.

n.    Respondent appointed Frank Rodriguez to a per diem position as a Juvenile Counselor effective June 3, 2003. The SCSC had no record of Rodriguez's employment[4] with Respondent. N.T. p. 52; SCSC Ex. 7.

o.    Respondent appointed Karen Dabrowski to the per diem position of

---

[4] Effective August 25, 2003, Rodriguez left his position. SCSC Ex. 7.

8

Juvenile Counselor on June 3, 2003.
N.T. p. 52; SCSC Ex. 8.

p.   Respondent appointed Maureen
     Legler to a per diem clerical position
     on July 1, 2003.  SCSC Ex. 9.

q.   Legler left the position on August 22,
     2003 in order to return to college;
     however, she was again appointed to a
     per diem position as a Clerk Typist on
     December 15, 2004 and remained in
     the position until January 7, 2004.
     SCSC Ex. 9.

r.   Neither of Legler's appointments was
     reported to SCSC.  N.T. p. 54.

s.   Respondent appointed Jennifer Frank
     to a per diem Clerk Typist position on
     July 9, 2003.  SCSC Ex. 10.

t.   Frank voluntarily left employment
     with Respondent on August 22, 2003.
     SCSC Ex. 10.

u.   Respondent did not report Frank's
     employment to the SCSC.  N.T. p. 54;
     SCSC Ex. 10.

v.   Respondent appointed Christina
     Duska to a per diem Clerk Typist
     position effective September 29,
     2003.  N.T. p. 55.  Duska voluntarily
     left the position effective November
     24, 2003.[5]  SCSC. Ex. 11.

w.   Neither Duska's appointment nor her
     leaving the position was reported to
     the SCSC.  N.T. pp. 55-56.

---

[5] The actual date listed on the Exhibit is November 24, 2004.  SCSC Ex. 11.

16.  The effective dates of the personnel transactions were different than the dates reported to SCSC. N.T. pp. 38-55; SCSC Exs. 4-10.

17.  Respondent sends paperwork concerning personnel transactions to the Department of Public Welfare, which inputs the information into the SCSC computer system that contains the records of personnel transactions. N.T. p. 79.

18.  On February 28, 2004, several administrators of Respondent retired. N.T. pp. 130-131.

19.  The retirements resulted in a reorganization of the Office of Children and Youth and resulted in Colleen Locke taking over the duties of Assistant Director. N.T. p. 131.

20.  Respondent requested and was issued by the SCSC a certification of eligibles for the reassignment of Locke to Children and Youth Assistant Administrator 2 (Local Government) effective March 1, 2004. N.T. p. 62; SCSC Ex. 14.

21.  Locke had previously been classified as a Personnel Analyst 3 for approximately two-and-a-half years. In that position, Locke had served as

Respondent's Personnel Director, Director of Court Related Services, and Director of Residential Services. N.T. pp. 127-128.

22.    Also effective March 1, 2004, Respondent processed a pay increase for Locke that raised her salary from $60,938 to $63,437 per year. N.T. p. 62; SCSC Ex. 14.

23.    As a result of the reorganization, some of the duties formerly performed by Locke were given to Carla Krott. N.T. p. 121.

24.    The County of Erie Personnel Change and Payroll Authorization form indicated that effective March 1, 2004 Krott was going from a position as Program Director, pay grade M-1, to Director of Administrative Services, pay grade M-2.    SCSC Ex. 15.

25.    The comments on the form indicated, "Requesting transfer and reclassification of Ms. Krott to position vacated by transfer of Colleen Locke. Rate/salary represents a 4.2% increase."    SCSC Ex. 15.

26.  Krott's civil service classification, County Casework Manager 2 (Local Government), remained the same. SCSC Ex. 15.

27.  On October 28, 2003, Respondent obtained a certification of eligibles for the full-time, substitute position of County Caseworker 2. N.T. p. 68; SCSC Ex. 19.

28.  David Dows appeared first on the October 28 certification with a final earned rating of 101. Dows is a veteran. SCSC Ex. 19.

29.  Tina Trohoske appeared second on the October 28 certification with a final earned rating of 92. Trohoske is not a veteran. SCSC Ex. 19.

30.  Respondent did not make any appointments from the October 28 certification. SCSC Ex. 19.

31.  On October 29, Respondent requested a list of part-time eligibles for the position of County Caseworker 2. N.T. pp. 69-70.

32.  On October 29, 2003, the SCSC issued certification 14313 for part-time, substitute County

12

Caseworker 2 (Local Government) for Erie County. SCSC Ex. 18.

33.    Two eligibles from Erie County appeared on the October 29 certification:    Trohoske and K. L. Dabrowski. SCSC Ex. 18.

34.    Several weeks before Respondent requested the part-time certification, Trohoske had changed her availability to indicate that she would accept part-time County Caseworker 2 positions. N.T. pp. 69-70; SCSC Ex. 17.

35.    Respondent appointed Trohoske to a part-time County Caseworker 2 position on November 12, 2003 from the October 29 certification.[6]    SCSC Ex. 18.

36.    On February 9, 2004, Respondent changed Trohoske's status from part-time employee to full-time employee as a County Caseworker 2. N.T. p. 71; SCSC Ex. 19.

---

[6]    The County of Erie Personnel Change and Payroll Authorization form indicated that Trohoske was being appointed to a per diem Professional position "to fill vacant casework position due to unpaid long term leaves of absences." SCSC Ex. 20.

37. At the time of the hearing, Respondent was no longer using per diem employees. N.T. pp. 112-113, 126.

## DISCUSSION

The Commission convened a hearing under Section 951(d) of the Civil Service Act to allow the parties to present evidence in support of their respective positions regarding whether the hiring practices of Respondent are in violation of the Civil Service Act or Rules when it makes appointments and/or enters into contractual arrangements with individuals that avoid civil service hiring procedures. The hearing was convened to allow the Commission to investigate whether the following have been violated: (1) Section 903 of the Civil Service Act, which prohibits obstructing any person in regard to the right of appointment; (2) Section 501 of the Civil Service Act, which requires that appointments to civil service positions be accompanied by use of an eligible list established by the SCSC; (3) SCSC Rule 103.5 (4 Pa. Code § 103.5), which requires each appointing authority to report all appointments or any change in positions to the SCSC's Executive Director. In an investigatory hearing conducted under Section 951(d) of the Act, the Commission assesses no burden on either party.

In support of its position, the SCSC presented the testimony of Steve Shartle, the Chief of the Division of Audit and Technical Services at the SCSC. N.T. pp. 15-16. In response, Respondent presented the testimony of Patrice

Berchtold, a Human Resource Analyst 2 with Respondent, and Colleen Locke, who was classified as a Children and Youth Assistant Administrator 2 (Local Government) with Respondent. N.T. pp. 22, 28-29.

The preliminary facts in the present case are largely undisputed. The SCSC, the Department of Public Welfare, and Erie County entered into a contract on June 26, 1973, which provides that all positions in the County Child Welfare Agencies shall be considered to be in the classified service as defined in the Civil Service Act, and that the Civil Service Act and Rules shall apply to all Child Welfare personnel of Erie County as though originally specified in the Civil Service Act. SCSC Ex. 1.

In November of 2003, David Dows wrote a letter to the SCSC requesting information concerning eligible lists issued by the SCSC to Respondent for the position of Caseworker. N.T. pp. 21-22. During a subsequent conversation with Steve Shartle, Dows indicated that he had previously been employed as a Caseworker with Respondent. N.T. pp. 15-16, 22. Respondent had appointed Dows to a per diem "Professional" position effective August 4, 2003.[7] SCSC Ex. 13. Dows was involuntarily removed from the position effective October 10, 2003. N.T. pp. 22, 25; SCSC Ex. 13. Shartle reviewed the SCSC computer records for employment transactions of Respondent; there was no indication that Dows had been an employee of Respondent. N.T. p. 22.

---

[7] The County of Erie Personnel Change and Payroll Authorization form indicated, "Recommending appointment of Mr. Dows in per-diem capacity to fill vacant casework positions due to unpaid long term leaves of absence. Rate/salary represents starting salary for Caseworker Trainee." SCSC Ex. 13.

Shartle subsequently spoke with Patrice Berchtold, the employee of Respondent who is the normal contact person for the SCSC. N.T. p. 22. Shartle testified that Berchtold advised him that Dows had been a per diem employee of Respondent who had been fired, and that this had not been reported to the SCSC.[8] N.T. pp. 22, 25. According to Shartle, Berchtold advised him that Respondent hired per diem employees on a substitute basis to determine if they would work out and become permanent civil service employees. N.T. p. 22. Berchtold told Shartle that Respondent had hired two Clerk Typists, Michele Tharp and Lisa Traeger, without civil service certifications.    N.T. p. 26.    Traeger was added to Respondent's payroll as a per diem Clerk Typist effective June 16, 2003. SCSC Ex. 2. The County of Erie Personnel Change and Payroll Authorization form indicated that Respondent was recommending appointment of Traeger in "per-diem capacity to temporarily fill vacancy created by a transfer and reclassification of Jennifer Prichard. There were no AFSCME bidders and no one available on the Civil Service List." SCSC Ex. 2. Tharp was added to Respondent's payroll as a per diem Clerk Typist effective November 17, 2003. SCSC Ex. 3. The County of Erie Personnel Change and Payroll Authorization form indicated that Tharp was being recommended to "fill clerical vacancy created by a clerk typist on medical leave (Marion Klocko.) Anticipated duration 4-6 weeks." SCSC Ex. 3. Shartle advised Berchtold that Respondent would have to fill the positions held by Traeger and Tharp through the normal civil service procedures. N.T. p. 26.

Shartle further testified concerning the SCSC's actions after learning that Tharp and Traeger had been appointed without civil service certifications.

---

[8] Prior to the investigatory hearing convened pursuant to Section 951(d) of the Act, Respondent had submitted a list removal request (Appeal No. LR2004-010) asking the Commission to remove Dows name from the eligible list for County Caseworker 1 and Caseworker 2. N.T. p. 9. By order dated May 4, 2004, the Commission denied the request and directed Respondent to promptly offer Dows a County Caseworker 2 position. Appeal No. LR2004-010.

These actions included issuing Respondent a comparable list, a list for Clerk Typist 3. N.T. p. 26. After surveying the list, only one eligible was available—this was the same person who had been available in March or April of 2003 when Respondent had looked at the Clerk Typist 3 list. N.T. p. 26. Consequently, the SCSC's Bureau of Personnel Assessment performed a localized test for Respondent. Candidates were added to the list of eligibles and a certification was issued to Respondent. N.T. p. 27. Respondent hired two Clerk Typist 3s from the certification. Tharp and Traeger were not within the rule of three on the certification and were ultimately terminated, effective March 31, 2004. N.T. p. 28; SCSC Exs. 2-3.

Shartle also testified that there are procedures under the Civil Service Act for filling positions on a substitute basis and for making emergency appointments. N.T. pp. 23-24. Shartle explained that substitute positions in the classified service are filled in the same manner as other civil service positions: using a list or other method of filling a position permitted by the civil service regulations. N.T. pp. 23-24. Concerning emergency appointments, Section 606 of the Act provides,

> Any appointing authority or any subordinate authorized by him may, to prevent serious impairment of the public business when an emergency arises and time will not permit securing the authorization from the director for the appointment of a certified eligible, appoint any qualified person during the emergency for a period not exceeding thirty days and may with the approval of the commission be extended for a further period not to exceed thirty days. The existence of a vacancy of which the appointing authority has had reasonable notice or of employment conditions of which the appointing authority had previous knowledge shall not be considered an

> emergency. Persons thus appointed shall be known as
> emergency employees. Appointing authorities shall
> forthwith report to the director all emergency
> appointments, and such appointments shall not be
> renewed.

71 P.S. § 741.606. Section 3 of Management Directive 515.3, "Classified Service Emergency Appointments," requires that the appointing authority submit the required supporting documentation for an emergency appointment to the SCSC within five days after the effective date of the appointment. The documentation consists of a civil service application, employment questionnaire, research questionnaire, a personnel authorization form or report of personnel transactions for non-state employees, and a written explanation of the circumstances which necessitated the emergency appointment.

Shartle testified that at the end of February 2004, he and another SCSC staff member performed an audit of Respondent's personnel transactions, including appointments, made during the prior 18 months. N.T. p. 28. As part of the audit, Shartle reviewed Respondent's personnel records and spoke with Berchtold, Colleen Locke, and Debbie Liebel, the Administrator of Respondent. N.T. p. 28. Shartle testified that during the audit, Respondent was cooperative and provided Shartle with access to any file that he wanted. N.T. p. 76. After the audit was complete, Respondent provided Shartle with further documentation of personnel transactions. N.T. pp. 36-37.

Shartle discovered a number of personnel transactions that had not been reported to the SCSC.[9] Shartle also testified that the effective date for an

---

[9] Details concerning these transactions are set forth in findings of fact 15.a through 15.c.

appointing authority's personnel transaction should be the same as the date reported to the SCSC. N.T. p. 44. Shartle acknowledged that Respondent sends paperwork concerning personnel transactions to the Department of Public Welfare which inputs the information into the computer system that contains the records of personnel transactions. N.T. p. 79. The SCSC presented evidence concerning a number of personnel transactions for which the date of the transaction was different than the date reported for the transaction to the SCSC.[10]

Shartle also testified concerning anomalies in other personnel transactions of Respondent. Respondent promoted Rita Yannayon to Clerk Typist 3 effective May 19, 2003 while Yannayon was in probationary status as a Clerk Typist 2. Yannayon had been appointed as a Clerk Typist 2 in the beginning of April 2003. SCSC Ex. 6, pp. 22, 24. The posting for the position required that candidates have regular status in order to be promoted. N.T. p. 49; SCSC Ex. 6, pp. 22-24. Respondent reported to the SCSC an effective date of October 23, 2003 for Yannayon's promotion. N.T. p. 49; SCSC Ex. 6, pp. 22-24.

The SCSC also presented evidence of "per diem" appointments that Respondent had made.[11]   Shartle testified that per diem employees are not recognized under the Civil Service Act or Rules.   Per diem was used by Respondent as an internal designation for an employee who would be part-time or as an employee who is in the position for a short period of time as a substitute. N.T. p. 98. Shartle explained that the SCSC does recognize part-time or substitute employees who are hired through normal civil service procedures. N.T. p. 98.

---

[10] Details concerning these transactions are set forth in findings of fact 15.d through 15.k..

[11] Details concerning these transactions are set forth in findings of fact numbers 33 through 43.

The SCSC also presented evidence concerning what appears to be an attempt by Respondent to avoid appointing Dows to a Caseworker position in the fall of 2003. On October 28, 2003, Respondent obtained a certification of eligibles for the full-time, substitute position of County Caseworker 2. N.T. p. 68; SCSC Ex. 19. David Dows, a veteran, was first on the October 28 certification with a final earned rating of 101. SCSC Ex. 19. Tina Trohoske, who is not a veteran, appeared second on the October 28 certification with a final earned rating of 92. SCSC Ex. 19. Respondent did not make any appointments from the October 28 certification. SCSC Ex. 19. On October 29, Respondent requested a list of part-time eligibles for the position of County Caseworker 2. N.T. pp. 69-70. On October 29, 2003, the SCSC issued certification 14313 for part-time, substitute County Caseworker 2 (Local Government) for Erie County. SCSC Ex. 18. Two eligibles from Erie County appeared on the October 29 certification: Tina Trohoske and K. L. Dabrowski. SCSC Ex. 18. Several weeks before Respondent requested the part-time certification, Trohoske had changed her availability to indicate that she would accept part-time County Caseworker 2 positions. N.T. pp. 69-70; SCSC Ex. 17. Respondent appointed Trohoske to a part-time County Caseworker 2 position on November 12, 2003 from the October 29 certification.[12] SCSC Ex. 18. On February 9, 2004, Respondent changed Trohoske's status from part-time employee to full-time employee as a County Caseworker 2. N.T. p. 71; SCSC Ex. 19.

---

[12] The County of Erie Personnel Change and Payroll Authorization form indicated that Trohoske was being appointed to a per diem Professional position "to fill vacant casework position due to unpaid long term leaves of absences." SCSC Ex. 20.

Shartle also testified concerning a change in Colleen Locke's classification. Locke had been classified as a Personnel Analyst 3 for approximately two-and-a-half years. Locke testified that in that position, she had served as Respondent's Personnel Director, Director of Court Related Services, and Director of Residential Services. N.T. pp. 127-128. Respondent requested and was issued by the SCSC a certification of eligibles for the reassignment of Locke to Children and Youth Assistant Administrator 2 (Local Government) effective March 1, 2004. N.T. p. 62; SCSC Ex. 14. Also effective March 1, 2004, Respondent processed a pay increase for Locke that raised her salary from $60,938 to $63,437 per year. N.T. p. 62; SCSC Ex. 14. Shartle testified that this transaction looked like a promotion. N.T. p. 63. Berchtold testified that the personnel action was not a promotion because Locke remained in the same pay grade; the personnel action was a meritorious pay increase.[13] N.T. pp. 117-118.

According to Locke, on February 28, 2004, several administrators of Respondent retired. N.T. pp. 130-131. The retirements resulted in a reorganization of the Office of Children and Youth, and in Locke taking over the duties of Assistant Director. N.T. p. 131. Berchtold testified that as a result of the reorganization, some of the duties formerly performed by Locke were given to Carla Krott. N.T. p. 121. The County of Erie Personnel Change and Payroll Authorization form indicated that effective March 1, 2004, Krott was going from a position as Program Director, pay grade M-1, to Director of Administrative Services, pay grade M-2. SCSC Ex. 15. The comments on the form indicated, "Requesting transfer and reclassification of Ms. Krott to position vacated by transfer of Colleen Locke. Rate/salary represents a 4.2% increase." SCSC Ex. 15.

---

[13] Berchtold also explained that Respondent's Executive Director, Debbie Liebel, had requested the pay increase from the County Commissioners. N.T. p. 118.

. Krott's civil service classification, County Casework Manager 2 (Local Government), remained the same. SCSC Ex. 15. According to Berchtold, since Krott's classification remained the same, the personnel action was not a promotion. N.T. pp. 121-122.

Berchtold also testified on behalf of Respondent concerning the per diem appointments, including per diem appointments of student interns at Respondent. According to Berchtold, Respondent usually has four or five student interns who are part of a program whereby the interns are paid by the State and do not appear on the County's payroll. N.T. pp. 109-110. Davis, Deitsch, and Johnson were interns for Respondent in the program. Once the students graduate, their state stipend stops. N.T. p. 110. Locke testified that students must have 975 hours of time working in order to become permanent civil service employees. N.T. p. 135. According to Berchtold, "nine out of ten times they have not finished their civil service requirement of the 975 hours, so at that point . . . we put them on with the County as a per diem status, so we can pay them until they have finished their 975 hours. Then at that point we promote them to County Caseworker 2." N.T. p. 110. Berchtold testified that the use of per diem status was done in an attempt to, "Fill vacant positions with people we have already invested time and money into." N.T. p. 111.

According to Berchtold, per diem employees were allowed throughout the County in all agencies. The per diem employees were not used often. They were also used at the Edmond Thomas Center, during busy times such as vacations, for clerical help, or if someone was on medical leave. N.T. pp. 123, 125. Concerning the Edmond Thomas Center, Locke testified that the center is a

24-hour facility that includes a detention center for delinquent children and a dependent child facility. N.T. p. 132. One or two of the shifts at the center were not fully covered by their full staff complement. N.T. p. 132.

Berchtold testified that Respondent did not submit the salaries paid to the per diem workers to the State for reimbursement. N.T. p. 111. Respondent no longer uses per diem employees; once Respondent became aware that this was not the proper procedure to fill positions, they stopped using per diems. N.T. pp. 112-113.

Berchtold also explained why there were often discrepancies between the dates of the personnel transactions and the dates recorded for those transactions on the SCSC's computer records. Berchtold explained that they must allow at least a week for the county paperwork to be approved by the county executive, and subsequently, the civil service paperwork is completed. N.T. pp. 113-114. The employee is required to complete an application and it is sent to the SCSC to obtain a certification. N.T. p. 114. According to Bercthold, it takes between two days and two weeks to obtain a certification. N.T. p. 114. For employees promoted, the employee begins receiving the increased pay as of the date of the county approval, but their probationary period starts as of the date of SCSC approval. N.T. p. 115.

A careful review of the evidence in the present case reveals that Respondent made numerous appointments and completed multiple personnel transactions in violation of the Civil Service Act and Rules. With regard to per diem employees, none of these employees was appointed pursuant to an eligible list as required by Section 501 of the Act. Furthermore, there is simply no

provision in the Act or Rules that allows for the use of per diem employees that Respondent was using to staff various positions. What emerges from the evidence presented at the hearing is a disturbing pattern of Respondent appointing individuals to civil service positions without according those individuals the appropriate civil service status. Use of such employees on a trial basis is completely unacceptable and directly contravenes the Act. Procedures are available under the Civil Service Act and Rules to appoint employees on a part-time, substitute,[14] or emergency basis, all while according the appointed individuals the appropriate civil service status. If Respondent had the need for employees on an emergency basis, they should have followed the procedures for emergency appointments under Section 606 of the Act and Management Directive 515.3. We note that Respondent has recognized the impropriety of using per diem employees and had ceased using them as of the date of the hearing. N.T. pp. 112-113, 126.

We also find that Respondent failed to notify the SCSC of personnel transactions as required by the Commission's Rules. Commission Rule 103.5 requires each appointing authority to "promptly report to the Director an appointment or change in position, status or residence of an employee in the classified service under its jurisdiction, or a permanent change in the salary or other basis upon which an employee is paid and the effective date of the change." 4 Pa. § Code 103.5. As noted previously, none of the employees appointed to per diem positions were reported to the SCSC; the SCSC did not have any record of these employees. Respondent also failed to report to the SCSC Nicole Johnson's

---

[14] Commission Rule 97.20 provides that substitute appointments or promotions "shall be made to fill permanent positions whenever the probationary or regular status incumbent of the position is: (1) On military, parental, sick or other leave where right of return is guaranteed. (2) Promoted." 4 Pa. Code § 97.20.

promotion or Shannon Randall leaving the employment of Respondent. We also note the discrepancies in the dates of the actual personnel transactions from the dates reported to the SCSC for numerous personnel transactions. As credibly explained by the SCSC's witness, these dates should have been the same; Respondent failed to report these personnel transactions promptly to the SCSC as required by Rule 103.5.

Concerning David Dows, the Commission's impression is that his case is a striking example of the consequence of failure to comply with the rules and regulations of the Commission. Had Respondent first hired Dows in accordance with the regulations, he would have been a probationary status employee. The Respondent would have had at least six months to evaluate Dows' performance and to remove him if he did not perform his job duties in accordance with the expectations of Respondent. Dows would have had a remedy, but also his burden, before the Commission upon a showing of discrimination. Instead, Respondent utilized an improper per diem hiring that resulted in Dows involuntary removal; and, because the per diem hiring was not in compliance with the regulations, Dows performance in that role, good or bad, could not be considered by the Commission as a proper basis to remove Dows name from the list of eligible candidates for Caseworker 1.[15] Further utilizing other candidates in a part-time status to avoid hiring Dows compounded the error.

---

[15] This issue has been remedied by the Commission's order dated May 4, 2004 (Appeal No. LR2004-010) directing Respondent to offer Dows a County Caseworker 2 position. Because the Commission can take judicial notice of other proceedings, we note that Respondent did want to remove Dows based on his performance. As noted, however, Dows earlier employment with Respondent as a per diem on a trial basis was, like the other per diem appointments, not reported to SCSC and contrary to the regulations. Thus, effectively precluding the Commission from considering that experience as a legitimate reason to remove a candidate from the list of eligibles.

With regard to the college interns utilized by Respondent, the Commission notes that Respondent is no longer using per diem employees. That said, the Commission recognizes the tremendous value to using college internships and notes that there are several different programs and regulations to facilitate that concept.

Turning to the change in Colleen Locke's classification, while Respondent processed the personnel transaction as a reassignment, it appears to the Commission that this personnel action is more properly characterized as a promotion. Under the Commission's Rules, a promotion is, "The movement of an employee to another class in a pay range with a higher maximum salary." 4 Pa. Code § 91.3. A reassignment is defined as, "The movement of an employee from one position to another position in the same class or in a similar class for which the employee qualifies at the same maximum salary." 4 Pa. Code § 91.3. In Locke's case, we note that simultaneously, Respondent increased Locke's salary from $60,938 to $63,437, changed her classification from Personnel Analyst 3 to Children and Youth Assistant Administrator 2 (Local Government), and gave her new duties as Assistant Director. Respondent should have followed the proper procedures under the Act to promote Locke to the new position by appointing her from a list as required by Section 501 of the Act, or by following the procedures for promotion without examination provided for by Section 501, Commission Rule 95.7 (4 Pa. Code § 95.7), and Management Directive 580.19. With regard to the change in Krott's duties, we are unable to conclude, based upon the evidence in this record, that the change in Krott's position was a promotion.

Concerning Yannayon's promotion to Clerk Typist 3, Respondent promoted her to that position while she was still in probationary status as a Clerk Typist 2. Under the Act and Rules, an employee must have or have had regular status in order to be promoted without examination. *See* 71 P.S. § 741.501, 4 Pa. Code § 95.7(c) and Management Directive 580.19. We also note, however, that Respondent delayed processing the promotion of Yannayon with the SCSC until the time when Yannayon would have ordinarily achieved regular status as a Clerk Typist 2—a delay which we interpret as an attempt to conceal Yannayon's status.

Having found numerous irregularities and improprieties in Respondent's personnel transactions, we are directing that Respondent fully comply with the requirements under the Civil Service Act and Rules in its future personnel actions. This includes following the proper procedures with regard to appointments and promotions, and notifying the SCSC of its personnel transactions in a prompt manner. We further direct that an audit be performed by the SCSC's Bureau of Audit and Technical Services of Respondent's personnel transactions within twelve months of the date of this adjudication to ensure that Respondent's personnel transactions are compliant with the Civil Service Act and Rules. Accordingly, we enter the following

## CONCLUSIONS OF LAW

1.    Respondent has made appointments to civil service positions without the use of eligible lists established by the SCSC as required by Section 501 of the Civil Service Act, as amended.

27

2.    Respondent failed to promptly report appointments or changes in the position of employees under their jurisdiction as required by Commission Rule 103.5 (4 Pa. Code § 103.5).

3.    Respondent promoted employees to positions without following the procedures under Section 501 of the Act, as amended, and Commission Rule 95.7 (4 Pa. Code § 95.7).

## ORDER

AND NOW, the State Civil Service Commission, by agreement of its members, directs the Erie County Children and Youth, Erie County Child Welfare Service to adhere to all requirements of the Civil Service Act and Rules in its appointments, promotions and all other personnel transactions. We further order that the Erie County Children and Youth, Erie County Child Welfare Service submit all required paperwork concerning personnel transactions to the SCSC in a timely fashion. At the conclusion of twelve months from the date of this order, the SCSC's Bureau of Audit and Technical Services will perform an audit of the

personnel transactions of the Erie County Children and Youth, Erie County Child Welfare Service from the date of this order to ensure that they have complied with the Civil Service Act and Rules.

State Civil Service Commission

Katherene E. Holtzinger Conner, Esquire
Chairman

James W. Martin
Commissioner

Marwan Kreidie
Commissioner

Mailed: November 23, 2004

```
 1            IN THE UNITED STATES DISTRICT COURT

 2         FOR THE WESTERN DISTRICT OF PENNSYLVANIA

 3                      - - -

 4  DAVID A. DOWS,                        )
                                         )
 5            Plaintiff,                  )
                                         ) Civil Action
 6       vs.                             ) No. 04-341 ERIE
                                         )
 7  PENNSYLVANIA CIVIL SERVICE           )
    COMMISSION and JOHN DOE,             )
 8                                       )
              Defendants.                )
 9
                        - - -
10
                 Deposition of MARIE THAU
11
              Wednesday, December 21, 2005
12
                        - - -
13
         The deposition of MARIE THAU, called as a
14  witness by the plaintiff, pursuant to notice and the
    Federal Rules of Civil Procedure pertaining to the
15  taking of depositions, taken before me, the
    undersigned, Eugene C. Forcier, Stenographer
16  Commissioner in and for the Commonwealth of
    Pennsylvania, at the Office of the Attorney General,
17  Commonwealth of Pennsylvania, Litigation Section,
    Strawberry Square, Harrisburg, Pennsylvania  17120,
18  commencing at 12:55 o'clock p.m., the day and date
    above set forth.
19
                        - - -
20
              COMPUTER-AIDED TRANSCRIPTION BY
21              MORSE, GANTVERG & HODGE, INC.
                    ERIE, PENNSYLVANIA
22                    814-454-6655

23                      - - -

24

25
```



EXHIBIT
20

 1  conversation?

 2      A      Basically, that they had an employee who

 3  was -- they hired as a per diem employee, professional

 4  per diem employee.

 5      Q      And is that an unusual event, under the

 6  Civil Service Commission?

 7      A      Yes.

 8      Q      And what action was contemplated in

 9  response to their having hired a professional

10  per diem; did Mr. Shartle ask you to do anything

11  relative to that hire, or to investigate anything

12  about it?

13      A      Not at that time.

14             Basically -- I'm trying to remember.

15             I believe what I did, was -- no.  He didn't

16  ask me to do anything.  He did not ask me to do

17  anything.

18      Q      Someone else ask you to do something?

19      A      Huh-uh.  No.  No.

20      Q      Did -- even though it wasn't about

21  Mr. Dows, did you engage or participate in an

22  investigation of the Office of Children and Youth

23  civil service practices?

24      A      Yes.

25      Q      And would you tell us about your

```
 1              IN THE UNITED STATES DISTRICT COURT

 2          FOR THE WESTERN DISTRICT OF PENNSYLVANIA

 3                         -  -  -

 4   DAVID A. DOWS,                          )
                                            )
 5              Plaintiff,                   )
                                            ) Civil Action
 6         vs.                               ) No. 04-341 ERIE
                                            )
 7   PENNSYLVANIA CIVIL SERVICE             )
     COMMISSION and JOHN DOE,               )
 8                                           )
                Defendants.                  )
 9
                           -  -  -
10
                  Deposition of MARIE THAU
11
              Wednesday, December 21, 2005
12
                           -  -  -
13
          The deposition of MARIE THAU, called as a
14   witness by the plaintiff, pursuant to notice and the
     Federal Rules of Civil Procedure pertaining to the
15   taking of depositions, taken before me, the
     undersigned, Eugene C. Forcier, Stenographer
16   Commissioner in and for the Commonwealth of
     Pennsylvania, at the Office of the Attorney General,
17   Commonwealth of Pennsylvania, Litigation Section,
     Strawberry Square, Harrisburg, Pennsylvania  17120,
18   commencing at 12:55 o'clock p.m., the day and date
     above set forth.
19
                           -  -  -
20
                COMPUTER-AIDED TRANSCRIPTION BY
21                MORSE, GANTVERG & HODGE, INC.
                      ERIE, PENNSYLVANIA
22                      814-454-6655

23                         -  -  -

24

25
```

1   conversation?

2       A       Basically, that they had an employee who

3   was -- they hired as a per diem employee, professional

4   per diem employee.

5       Q       And is that an unusual event, under the

6   Civil Service Commission?

7       A       Yes.

8       Q       And what action was contemplated in

9   response to their having hired a professional

10  per diem; did Mr. Shartle ask you to do anything

11  relative to that hire, or to investigate anything

12  about it?

13      A       Not at that time.

14              Basically -- I'm trying to remember.

15              I believe what I did, was -- no.  He didn't

16  ask me to do anything.  He did not ask me to do

17  anything.

18      Q       Someone else ask you to do something?

19      A       Huh-uh.  No.  No.

20      Q       Did -- even though it wasn't about

21  Mr. Dows, did you engage or participate in an

22  investigation of the Office of Children and Youth

23  civil service practices?

24      A       Yes.

25      Q       And would you tell us about your

```
 1      Q      And we don't need the name, unless it
 2   involves OCY, but was that a county agency somewhere?
 3      A      I -- I don't remember all of -- whether the
 4   county, state, because I handle the county and state,
 5   so I am not -- it could be.
 6              However, it doesn't come directly to me, I
 7   kind of see it throughout the auditing process, and it
 8   goes somewhere else, and I get the final results, and
 9   we work with the computer portion of it, so --
10      Q      Now, my follow up question is:  Once an
11   agency requests that a person be removed from the
12   list --
13      A      Uh-huh.
14      Q      -- is the person still considered as if he
15   or she were on the list, or is the person temporarily
16   removed while the matter is examined by the
17   Commission?
18      A      The person -- I'm trying to think how this
19   works.
20              An agency would put on there is a pending
21   removal request on certification, and at that time the
22   individual, I believe, is still going out on
23   certifications, until which time -- they are not
24   appointed from that certification, but they are not
25   necessarily blocked from every certification.
```

```
 1      Q      But if I understand you, the name would
 2   come identified as pending --
 3      A      Pending removal.
 4      Q      -- removal request, or --
 5      A      Uh-huh.  It is usually after the fact, when
 6   I get it through an auditing process.
 7      Q      You see it later?
 8      A      Right.
 9      Q      And does that mean that the Rule of 3 would
10   still apply for that person, even though that
11   statement were next to his or her name?
12      A      The Rule of 3 would apply if they are not
13   successful in having the name removed.
14      Q      But, of course -- I shouldn't say of
15   course -- if I understand the order in which things
16   occurred, we will say, in our example, for this
17   question, an agency has asked someone be removed?
18      A      Uh-huh.
19      Q      Then lists, with that person's name on it,
20   says there is a pending removal request, and if later
21   it turns out the person wasn't removed, well, a hiring
22   decision was probably made in the meantime, wasn't it?
23      A      Uh-huh.
24      Q      And --
25      A      Could have been.  Sometimes they wait.
```

1      Q      Might have been?

2      A      Uh-huh.

3      Q      Don't know?

4      A      Uh-huh.

5      Q      And if the county agency hired someone

6  other than the person marked "pending removal

7  request", would that represent a problem for them, if

8  that were the highest ranking person; would the hiring

9  agency be in any violation of Commission regulations

10  for not having hired that person?

11      A      They would have to -- depending on what the

12  order said, but they would probably have to hire the

13  person, if they were unsuccessful with their request

14  to remove the person, if the person was in the

15  Rule of 3.

16      Q      Even if they had been impetuous, and had

17  hired someone else, rather than being patient and

18  waiting?

19      A      Uh-huh.

20      Q      Yes?

21      A      Yes.

22      Q      Have you ever had occasion to discuss with

23  any agency the status of someone who is actually

24  marked as pending removal requested?

25      A      Yes.