IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAVID A. DOWS,  :  <br>                   **Plaintiff** : <br>                            : <br>     v.                     : <br>                            : <br> **KATHERINE E. HOLTZINGER** : <br> **CONNER, ESQ., Chairman** : <br> **PENNSYLVANIA CIVIL SERVICE** : <br> **COMMISSION and JOHN DOE,** : <br>                            : <br>             **Defendants** : | No. 04-341  Erie <br> Judge McLaughlin |

## **DEFENDANT'S PRETRIAL NARRATIVE**

The only remaining Defendant, the Pennsylvania Civil Service Commission, through its attorneys, files the following Pretrial Narrative Statement required by L.R. 16.1.4 and at the direction of this Court.

    **A.**     **FEDERAL COURT JURISDICTION**

The Federal Court has jurisdiction over Title VII claims by virtue of 42 U.S.C. §2000e-5(f)(3).

Plaintiff also appears to raise a claim pursuant to the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §621 *et seq.*, however, this Court dismissed Plaintiff's ADEA claim by Order dated July 5, 2005. Plaintiff had also raised a Fourteenth Amendment claim, but does not seem to any longer pursue that claim as Plaintiff relies only on Title VII to confer jurisdiction on this Court.

B.    STATEMENT OF FACTS AND DEFENSES

Plaintiff alleges that a "dual list" system for county caseworkers was allegedly maintained by the Commission discriminates against males and older individuals. (Plaintiff's Pretrial Narrative at pgs. 2-3). The Commission disputes the version of "facts" offered by Plaintiff in his pretrial narrative. Many of the "facts" offered by Plaintiff have no support in the evidence gathered in the discovery process and cannot be proven at trial.

**TITLE VII CLAIM**

Plaintiff alleges that the Commission's practice of maintaining more than one list for County Caseworkers discriminates against males. The facts do not support such a claim. The Commission will proceed on the assumption that Plaintiff is alleging that it discriminated against him as an employment agency, not as an employer, under Title VII. Plaintiff is not an employee of the Commission and has never been an employee of the Commission. However, Plaintiff has applied for and taken several civil service exams, and has passed those exams and has been placed on lists of eligible candidates for County Caseworker 1 and 2 positions in Erie and Crawford counties, which lists are or were maintained by the Commission and are provided to appointing authorities upon request.

Plaintiff Title VII claims appears to be one of disparate impact. Under a disparate impact theory, liability is established when a facially neutral policy affects members of a protected class in a significantly discriminatory manner. Healy v. Southwood Psychiatric Hospital, 78 F.3d 128, 131 (3d Cir. 1996), citing Dothard v. Rawlinson, 433 U.S. 321, 329 (1977). To prevail on a disparate impact claim, a plaintiff must first establish a prima facie case by demonstrating that application of a facially neutral standard has resulted in a significantly discriminatory hiring pattern. Lanning v. SETPA, 181 F.3d 478, 485 (3d Cir. 1999) and 42 U.S.C. § 20003-2(k). Once a plaintiff establishes a prima facie case, the burden shifts to defendant to show that the practice is consistent with business necessity. Id. at 485 and 42 U.S.C. § 20003-2(k). In this instance Plaintiff must show that a facially neutral standard of the Commission has resulted in the alleged gender discrimination.

Plaintiff's claims are based on several faulty "facts" or assumptions. First, Plaintiff appears to believe that the Commission maintains a "dual list" system of referring candidates for Caseworker 2 positions at County Offices of Children and Youth Offices. This is not true. Second, he seems to believe that he was not being referred by the Commission to Erie County Office of Children and Youth for Caseworker positions. Again, this is also not true. The following facts set forth Plaintiff's interaction with the Commission during the time frame relevant to this litigation and how the Commission fulfills its duties as an "employment agency".

It is the Commission's responsibility to accept applications from candidates for government positions, examine the candidates, score the examinations and place the names of persons who have passed the examinations on civil service lists of eligibles which are then provided, upon request, to any agency or appointing authority seeking to fill a job in the classified service. These lists are provided upon request to the agency, expire within sixty (60)

3

days after they are provided, and may be returned unused if no position is filled from that list. If an agency fills a position from a requested list, the agency must return the list with information added to indicate who was contacted, how they responded and who was selected to fill the position. The Commission will then review the list to ensure that the selection was made appropriately and in accordance with the Civil Service Act and the Commission's rules and regulations.

County Social Caseworker job titles, which are at issue in this case, are civil service covered positions and Erie County is obligated to hire caseworkers through an appropriate Civil Service process. The Commission maintains eligibility lists for the following four positions that are relevant to this litigation: County Social Casework Intern, County Caseworker 1, County Caseworker 2 and County Caseworker 3 positions.[1]

With regard to county Social Casework Intern positions, Management Directive 580.38, Amended, Use of Intern Job Titles in the Classified Service, Section 5(c) provides that the Commission "shall recruit and examine candidates and establish employment lists for interns pursuant to Section 506 of the Civil Service Act." These management directives have the force and affect of law. The listed objectives are as follows: a) to provide an intensive training and work experience period for selected college students who are interested in a career in state government; b) to promote interns who successfully complete the training and work experience period to a trainee or working level job title; c) to advise interns that they will be eligible to return to state government employment upon successful completion of their collegiate studies; and d) to attract students with high potential for government work in the appropriate field and to

---

[1] By regulation, the Commission is required to keep multiple lists as an eligible list shall be composed of as many lists as necessary to meet employment needs in locations where the jobs are available. 4 Pa. Code § 97.1.

supplement, not replace, existing efforts to recruit college graduates. Along with County Social Casework Intern, the intern job titles include Information Technology Intern, Accounting Intern, Engineering Intern and Vocational Rehabilitation Counselor Intern.

The County Social Casework Intern class originated in October 1988 and is coded as L0618. The County Social Casework Intern program, as well as the other intern programs, are in place to assist in recruitment and training of colleges students with the expectation that they will assume positions upon graduation as local government agencies in Pennsylvania experience difficulty in recruiting and retaining employees for these difficult to fill positions.

The County Social Casework Intern list is comprised of full-time college students with junior or senior standing in an accredited undergraduate bachelor's degree program in sociology, social welfare, psychology, gerontology or other related social sciences, who have completed the first semester of their junior year (or 75 credits) and have satisfactorily completed fifteen (15) credits in one of the major fields of study. County Social Casework Intern applicant's tests/applications are scored and they are ranked by experience and training as permitted by Section 502 of the Civil Service Act. Contrary to Plaintiff's belief, individuals on the County Social Casework Intern list are only eligible to be hired into student intern positions and these intern lists are not used by Erie County Office of Children and Youth ("OCY") in place of Caseworker 1, 2 or 3 lists to hire Caseworker 1, 2 or 3s. Student interns are hired by Erie County OCY over and above the normal complement of Caseworkers employed by OCY and the student interns are paid either by the Erie County OCY or by the state through a CWEB program. However, a Social Casework Intern who successfully completes a six-month internship program in a local government agency, such as Erie County OCY, and has received a bachelor's degree, is then eligible for promotion by means of position reclassification to a position as a County

Caseworker 2 or an Aging Care Manager 2. A County Caseworker 1 is also eligible for promotion to a Caseworker 2 position after six 96) months of experience as a Caseworker 1.

The County Social Caseworker 1, 2 and 3 lists are comprised of individuals who have met the minimum requirements for the positions, who have taken and passed the civil service exam and are then ranked by examination. Applicants for County Caseworker 2 positions who have not participated in and completed the six-month internship program or who are not promoted from a Caseworker 1 position, must meet minimum experience and training requirements and pass a written examination for appointment to the position.

Plaintiff applied for, took the civil service exams, passed the exams and was placed on the Civil Service Commission's lists of eligibles for County Caseworker 1 and 2 positions in Erie and Crawford Counties. (Plaintiff is a veteran and had, at all times relevant to this litigation, the highest final earned rating of Erie County residents on the County Caseworker 1 list and the second highest final earned rating on the County Caseworker 2 eligibles lists.

The Civil Service employment application asks applicants to indicate all types of employment for which they are available, (full-time, part-time, limited term and/or temporary). Applicants can elect as many of these categories as they wish and they can also contact the Commission at any time and make changes to their availability selections. Plaintiff had only made himself available for full-time employment and never changed his availability during the time at issue in this litigation.

Without the knowledge or consent of the Commission, Erie County appointed Plaintiff to a Caseworker position on August 4, 2003 as a "per diem" worker, without the benefit of a certification of eligibles. Plaintiff was subsequently terminated from this position on October 10, 2003. In the meantime, on September 24, 2003, Erie County requested a County Caseworker 1

6

part-time certification list for part-time appointments. Plaintiff's name did not appear on this certification because he had not indicated that he was interested in or available for part-time employment. Two Erie County residents were appointed from this Certification, Karen Dabrowski, effective November 10, 2003 and Kimberly Warchol, effective December 24, 2003. The Commission then became aware that on or about January 30, 2004, Ms. Warchol was notified that the position in which she was hired part-time would become permanent full-time position effective February 17, 2004.

On October 28, 2003, Erie County requested a County Caseworker 2 certification of eligibles for a full-time, substitute appointment. Plaintiff was the highest rated candidate on the certification and the only county resident veteran. To the Commission's knowledge, the eligibles on this list were not contacted, no appointments were made and the certification was returned unused to the Commission on November 3, 2003. On October 29, 2003, Erie County requested a County Caseworker 2 certification of eligibles for part-time, substitute appointment. Plaintiff's name did not appear on this certification because he had not indicated that he was interested in or available for part-time employment. Erie County resident Tina Trohoske was appointed to the part-time position, as she had changed her availability for employment to add part-time on October 8, 2003. The Commission later learned that she was moved to a permanent full-time caseworker position on February 9, 2004. Erie County did not request any lists of eligibles from the Commission in December 2003.

In November 2003, the Commission, through employee Steve Shartle, learned of Plaintiff's "per diem" appointment to a caseworker position and his subsequent termination by OCY Erie County and a review of the Commission's records revealed that the appointment and termination actions were never reported to the Commission by Erie County OCY. The

7

Commission was advised by an Erie County human resources person, Patrice Berchtold, that "per diem" hires were made without Civil Service certification and without notification to the Commission to determine if the candidate's performance warranted permanent employment from the certification of eligibles. This employment practice as described was inconsistent with all civil service hiring regulations and procedures and an on-site audit of Erie County was conducted by Commission staff in February 2004.

In the meantime, the Commission had received a Request for Removal of Eligible pursuant to Management Directive 580.34, as amended, for David Dows from Erie County on February 23, 2004. The request asked to have Plaintiff's name removed from all certification lists issued to Erie County for a position as either a County Caseworker 1 or County Caseworker 2. Erie County's justification for the request included a reference to Plaintiff's previous employment as an "emergency per diem County Caseworker from 8/4/03 to 10/10/02." [2] During the pendency of a list removal request review, the individual that is being requested to be removed remains on the list of eligibles. If the requesting agency then makes any appointments from a list on which the individual they seek to remove remains, it is up to the agency requesting the removal to choose whether they want to pass over that individual's name pending its removal and appoint another eligible, or not fill the vacant position until after the request is decided. However, if the list removal request is denied and an appointment or appointments have been made not choosing that individual, the Commission will order that the individual passed over because of a pending list removal request be provided a remedy consistent with Commission Management Directives, which may include being hired.

---

[2] Consistent with Management Directive 580.34, a copy of the agency's request to remove his name was forwarded to Plaintiff for response and Plaintiff did respond to the request asking that the request be denied.

8

Erie County had been made aware by a Commission employee, Steven Shartle, that if Plaintiff's name appeared on a list of eligibles during the list removal process and that others were hired instead of Plaintiff, that if Plaintiff's name was not then removed from the list that there would be consequences and he would then have to be hired. During the pendency of the list removal request for Plaintiff Dows, his name remained on the Caseworker 2 list. [3]

On April 23, 2004, after the investigation was completed and after reviewing the report, the Commission denied the request to have Plaintiff's name removed from the certification lists issued to OCY Erie County and it issued an order directing that Plaintiff's name remain on the list for an extended period of time to compensate him for the time that his name was essentially deactivated while the request for his removal was pending. The Commission subsequently learned that Plaintiff had been passed over for appointment to a position of Caseworker 2 in Erie County when two (2) selections were made of certification # 02615 on April 19, 2004. Upon learning this, the Commission rescinded its previous order of April 23, 2004 and issued a new order dated May 4, 2004, which directed that Plaintiff should be promptly offered an equivalent position as a County Caseworker 2 by OCY Erie County.

---

[3] Action on the list removal request was deferred by the Commission and the Bureau of Audit and Technical Services ("BATS") within the Commission undertook an investigation into the facts and circumstances of Plaintiff's employment with OCY Erie County.

The Commission also ordered a civil service hearing under Section 951(d) of the Civil Service Act, 71 P.S. § 741.951(d), which permits the Commission to investigate, on its own motion, any personnel action that takes place within the classified service. The purpose of the hearing would be to have OCY Erie County explain its unusual hiring practices, including the hiring of "per diem" employees into non-civil service positions and of converting part-time employees to full-time employees shortly after they are hired.

On November 23, 2004, the Civil Service Commission issued an adjudication regarding OCY Erie County's hiring and promotion practices and concluded that OCY Erie County had made appointments to civil service positions without the use of eligibility lists as required by law, that it failed to promptly report appointments or changes in positions as required by Commission rules, and that it promoted employees to positions without following the law and procedures.

On June 1, 2004, Plaintiff was appointed as a County Caseworker 2 by Erie County OCY in a probationary status as directed by the Commission. On January 28, 2004, Plaintiff had filed a charge of discrimination with the EEOC at Charge # 172-2004-00755 against the Erie County Office of Children ("OCY") and Youth alleging that OCY discriminated against him based upon age, sex and disability when he was discharged from OCY on October 10, 2003 and then denied another appointment in December 2003 to a Caseworker 2 position. As a part of the settlement during the mediation of this EEOC complaint against Erie County, Plaintiff resigned his position of Caseworker 2, to which he had been appointed in June 2004.

Contrary to Plaintiff's beliefs or assumptions, the practice of local government agencies concerning hiring of caseworkers, and specifically Erie County, Local government agencies, including Erie County, do not predominately promote interns into Caseworker 2 positions. Local government agencies predominately hire County Caseworker 2s from the County Caseworker 2 eligibility list or by promoting Caseworkers 1s because there are just not enough individuals who have completed internships who are eligible to be reclassified into Caseworker 2 positions.

Statistics kept by the Commission from October 1, 2002 to September 30, 2004, show that 176 County Social Casework Interns were appointed across the state and thus, could have been eligible for appointment as a County Caseworker 2 upon successful completion of the internship and upon graduation. However, just because they could have been appointed does not mean these individuals were appointed. During that same period from October 1, 2002 to September 30, 2004, 438 County Caseworker 2s were actually appointed across the state from the lists of those who passed the examination for the position. Those lists did not include County Social Casework Interns. Clearly, many more appointments were made from the Caseworker 2

lists, than could have been made by promotion from an Intern to a Caseworker 2 position as permitted by regulation.

Furthermore, there were more females than males on the County Social Casework Intern list of eligibles in the period between October 1, 2002 to September 30, 2004. Of the 176 County Social Casework Interns referenced above, 11.4% were male and 88.6% were female. (Facts at ¶ 64). There were also more females than males on the County Social Caseworkers 2 list of eligibles during that same time frame. Of the 438 County Caseworker 2s referenced above, 22.6% were male and 77.4% were female.

To put these numbers in an even broader perspective, as of November 2, 2004, there were 2,756 County Caseworker 2s employed in Pennsylvania with 527 or 19.1% of them being male and 2,229 or 80.9% of them being female. During this same period of time 608 County Caseworker 1s were appointed from the list of those who had passed the examination for that position with 25.3% being male and 74.7% being female.

These statistics kept by the Commission indicate that having multiple lists is not the reason there are more females than males in County Caseworker 2 positions, or any county caseworker position for that matter. The statistics show that there are simply more females than males in any County Caseworker position because there are simply more females applying for the positions, taking the civil service tests, passing those tests and getting their names placed on the lists of eligibles than there are males doing that very same thing.

Plaintiff cannot meet his burden of proving disparate impact in this case. Plaintiff cannot show that the Commission, as an employment agency, failed to or refused to refer him for employment as a county caseworker at all or even because he was male. In fact, Plaintiff was referred to Erie County OCY on those lists for which he had made himself available for work

11

during the time frame at issue here. Furthermore, after learning of the employment practices of Erie County OCY that were inconsistent with all civil service hiring regulations and procedures and after declining to remove Plaintiff's name from the lists of eligibles certified to Erie County OCY, the Commission ordered Erie County OCY to hire Plaintiff into a caseworker 2 position and it do so. Plaintiff then voluntarily chose to settle litigation on an EEOC claim against Erie County OCY and give up his position as a caseworker.

It is clear from the undisputed facts that the reasons that Plaintiff was either hired and then discharged from a caseworker position, or not hired and then directed to be hired by the Commission to a caseworker position, were not because of any policy or standard maintained by the Commission. Instead, Plaintiff's long saga of being hired, fired, not hired and then directed to be rehired were all due to behavior of the Erie County OCY and not any policy, standard or rule of the Commission.

Furthermore, even if the Commission maintains some neutral standard or policy that results in more females being hired than males, such as the recruitment of interns and the maintenance of an intern list, this practice is consistent with business necessity. The facts clearly demonstrate that county caseworker position are and have historically been difficult positions to fill and to keep qualified workers and effort is needed to attempt to find and keep qualified candidates for these positions.

**ADEA CLAIM**

Plaintiff also continues to maintain that this alleged "dual list" system also results in age discrimination pursuant to the ADEA. However, Plaintiff cannot prevail on this claim at trial. First, this Court dismissed Plaintiff's ADEA claim in its July 5, 2005 Order ruling on Defendant's motion to dismiss. Second, the United States Supreme Court in Kimel v. Florida

Bd. of Regents, 528 U.S. 62, 67 (2000) concluded that the ADEA does not validly abrogate states' Eleventh Amendment immunity from suit by private individuals in Federal Courts. Therefore, Plaintiff cannot maintain this claim at trial.

**C.   EXHIBITS**

1. Pleadings

2. Deposition transcripts of Charlene Kolupski and Patrice Berchtold

3. Deposition transcript of David Dows

4. Management Directives 580.38, 580.34, 535.5 and other relevant management directives

5. Examinations for County Social Casework Intern and County Social Caseworker 1, 2 and 3

6. Civil Service Application of David Dows

7. Civil Service exam results for David Dows

8. Certifications of Eligibles dated September 24, 2003, October 28, 2003, October 29, 2003 and others

9. Erie County request to remove Dows from list of eligibles

10. Commission Adjudications and Orders dated April 23, 2004, May 4, 2004 and November 23, 2004

11. EEOC complaints by David Dows numbered 172-2004-00755, 172-2004-007756, 172-2005-00221

12. Evaluation guides for County Social Casework Intern and County Social Caseworker 1, 2 and 3

13. Information from Commission database concerning number of interns and caseworkers in Erie and across the state with gender information

14. Documents listed in Plaintiff's pretrial narrative

15. Documents listed in Plaintiff's Rule 26 initial disclosures

16. Documents produced by Defendant in Rule 26 initial disclosures

17. Any documents necessary to rebut witnesses or documents presented by Plaintiff

**D.   WITNESSES**

Patrice Berchtold
Office of Children and Youth
154 West Ninth Street
Erie, PA  16501-1303

Charlene Kolupski
Office of Children and Youth
154 West Ninth Street
Erie, PA  16501-1303

Stephen Shartle
Pennsylvania Civil Service Commission
320 Market Street
P.O. Box 569
Harrisburg PA  17108

Marie Thau
Pennsylvania Civil Service Commission
320 Market Street
P.O. Box 569
Harrisburg PA  17108

Benito Martinez
Pennsylvania Civil Service Commission
320 Market Street
P.O. Box 569
Harrisburg PA  17108

Karlos Deltoro
Pennsylvania Civil Service Commission
320 Market Street
P.O. Box 569
Harrisburg PA  17108

David Dows
Rural Route 3
Edinboro, PA  16412

### E. LENGTH OF TRIAL

Three (3) to four (4) days, if necessary after the disposition of dispositive motions.

### F. UNUSUAL LEGAL ISSUES

At this time there appear to be no unusual legal issues.  However, challenging issues may arise after resolution of the outstanding dispositive motions.

**Respectfully submitted,**

**THOMAS W. CORBETT, JR.**
**Attorney General**

By:    s/Linda S. Lloyd
**LINDA S. LLOYD**
**Office of Attorney General**      **Senior Deputy Attorney General**
**15th Floor, Strawberry Square**   **Attorney ID 66720**
**Harrisburg, PA 17120**
**Phone: (717) 705-7327**           **SUSAN J. FORNEY**
**Fax:    (717) 772-4526**          **Chief Deputy Attorney General**
**[llloyd@attorneygeneral.gov](mailto:llloyd@attorneygeneral.gov)**   **Chief, Civil Litigation Section**

**Date:  April 24, 2006**           **Counsel for Defendant**

15

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| DAVID A. DOWS, | : | |
| Plaintiff | : | |
| | : | No. 04-341  Erie |
| v. | : | Judge McLaughlin |
| | : | |
| KATHERINE E. HOLTZINGER CONNER, ESQ., Chairman PENNSYLVANIA CIVIL SERVICE COMMISSION and JOHN DOE, | : | |
| Defendants | : | |

**CERTIFICATE OF SERVICE**

    I, Linda S. Lloyd, Senior Deputy Attorney General for the Commonwealth of Pennsylvania, Office of Attorney General, hereby certify that on April 24, 2006, I caused to be served a true and correct copy of the foregoing document titled Defendant's Pretrial Narrative by Electronic means to the following:

**William Taggart, Esquire**
**1400 Renaissance Centre**
**1001 State Street**
**Erie, PA  16501-1834**
*Counsel for Plaintiff*

                                                            s/Linda S. Lloyd
                                                            **LINDA S. LLOYD**
                                                            Senior Deputy Attorney General