IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAVID A. DOWS , | : | CIVIL ACTION |
| Plaintiff | : | |
| | : | |
| v. | : | NO. 04-341 Erie |
| | : | |
| KATHERINE E. HOLTZINGER | : | Judge McLaughlin |
| CONNER, ESQ., Chairman | : | |
| PENNSYLVANIA CIVIL SERVICE | : | |
| COMMISSION and JOHN DOE , | : | |
| Defendants | : | JURY TRIAL DEMANDED |

**PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANTS'**

**MOTION FOR SUMMARY JUDGMENT**

Plaintiff, David A. Dows, by his attorney, William Taggart, files the following Brief in opposition to Defendants' Motion for Summary Judgment, and the Plaintiff opposes the Motion and provides this Brief in opposition to the Defendant's Motion for Summary Judgment.

**I. PROCEDURAL HISTORY**

This suit is brought and jurisdiction lies pursuant to the Title VII of the Civil Rights Act of 1964, as amended 42 U.S.A. § 2000e-5. And the ADEA. All conditions precedent to jurisdiction under § 706 of Title VII, 42 U.S.A. § 2000e-5(f)(3) and the Age Discrimination in Employment Act have occurred or have been complied with.

A Notification of Right to Sue Within 90 Days was issued by the United States Equal

Employment Opportunity Commission and this Complaint was filed within ninety days of the receipt of the aforementioned Right to Sue letter.

After motion practice prior to discovery the various claims asserted by Mr. Dows boiled down to claims of gender and age discrimination by the Pennsylvania Civil Service Commission. There is a disparate impact claim under the Age Discrimination in Employment Act.

**II. STATEMENT OF FACTS**

The facts of the matter are laid out in some detail in the Parties' Statements of Material Facts.

The Commission has the duty of administering numerous programs for filling positions in a broad array of Commonwealth and County positions. Generally these positions are filled by examinations which may be taken by anyone who meets the criteria to sit for the competitive examination, and those criteria are usually gender and age neutral. The competitive candidate exam applicants take a multiple question test which is computer graded. This competitive examination method has long been used for County Caseworker 1, 2 and 3 positions, including those for County Offices of Children and Youth, drug and alcohol programs and mental health programs.

Additionally the Commission creates certain job categories which are labeled internships, and among these is the County Caseworker Intern position, which is an alternative track into being a County Caseworker 2. The competitive caseworker positions antedate these internship programs. The Commission has developed application and selection procedures for people who wish to be interns. The Commission refers to the application as a test, and in the discovery process the term "unassembled test" was agreed upon for the view of the application as a test. The intern applicant unassembled exams are graded on a rolling basis as submitted. A grade is

assigned and intern applicants are then ranked by this grade.

The concurrent maintenance of multiple paths to be a county caseworker isn't necessarily objectionable. The illegality arises in several ways. First, as Karlos DelToro the Chief of Recruitment and Work Diversity (Dep. p. 4) explained, the internship program is only available to college students who apply in their junior year so as to participate on site in the requesting county social service agency in their senior year of college. ( Kolupski p. 17, 18) Thus, but for older, nontraditional college students, the people on the intern list are young, very young adults.

Second, the Commission takes a passive stance providing whichever list, intern list or competitive exam result is requested by an Office of Children and Youth. The Commission takes no position that one list's candidates are superior to those on the other. ( Deltoro 62). The Commission asserts that "the county social caseworker intern program was to be an alternative means, another means by which management could recruit and retain professionals in social services. It is meant as another recruitment tool, and retention tool of management, in addition to other ways that they hire their human service potentials." ( Deltoro p. 50 )

That other way to which Mr. Deltoro refers; there is no third way, is hiring from the competitive examination list for caseworker. The concurrent existence of these two paths may not be objectionable. However, the Commissions abets a county in discrimination in allowing it, without proven necessity, to request and hire from a list which is age skewed to very young potential workers.

Additionally the statistics in this case indicate that the intern list hiring yields a significantly lower rate of male hiring than does the competitive examination approach.

If the demand for caseworkers always exceeded the supply on the intern and competitive lists,

3

and the intern list were requested first, the least negative impact for persons on the competitive list would be perpetual second place and consequently later hiring. However, the inequality worsens greatly when supply exceeds demand, and then the harm can become the difference between being hired in the desired profession of caseworker and being unemployed altogether.

The testimony of Ms. Kolupski, head of Human Resources of the Erie Office of Children and Youth made clear that her agency would look first to the intern list to fill social worker positions, and only turn to the competitive list when no acceptable interns remained. (Kolupski p.24-26, 29)

Persons who have the requisite college work, meeting or equaling that required in the social worker intern position have no way to become interns; (Kolupski 27); so their only path is to take the competitive exam and then possibly be considered after interns are chosen.

## III.  ARGUMENT

**The Summary Judgment Standard**

In a Summary Judgment Motion pursuant to Federal Rule of Civil Procedure 56 the Court must view all of the facts in the light most favorable to the non-moving party and look to see if there is a genuine issue of material fact and, if not, whether the moving party was entitled to Judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 249-50, 106 S. Ct. 2505, 2510-11, 91 L .Ed. 2d. 202 (1986); *Gaul v. Lucent Technologies, Inc.*, 1998 WL 19937 (CA 3 NJ 1998). All inferences must be drawn in favor of the non-moving party. *Krause v. American Sterilizer Company,* 126 F3d 494 3rd Cir. 1997.

Federal Rule of Civil Procedure 56 provides that summary judgment is proper " if the pleadings, depositions, answers to interrogatories and admissions on file together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving

party is entitled to judgment as a matter of law. " The Court must grant all reasonable inferences from the evidence to the nonmoving party." <u>Knabe v. Boury Corporation</u> 114 F3d 407, 410

As to the Title VII claim relative to gender an employee presents evidence supporting a reasonable inference that a decision was made based on an illegitimate criterion summary Judgment for employer is not appropriate. *Weldon v. Kraft*, 896 F.2d 793, 797 (3d Cir. 1990); <u>Henkins v. Temple University</u>, 829 F.2d 437 440 (3d. Cir. 1987)

The issue is not whether the District Court Judge disbelieves the employer's articulated reasons or does or does not believe there was an invidious discriminatory reason but whether or not at trial a fact finder could reasonably do so**,** but rather showing as the <u>Fuentes</u> Court stated "such weaknesses, implausibilities, inconsistencies, incoherences, or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable fact finder could rationally find them unworthy of credence." *Fuentes v. Perskie* 32 F.3d at 765 (3d Cir.1994)

**The Commission's Methods Discriminate by Age and Gender**

The question becomes whether a discrimination claim meets tests laid out in apt cases. Mr. Dows is a fifty seven year old man who wants to be an Office of Children and Youth caseworker. To that end he took the competitive civil service examination for that position and Mr. Dows ranked number 1 in the competitive examination for the county caseworker position. ( Shartle Dep. 29) He was appointed, improperly it turned out, to a per diem position as a caseworker for the Erie County Office of Children and Youth, and he was removed against his will from that position. Mr. Dows challenged that removal in various ways while Erie County petitioned to remove him from the competitive civil service list. Mr. Dows opposed that Petition before the Commission and eventually was ordered back on the list with an extension of his time

on the list to help compensate for his having been suspended from consideration. Mr. Dows worked again as a caseworker 2 for the Erie County Office of Children and Youth until he was so vigorously urged by his employer to leave that position, that he did.

Mr. Dows remains available to work and desirous of working as an Office of Children and Youth caseworker in other counties. Mr. Dows can state his intent to work in a number of counties and can continue to sit for competitive examinations for caseworker.

However, no matter what actions Mr. Dows takes, the existence of the intern program will substantially reduce any chance he may have to receive a position. The existence of the intern program and how it is administered disparately impacts older workers so that all of them are substantially less likely to receive a caseworker position. The higher incidence of male appointments from the competitive list than from the intern list indicates that there is a disparate gender impact.

The County Social Casework Intern List is particularly dominated by women. Defendant Exhibit 26 shows that of one hundred and seventy six appointments from November 1, 2002 to September 30, 2004 only twenty were men, twelve percent. Exhibit 28, appointments and Promotions from October 1,2002 to September 30,2004, shows that only 11.4 percent of appointees were male.

The County Caseworker 2 appointments from October 1, 2002 to September 30, 2004, show that of four hundred and thirty eight appointments from the competitive list ninety nine or twenty two percent were male. Defendant Exhibits 27, 29

The competitive County Caseworker 1 statistics show that twenty five percent of those appointees are male ( Defendant Exhibit 30)

The Commission created and distributes to colleges and universities a DVD presentation explaining and touting the intern position. (Deltoro Dep. 91) Commission representatives would not generally direct a college student , prior to the senior year, to taking the competitive Civil Service Exam since the internship program will eventually lead to their permanent employment.

We now know that individual county offices of Children and Youth are desirous of hiring their interns with whom they are familiar. Indeed Ms. Kolupski's testimony indicates that the civil service internship program was created because without it interns must take the competitive exam to achieve permanent employment as a caseworker and consequently other persons may place ahead of them preventing the Offices of Children and Youth from hiring those persons who had been interns. Now there are no limitations upon the requesting office's choice to request a caseworker intern list rather than a competitive examination caseworker two list. The existence of the trainee list without appropriate controls upon its use creates a disparate impact upon older workers because a number of caseworker positions which can always be filled first are deliberately placed by this system out of reach.

The ADEA generally protects individuals over forty from age discrimination in employment. 29 U.S.C.§§ 623(a), 631(a). The original statute was later amended to cover employees of state and local governments. See Pub. L. 93-259 § 28(a)(2), 99 Stat.55, 74 (1974) amending section 11(b) of the ADEA, 29 U.S.C.§ 630(b)

National League of Cities v. Usery, 426 U.S.833, 96 S..Ct., 2465, 49 L .Ed.2d 245 (1976) held that the Tenth Amendment prohibited application of the wage and hour portions of the Fair Labor Standards Act to state and local governments. The question remained unanswered whether Congress had the power to compel state and local governments to comply with the ADEA.

In <u>EEOC v. Wyoming</u> 460 U.S. 226, 103 S. Ct. 1054, 75 L. Ed. 18 (1983) the Supreme Court addressed the question and held the ADEA could be applied to state law enforcement agencies. Thereafter, it has been accepted that state and local governments, including their civil service systems, are subject to the ADEA. Subsequently, Congress amended the ADEA on multiple occasions to provide an exception for firefighters and law enforcement agencies, Pub. L. 99-592 § 3100 Stat. 3342, 3342 (1986) codified at 29 U.S.C.§ 623(I) (1988) which lapsed in 1993, and in 1996 Congress again reinstated a law enforcement exception. 29 U.S.C. § 623(j)  Significantly Congress limited its amendments to law enforcement and firefighters, not other aspects of civil service, indicating no particular intent to prefer or protect Civil Service systems other than in their involvement with police and fire matters.

There is no ADEA exception protecting the trainee hiring. There is no adequate bona fide reason justifying allowing the hiring of college interns ahead of others. There is no safety issue as in police recruitment cases which looks to a states interest in recruitment of police personnel physically able to discharge their duties e.g. <u>Massachusetts Board of Retirement et al v. Murgia 427 U.S. 307, 96 S. Ct. 2562, 49 L. Ed 520 (1976)</u>  There is no safety issue requiring the hiring of younger persons as in the transportation safety cases. e.g. <u>Usery v. Tamiami Trail Tours</u>, 531 F. 2d 224 (5 Cir. 1976)  There is no great financial reason, as in the upholding of civil service rules forbidding police officer candidates to sit for Civil Service exams because of the great pension costs of older workers. e.g. <u>Feldman v. Nassau County</u>, 434 f.3d 177 ( 2d cir. 2006) Nor is there an issue of great investment of training resources, e.g. an alleged $100,00.00 to train a police officer and supposed shorter retention of officers who are older when they start. <u>Feldman v. Nassau County</u> 349 F. Supp.538 (E.D., N.Y. 2004)

Whether the Age in Discrimination in Employment Act, ADEA authorizes disparate impact claims was settled in Smith v. City of Jackson, Miss, 125 S. Ct.1536 (2005). The court held that proof of age motivation is not the only way to prove an ADEA claim but disparate impact can also support an ADEA claim. The plaintiffs in Smith, supra, were police officers who asserted that the city violated the ADEA by giving older officers lesser pay increases than younger officers. Five Justices agreed that the Fifth Circuit had erred in concluding that disparate claims are not available under the ADEA. Four Justices relied on the fact that the ADEA language is identical to the Title VII language which the Supreme Court famously relied upon in Griggs v. Duke Power Co. 401 U.S. 424 (1971) Justice Scalia added his concurrence based on his belief that the Supreme Court should defer to the Equal Employment Opportunity Commission's interpretation of the ADEA.

The Court held that to defend a practice having a disparate impact on older workers a defendant must show that the practice complained of is justified by reasonable non-age factors. The facially neutral intern program disproportionately impacts on older workers. The Commission does not show in this case the disparate impact is justified by any reasonable non-age factors.

It must be noted that relative to its gender discrimination the Commission must satisfy the higher standard of business necessity applicable to Title VII claims.

Before 1988 there were interns, but there was no civil service intern program. Those interns had a chance to obtain a caseworker position; the difference is that they had to compete for the position with nonintern applicants. The Civil Service Commission created two formal pathways by which one may become a County Caseworker, the intern approach utilizing an "unassembled

9

test" and the merit examination. The competitive method predates the intern method and was the sole method used until the intern system was formalized in 1988. The Commission's position is that each path is equally valid. The Commission has created no order in which one type or the other of list shall be requested from it or provided by it.

There are four nonmanagerial county caseworker social worker positions. The County Intern and caseworker positions are entry level positions. The positions are to be filled through the use of Civil Service lists provided upon request by the Commission.

The intern classification class code LO618 is rooted in 1988 and 1996 directives from the Governor's Office of Management. The intern test instrument, which is actually a simple application which will be reviewed and graded by the Commission was developed by the Commission. The Commission also authored an evaluation guide to aid in the review and grading of the intern test instrument.

The intern program is described by the Commission as another means to recruit and retain professionals in social services. The Commission has not taken the position that persons of the intern list are more qualified or should be considered superior candidates to those candidates who have taken the County Caseworker examination.

The Commission reaches out vigorously to college students who may qualify for the internship program. Commission representatives distribute fliers for the intern jobs, and discuss the intern program at job fairs. The commission has created a DVD promoting the intern program which is available free of charge.

Many of these interns are hired as county Caseworker 2 positions. The Erie Office of Children and Youth representative testified that she looks first to the intern list for hiring and only turns to

the competitive list if no intern is available. The failure of the Commission to decide which lists are provided gives county agencies the power to favor one list group over the other with their decision as to which list will be requested.

The intern list is for college juniors and seniors, and even though there may be some nontraditional students over forty who may be attracted into the program, the great majority of participants will be much younger than forty. Those persons who are accepted into the internship program serve a paid 975 hours internship in their senior year in college. Serving the internship without any untoward events leads to a seamless transition into the Caseworker 2 position and the new caseworker is not on probation.

**Conclusion**

Mr. Dows had once been hired improperly by the Erie County Office of Children and Youth in violation of Civil Service regulations as a per diem caseworker. (Shartle dep.37) Mr. Dows was on the competitive civil service list for County Caseworker, and the Office of Children and Youth petitioned to remove Mr. Dows from the Civil Service eligibility list (Shartle dep. p. 46, 48, 90-92.) While its petition was pending the County hired people who were interns or behind Mr. Dows on the competitive list. Since the Commission refused to remove Mr. Dows, in practical terms someone had the position that should have been filled by Mr. Dows. In order to correct the situation to some extent the Commission ordered the Erie County Office of Children and Youth to hire Mr. Dows. The County has exhibited a bias against Mr. Dows, but were there but one list or another way of making the hiring process impartial, the Commission would be a shield for Mr. Dows and all interested persons seeking a caseworker position.

The age and gender discrimination arising from the Commission's operation of its multiple lists for the county caseworker and intern positions is readily solved. For example, the

Commission can keep the internship program as it is but return to having the interns take the same competitive examination as do other candidates. The Commission can insist that hiring occur off the competitive list until it is exhausted or the internship program can be opened to a broader group of people with some social work or equivalent background including graduates who wish to serve as caseworkers.

The root of the problem addressed in this case is simply the desire of counties wishing to be sure they can hire their interns, which unavoidably leads to hiring which deliberately ignores the general population and looks to only a small, young and female slice of the population as the small set from which the county agency will do much of its hiring. This desire is not a reasonable nonage factor in the sense intended by <u>Smith v. City of Jackson</u> supra. Indeed, the Commission should be considered estopped from asserting such a claim because the Commission was charged with establishing equivalent testing for the intern and competitive county caseworker position and has argued that the candidate pools arising from the two sources are equivalent. The Commission develops the tests it administers, and its Bureau of Personnel Assessment created the test instrument. (Shartle Dep.17, 20, 21 )

Making it easier to hire interns who may not be any better than other candidates is not a reasonable factor shielding a discriminatory policy and practice.

There is adequate evidence of discriminatory and disparate treatment provided by both parties Plaintiff that the Defendants' Motion for Summary Judgment should be denied.

/s/ William Taggart  
William Taggart, Esquire  
PA # 19984  
1400 Renaissance Centre  
1001 State Street  
Erie, Pennsylvania 16501-1834  
Phone (814) 4511180  
FAX (814) 451-1188  
Wtesq@aol.com