IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAVID A. DOWS , | : | CIVIL ACTION |
| Plaintiff | : | |
| | : | |
| v. | : | NO. 04-341 Erie |
| | : | |
| KATHERINE E. HOLTZINGER | : | Judge McLaughlin |
| CONNER, ESQ., Chairman | : | |
| PENNSYLVANIA CIVIL SERVICE | : | |
| COMMISSION and JOHN DOE , | : | |
| Defendants | : | JURY TRIAL DEMANDED |

### Plaintiff Statement of Material Facts

1. David Dows is a white male born January 15, 1946 and resides in Edinboro, Pennsylvania

2. Stephen Shartle is the Director of the Bureau of Technical and Information Services and became Bureau Director. (Shartle dep. 3, 12 )

3. The Veteran's Preference, part of the Commonwealth's Military Code adds ten points to a veteran's final earned rating, but the ten points cannot be used to cause one to pass the test (Shartle dep. p.9)

4. There are four types of nonmanagerial county caseworker social worker positions, The intern and County Caseworker position are entry level positions. In some counties more experienced people may be appointed as County Caseworker 2 or 3. (Shartle 87-88) and all of the positions but the intern position are filled through competitive written examinations. (Shartle 88)

5. Trainee classes in Civil Service originated in the Governor's Office Management Directives in 1988 and number 535.5 Amended, dated September 12,1996(Deposition Exhibit 1).

1

6   Trainee classes can also be created from a Committee of Commonwealth funding agencies, the agencies which fund the local government agencies. The Commission has representatives who sit on this committee, known to some as the "Classification Committee." ( Shartle Dep.15-16 )

7.   Through this Committee the Commission has input on the classes being developed. (Shartle p. 17 )

8.   The Commission develops the tests it administers, and its Bureau of Personnel Assessment created the test instrument considered in this case.( Shartle Dep.17, 20, 21 )

9.   The County Caseworker title was created in the test development unit, the Governor's Office and the Department of Public Welfare as part of developing a local government classification plan. (Shartle Dep. 22-23)  Later the caseworker class was broken into additional categories: drug and alcohol case management specialist, aging care manager and county caseworker. ( Shartle Dep. p. 23)

10.   The counties play no part in the actual grading of the exam.; the Commission staff does the grading ( Shartle Dep .p. 28 )

11.   Mr .Dows received the highest score on the competitive examination for Drug and Alcohol Case Management Trainee and Drug and Alcohol Case Management Specialist.(Shartle Dep. 26 )

12.   Mr. Dows ranked number 1 in the competitive examination for the County Caseworker Position. ( Shartle Dep. 29)

13   At first Mr. Dows was not considered eligible for the County Caseworker 2 and 3, but after an inquiry by Mr. Dows he was allowed to sit for the exam.( Shartle Dep. 29)

14   The rule of 3 provides that on a civil service list, any of the top three available candidates

can be selected., although unlawful discrimination must be avoided but the Commission does not necessarily audit for discrimination. (Shartle dep.7,8) The rule further provides that if a veteran is in the rule of 3, then the veteran gets preference, and a nonveteran cannot be selected. (Shartle dep. p. 9) The Rule of 3 also applies to the intern list .( Shartle Dep 31, 54 )

15. The County Social Casework Intern, designation class code L0618 was devised by the Governor's Office of Administration.

16. Mr. Dows had once been hired improperly by the Erie County Office of Children and Youth in violation of Civil Service regulations as a per diem caseworker. (Shartle dep.37 )

17. Mr. Dows was on the competitive Civil Service for County Caseworker, and the Office of Children and Youth petitioned to remove Mr. Dows from the Civil Service eligibility list( Shartle dep. p. 46, 48, 90-92) While its petition was pending the County did not have to offer a position to Mr. Dows and it hired people who were interns or behind Mr. Dows on the competitive list. Since the Commission refused to remove Mr. Dows, in practical terms anyone hired had the position that should have been filled by Mr. Dows.

18. In order to correct the situation to some extent the Commission ordered the Erie County Office of Children and Youth to hire Mr. Dows. (Commission Order )

19. Any county that has civil service employees may request a County Social Casework Intern list, if it wishes to do so.( Shartle Dep.53, 54) There is no known protocol or standard governing when an OCY agency in a county may ask for the intern list, as opposed to the county caseworker list. (Shartle dep. P. 55)

20. The Commission through Mr. Shartle investigated the Erie County Office of Children and Youth regarding many violations of Civil Service Commission requirements.( Shartle dep.39,

Shartle Ex. 4 )

21.    The Pennsylvania Department of Welfare is the state agency responsible for the funding that flows to the County Offices of Children and Youth.

22.    Karlos DelToro is the Chief of Recruitment and Work Diversity for the Pennsylvania Civil Service Commission ( DelToro Dep. p. 4 )

23. The Commission Sends employments fliers for entry level jobs to career services personnel at colleges and universities around Northwestern Pennsylvania. (Deltoro dep. p.14)

24.    There are two Management Directives regarding the intern programs and providing guidance to the individuals dealing with trainee classes, in the classified service (Deltoro Dep. P.20-21, Dep. Exhibits 1 and 22)  These two directives constitute the total of directives known to Mr. DelToro concerning the development or maintenance of trainee lists. (DelToro p.22-23 Exhibit 21)

25.    Among its duties the Commission carries on resume evaluations to advise individuals as to which tests they can take based on their background. (Deltoro p. 27, 33, 35)

26.    There are Commission documents known as Evaluation Guides, each of which is specific to a specific job classification. ( Deltoro dep. p.28). Thus, there are specific evaluation guides for County Social Caseworker Intern and for County caseworker 1 and County Caseworker 2 (Deltoro dep p. 28)  These evaluation guides are developed in house by the Commission and approved by its Bureau of Personnel Assessment ( Deltoro Dep. p. 31)

27.    The competitive exam for County Caseworker was developed, written by and administered by the Commission. ( Shartle Dep p. 67) The County Caseworker competitive exam is an objective test consisting of all multiple choice type of questions. This exam is taken on a

computer and graded by the computer's program.; so age, gender and other nonperformance criteria cannot affect the outcome( Shartle Dep .p. 69)

28. An applicant for any type of exam, unassembled or true examination has a right to ask for a review of his or her grade.( Shartle Dep. 69)

29. The Commission maintains a County Caseworker 2 list, placement on which is determined by taking a competitive examination completely open to the general public. It is this test upon which Mr. Dows had the highest score. The caseworker 1, 2 or 3 competitive test requires that a candidate have some social work, or social work related prior experience, in order to sit for the examination. (Deltoro Tr. 53-55, Shartle 75) The competitive examination caseworker list predate the internship program. (Deltoro 60,62 61 )

30 The Commission maintains a county social caseworker intern list for County Caseworkers in the Area Agency on Aging, Drug and Alcohol and Office of Children and Youth lists in addition to the competitive examination list. .( Deltoro dep. p. 62)

31. The Commission asserts that "the county social caseworker intern program was to be an alternative means, another means by which management could recruit and retain professionals in social services. It is meant as another recruitment tool, and retention tool of management, in addition to other ways that they hire their human service potentials." ( Deltoro dep.. p.50)

32. Ms Charlene Kolupski is the Director of Human Resources and Clinical Resources for the Erie County Office of Children and Youth.( Kolupski dep. 5) Ms. Kolupski has held the Human Resources position since 2004. Her responsibilities subsume staff development including the student intern program. Indeed, she has had responsibilities relative to the student internship program for about twenty years. (Kolupski Dep. p. 8)

33. Although an intern is never guaranteed a position within the OCY agency, a high number of those interns completing their internship are hired into caseworker 2 positions. They skip the Caseworker 1 position and move directly into Caseworker 2 positions in which they make more money than would a caseworker 1. (Kolupski 20-23)

34. The Erie County Office of Children and Youth explicitly looks first to the student intern list to hire, and only if there are additional vacancies after that hiring will it turn to the competitive civil service list. Ms. Kolupski states that the intern classification was intended to recruit and retain qualified staff in child welfare and mental health service. Ms. Kolupski remarked that the agency has the opportunity to determine if the individuals are capable of doing the work, that the interns have been provided 975 hours of training to have knowledge and experience of the agency, the type of service and the client population. ( Kolupski dep. P. 24-26 ) Ms. Kolupski stated that when there is a vacancy the agency hires its student interns , and only if there were still slots remaining would the agency request a competitive civil service ( Kolupski p.26 )

35. The Civil Service intern list consists of college students who have been majoring in social work or a related study, for example sociology. ( Kolupski p.9, 10 ) The Erie County Office of Children and Youth communicates regarding its expectations with three local colleges with social work programs.

36. The Commission does not assert that social workers hired through the intern program are either better in their performance or their longevity. However, they are paid, during their internship. (Deltoro p. 67, 68)

37. The Commission does not have a policy or procedure as to when it will provide a

caseworker intern list or the County Social Caseworker list; it simply provides whichever is requested. Deltoro p. 67, 68

38. However, the intern program is targeted to a narrow group, college juniors; even for seniors it is too late to enter the intern program. These junior applicants are then positioned to serve internships during their senior year. ( Deltoro p.52-53) Mr Deltoro's  understanding sense of the interns is that they  are generally under twenty five, an inevitability given the internship program's structure.

39. When the student intern completes six months, about 975 hours of employment , the intern becomes eligible to be promoted from Intern to County Caseworker 2.( Deltoro p. 85)  If the intern performed satisfactorily and there were a position available the intern would generally get the job; indeed Mr. Deltoro had not heard of any example of a such an intern not receiving a position.  (Deltoro dep. P.  84-87 )The internship program can even be taken in two three month sessions instead of six months, and one can even carry out the second three month stint after graduation.  (Del Toro dep. p. 105 )

40.  An applicant is a County Social Caseworker Intern, "once she has taken the test, gotten on the list, found to be within the reach on that list, based on all the rules you were describing, officially appointed by the agency, under Civil Service rules, as a County Social Casework Intern, with a particular effective date."  The 975 hours internship is both a probationary period and without further action  qualifies the individual to be a County Caseworker 2. ( Deltoro p. 111-116, Kolupski p. 12)

41. Counties sometimes request civil Service lists of people who are qualified to be caseworkers 1,2 or  3.( Deltoro p.121)

42.     Participants in the intern program are paid with stipends from the state. (Kolupski p.13, 30) Additionally when hired as caseworkers the rising interns become caseworker 2's and need not serve a probationary period as persons hired off the competitive list must.( Kolupski31, 32 )

43.     The Commission could provide both intern lists and competitive examination lists in response to a county request for either, but there is no rule or practice of the Commission to guide a county in which list it could or should use.( Deltoro p.124-125)

44.     In the past, most probably prior to 1988, the unpaid interns in the Office of Children and Youth, Mental Health Agencies and Area Agencies on Aging who wished to be hired took the competitive civil service exam. ( Kolupski dep. Pp. 41-42)  The problem from the agencies' viewpoint was that the Civil Service examination process got in the way of their hiring their interns. The use of a neutral merit Civil Service test sometimes places persons who had taken internships behind other candidates who had not. The 1988 creation of the intern classification was designed to let these agencies hire their interns. ( Kolupski 40-43)

45.     Interns and caseworkers alike are required to participate in one hundred and twenty hours of additional compulsory state training. (Kolupski 52-53 )

46.    The County Social Casework Intern List is particularly dominated by women. Defendant Exhibit 26 shows that of one hundred and seventy six appointments from November 1, 2002 to September 30, 2004 only twenty were men, twelve percent. Exhibit 28, appointments and Promotions from October 1,2002 to September 30,2004 shows that only 11.4 percent of appointees were male.

47.     The County Caseworker 2 appointments from October 1, 2002 to September 30, 2004 show that of four hundred and thirty eight appointments from the list ninety nine or twenty two

percent were male.( Defendant Exhibits 27, 29)

48. The competitive County Caseworker1 statistics show that twenty five percent of appointees are male Defendant( Exhibit 30 )

49. The Commission created and distributes to colleges and universities a DVD presentation explaining and touting the intern position. (Deltoro Dep. 91) Commission representatives would not generally direct a college student , prior to the senior year, to take the competitive Civil Service Exam since successfully engaging in the internship program will eventually lead to permanent employment.( DelToro dep. p.100)

50. When Mr. Dows was suspended from being hired because an eventually unsuccessful petition to remove him from the Civil Service list was pending, the County of Erie hired Angela Lawton who was thirty seven, Jessica Clark in her twenties, Christina Kirkpatrick in her twenties, and a Ms. Pearson in her late 30's to mid 40's ( Kolupski 67-72 )

51. An individual can change his or her election of the counties in which he wishes to work .(Deltoro 101-102 )

52. The "unassembled test" is an oxymoronic term in that applies to those class titles for which people do not sit for written examinations, but submit an application . (DelToro p. 32-4) The County Casework Intern position is filled through such an unassembled test. Indeed the County Social Casework Intern position announcement states that "No written test required."

53. Completing the application for Employment/Promotion and Application Supplement is taking the test.( Shartle p. 62)  As submitted  each "unassembled exam" or E&T, rating of "education and training" is assigned a numeric grade and that number is ranked with the grades assigned to other unassembled tests in order to create a statewide, excepting Philadelphia, ranked

civil service list for county intern.( Deltoro Tr.37 )

54. The intern candidate is provided a list showing her standing for every county in which she made herself available compared to other people who submitted unassembled examinations for those counties.( Deltoro Dep 47-49) This is the method used to create the County Social Casework Intern list ( DelToro Dep. 37-38, 43 )

55. When a county requests a County Social Casework Intern list, it is provided a list of the intern applicants who have indicated an interest in working in the requesting County.( Deltoro Dep p. 44.)

56. It is not known what percentage of candidates provide the form with data indicating gender and age. When the form is provided it would accompany the unassembled test so that a reviewer would under those circumstances know the gender and age of the applicant. ( Deltoro Dep 40)

57. If the Commission concludes that an individual does not have an essential requirement to sit for an exam he or she may have that decision reviewed ( Shartle 69), and to do this the Commission employee would primarily look to the evaluation guide. (Deltoro P. 35-37)

58. The unassembled test score reviews can result in a failure to be placed on the Intern list or inclusion on the list. (Deltoro Dep. p.137 )

                                                  /s/ William Taggart  
                                                  William Taggart, Esquire  
                                                  PA # 19984  
                                                  1400 Renaissance Centre  
                                                  1001 State Street  
                                                  Erie, Pennsylvania 16501-1834  
                                                  Phone (814) 4511180  
                                                  FAX (814) 451-1188  
                                                  Wtesq@aol.com  

C:\Program Files\WordPerfect Office X3\docs2006\plmatfct.wpd