IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAVID A. DOWS , | : | CIVIL ACTION |
|       Plaintiff | : | |
| | : | |
|     v. | : | NO. 04-341 Erie |
| | : | |
|  KATHERINE E. HOLTZINGER | : | Judge McLaughlin |
| CONNER, ESQ., Chairman | : | |
| PENNSYLVANIA CIVIL SERVICE | : | |
| COMMISSION and JOHN DOE , | : | |
|       Defendants | : | JURY TRIAL DEMANDED |

Part nine, Deposition Exhibits one through seven inclusive

# MANAGEMENT DIRECTIVE

**535.5 Amended**
Number

**COMMONWEALTH OF PENNSYLVANIA**

## GOVERNOR'S OFFICE

Subject:

### Use of Trainee Classes in the Classified Service

| By Direction Of: | Date: |
|---|---|
| *John J. Wilk* | September 12, 1996 |
| John J. Wilk, Executive Director, State Civil Service Commission | |

This directive announces policy and procedures for the use of trainee classes. This amendment contains major changes.

**1. SCOPE.** Applies to all agencies with classified service positions in state agencies identified in §3(d), *Civil Service Act of August 5, 1941, P.L. 752, as amended,* and political subdivisions of the Commonwealth which have contracts with the State Civil Service Commission (SCSC) for services and facilities as provided for in *§212, Civil Service Act.*

**2. POLICY.**

a. Agencies may use trainee classes to qualify employes for working-level positions.

b. Trainee classes will be established according to needs in the agency to fill positions where qualified candidates are not available or where training programs have been established to develop specialized skills.

c. All trainee positions shall be filled by established merit system procedures.

d. Temporary or emergency appointments in trainee classes must be approved by the Executive Director, SCSC, prior to appointment.

e. The probationary/training period for the trainee level shall be combined with that of the working-level and set at a minimum of three months (90 calendar days) and a maximum of 24 months (730 calendar days) to coincide with the length of training.

f. Probationary/training period for the trainee level may be extended at the discretion of the appointing authority, if written notice thereof is received by the employe not later than one workday before the expiration of the probationary/training period. A copy of the notice shall be submitted simultaneously to the Director. However, the probationary/training period, with or without an extension, may not exceed 24 months from the date of appointment.

g. No reduction of training periods will be authorized.

h. Trainees shall not attain regular status as trainees. Upon satisfactorily completing their training program, each will be promoted by means of position reclassification to the working-level job title for which trained and assigned regular status.

i. Regular status employes promoted, voluntarily demoted, or reassigned to trainee job titles shall be assigned probationary status. During the training period, including extensions thereof, those trainees who are found to be unsatisfactory will be returned to the position and status previously held. Also, during the first three months of training, trainees will be returned at their request to positions previously held.

DEPOSITION EXHIBIT

FEHGAD 800-631-6989

Distribution: _____ F _____

j. Failure to comply with the policies and procedures herein may result in the SCSC disallowing trainee appointments and in the Office of Administration (OA) withholding future use of trainee classes.

## 3. RESPONSIBILITIES.

a. **The OA, with Executive Board** approval, will establish trainee classes, designate appropriate pay rates, and specify duration of training periods for state agencies.

b. **The SCSC and the OA,** in coordination with the state funding agency, will establish trainee classes and specify duration of training periods for local government agencies.

c. **The SCSC** will recruit and examine candidates and establish eligible lists for trainee classes. In coordination with the OA and the employing agency, the SCSC will determine lines of promotion for trainee classes.

d. **Agencies** are to:

(1) Use Enclosure 1, which shows trainee classes, duration of training periods, and normal lines of promotion when establishing training level positions.

(2) Assess each trainee's education and work experience and prepare individual work-training plans. Copies of the approved work-training plan will be filed in the trainee's personnel folder. Retention of the file copies will be for two years following the training completion date. All approved training plans will be made available for periodic review by the SCSC, by the OA for state agencies, and the funding agency for non-state agencies (see Enclosure 2).

## 4. PROCEDURES.

| Action By | Step | Action |
|---|---|---|
| Employing Agency. | 1. | Posts all trainee positions. |
| | 2. | Requests appropriate certification(s) to fill vacancy(ies). Reference *Manual M580.1, Certification of Eligibles for the Classified Service*. |
| SCSC. | 3. | Issues appropriate certification(s). |
| Employing Agency Supervisor. | 4. | Makes selection(s). |
| | 5. | Prepares and authenticates a plan for each trainee declaring that: |
| | a. | A customized work-training plan has been developed for the trainee using the guidelines in Enclosure 2. |
| | b. | Training progress reports will be completed regularly in accordance with the work-training plan. |
| | c. | The trainee understands the work-training plan and has been furnished a copy. |
| | d. | The work-training plan and the training progress reports, when completed, will be available for review by SCSC and the OA. |

| Action By | Step | Action |
|---|---|---|

- Employing
- Agency
- Supervisor.

**6.** Submits the completed plan in original to the agency Personnel/Training Officer within 15 workdays after appointment of the trainee.

- Agency
- Personnel/
- Training Officer.

**7.** Notifies the requesting supervisor of acceptance or rejection within 10 workdays of receipt of the completed plan. In case of rejection, submits the reason for rejection in writing.

OA.

**8.** Periodically interviews randomly selected trainees.

- SCSC.
-

**9.** Automatically issues End-of-Training Report, CEC-711 to employing agency two months before the trainee's probationary period ending date.

Employing
Agency.

**10.** Promotes trainees who successfully complete their training periods to the job titles for which trained. Separates or returns to positions previously held, as applicable, those trainees who do not successfully complete the training at or before the end of the specified period.

-
-
-
-
-

**11.** Annotates a copy of the CEC-711, indicating as applicable, those trainees who have not successfully completed the training at or before the end of the specified period. Submits the annotated CEC-711 to the Technical Assistance and Audit Division (TAAD), SCSC, prior to the end of the training period. Extensions of the initial end-of-training period should also be notated indicating the new end-of-training period.

-
-
-

**NOTE:** If additional training time is required, state agencies must submit a written request to the Office of Administration, Training and Development Division. Non-state agency requests must be submitted to the state funding agency. State and non-state agencies must provide a copy to the SCSC identifying the amount of time needed and the reasons therefor. Such requests must be submitted 10 calendar days prior to the end-of-training period.

Enclosures:

　　1 – Classified Service Trainee Classes.
　　2 – Guidelines for Developing Individual Work-Training Plans for Trainees.

**This directive supersedes Management Directive 535.5 dated February 23, 1987.**

## CLASSIFIED SERVICE TRAINEE CLASSES

| Trainee Class Code | Working-Level Class Code | Class Title | Training Months |
|---|---|---|---|
| 01350 | | Communications Operations Specialist Trainee | 12 |
| | 01351 | Communications Operations Specialist 1 | |
| 01600 | | Computer Systems Intern | 6 |
| | | See Management Directive 515.17 | |
| 01605 | | Automated Technology Trainee | 12 |
| | 01610 | Computer Systems Analyst 1 | |
| | 01730 | Computer Programmer 2 | |
| 03400 | | Insurance Company Examiner Trainee | 12 |
| | 03410 | Insurance Company Examiner 1 | |
| 03890 | | Revenue Field Auditor Trainee | 12 |
| | 03900 | Revenue Field Auditor 1 | |
| 04528 | | Actuarial Associate 1 | 12 |
| | 04529 | Actuarial Associate 2 | |
| 06654 | | Employment Security Audit and Investigation Trainee | 12 |
| | 06655 | Employment Security Audit and Investigation Specialist | |
| 06703 | | Unemployment Compensation Tax Technician Trainee | 12 |
| | 06704 | Unemployment Compensation Tax Technician | |
| 07300 | | Appeals Referee Trainee | 12 |
| | 07310 | Appeals Referee | |
| 07349 | | Workers' Compensation Judge Trainee | 12 |
| | 07350 | Workers' Compensation Judge | |
| 0800A* | | Government Career Associate (Accounting & Business Administration) | 12 |
| 0800C* | | Government Career Associate (Corrections & Police) | 12 |
| 0800D* | | Government Career Associate (Data Processing) | 12 |
| 0800G* | | Government Career Associate (General) | 12 |
| 0800S* | | Government Career Associate (Social & Behavioral Sciences) | 12 |
| 08010 | | Administration and Management Trainee | 12 |
| | 01010 | Management Analyst 1 | |
| | 02300 | LCB Facilities Analyst 1 | |
| | 03470 | Life & Health Insurance Policy Examiner 1 | |
| | 03500 | Property & Casualty Insurance Policy Examiner 1 | |
| | 05010 | Personnel Analyst 1 | |
| | 05221 | Equal Opportunity Specialist 1 | |
| | 05370 | Insurance Investigator 1 | |
| | 05427 | Business Enterprise Analyst 1 | |
| | 06410 | Employment Security Specialist 1 | |
| | 08050 | Program Analyst 1 | |
| | 08110 | Budget Analyst 1 | |
| | 08630 | Administrative Officer 1 | |

| Trainee Class Code | Working-Level Class Code | Class Title | Training Months |
|---|---|---|---|
| 0803A* | | Administrative Analyst (Business Administration) | 12* |
| 0803B* | | Administrative Analyst (Computer Science) | 12 |
| 0803C* | | Administrative Analyst (Economics) | 12 |
| 0803D* | | Administrative Analyst (Mathematics) | 12 |
| 0803E* | | Administrative Analyst (Public Administration) | 12 |
| 0803F* | | Administrative Analyst (Labor Relations) | 12 |
| 0803G* | | Administrative Analyst (Political Science) | 12 |
| 0803H* | | Administrative Analyst (Personnel Assessment) | 12 |
| 08100* | | Pennsylvania Management Intern | 18 |
| 08180 | | Financial Programs Trainee | 12 |
| | 03020 | Accountant 1 | |
| | 03470 | Life and Health Insurance Policy Examiner 1 | |
| | 03500 | Property and Casualty Insurance Policy Examiner 1 | |
| | 03620 | Auditor 1 | |
| | 03700 | Audit Specialist 1 | |
| | 03730 | Corporation Tax Officer 1 | |
| | 08110 | Budget Analyst 1 | |
| | 08850 | Accounting Systems Analyst 1 | |
| 08900 | | Accounting Intern | 6 |
| | | See Management Directive 515.19 | |
| 09551 | | Retirement Technician Trainee | 12 |
| | 09552 | Retirement Technician | |
| 1110A-F | | Engineering Intern | 6 |
| | | (All parentheticals) See Management Directive 580.36 | |
| 11119 | | Civil Engineer Trainee | 12 or 15*** |
| | 1112B** | Civil Engineer Bridges | |
| | 1112G** | Civil Engineer General | |
| | 1112H** | Civil Engineer Hydraulic | |
| | 1112S** | Civil Engineer Structural | |
| | 1112T** | Civil Engineer Transportation | |
| | 11118** | Civil Engineer Supervisor | |
| 11600 | | Transportation Planning Specialist Trainee | 12 |
| | 10859 | Traffic Control Specialist | |
| | 11670 | Transportation Planning Specialist 1 | |

| Trainee Class Code | Working-Level Class Code | Class Title | Training Months |
|---|---|---|---|
| 12010 | | Engineering Technician | 12 |
| | 10300 | Highway Drafter | |
| | 10620 | Transportation Construction Inspector | |
| | 10780 | Bridge and Structural Drafter | |
| | 1084T | Traffic Control Technician 2 | |
| | 12220 | Transportation Survey Technician | |
| | 17147 | Real Estate Technician | |
| | 17150 | Real Estate Appraiser 1 | |
| | 17370 | Utility Relocation Technician | |
| 13300 | | Architectural Designer Trainee | 12 |
| | 13310 | Architectural Designer 1 | |
| 13400 | | Electrical Engineer Trainee | 12 |
| | 13410** | Electrical Engineer 1 | |
| 13500 | | Mechanical Engineer Trainee | 12 |
| | 13510** | Mechanical Engineer 1 | |
| 13600 | | Mining Engineer Trainee | 12 |
| | 13610** | Mining Engineer 1 | |
| 14000 | | Air Pollution Control Engineer 1 | 12 |
| | 14010 | Air Pollution Control Engineer 2 | |
| | G2001 | Fixed Utility Valuation Engineer | |
| 14510 | | Sanitary Engineer Trainee | 12 |
| | 14520 | Sanitary Engineer 2 | |
| | G2001 | Fixed Utility Valuation Engineer 1 | |
| 14900 | | Geologist Trainee | 12 |
| | 14920 | Geologist 1 | |
| | 15020 | Hydrogeologist 1 | |
| 17570 | | Air Monitoring Equipment Specialist Trainee | 12 |
| | 17580 | Air Monitoring Equipment Specialist | |
| 30000 | | Aide Trainee | 6 |
| | 30010 | Psychiatric Aide | |
| | 30080 | Restoration Aide | |
| | 30320 | Nurse Aide | |
| | 31360 | Therapeutic Activities Aide | |
| | 31420 | Residential Services Aide, MR | |
| 30100 | | Forensic Security Employe Trainee | 12 |
| | 30110 | Forensic Security Employe 1 | |
| 39210 | | Public Health Program Representative 1 | 12 |
| | 39220 | Public Health Program Representative 2 | |
| 46030 | | Parole Agent 1 | 6 |
| | 46040 | Parole Agent 2 | |

| Trainee Class Code | Working-Level Class Code | Class Title | Training Months |
|---|---|---|---|
| 47200 | | Corrections Officer Trainee | 12 |
| | 47210 | Corrections Officer 1 | |
| 49080-49120 | | Public Services Trainee | 6 |
| | | See Management Directive 535.4 | |
| 54310 | | Park Manager Trainee | 12 |
| | 54320 | Park Manager 1 | |
| 60001 | | Waterways Conservation Officer Trainee | 12 |
| | 60000 | Waterways Conservation Officer | |
| 60100 | | Game Conservation Officer Trainee | 9 |
| | 60110 | Game Conservation Officer | |
| 61019 | | Fish Culturist 1 | 12 |
| | 61020 | Fish Culturist 2 | |
| 71060 | | Safety Inspector Trainee | 12 |
| | 71070 | Safety Inspector | |
| 71109 | | Boiler Inspector Trainee | 12 |
| | 71110 | Boiler Inspector | |
| 71209 | | Elevator Inspector Trainee | 12 |
| | 71210 | Elevator Inspector | |
| 72061 | | Forensic Scientist Trainee | 6 |
| | 72062 | Forensic Scientist 1 | |
| 75400 | | Environmental Trainee | 12 |
| | 28415 | Environmental Planner 1 | |
| | 71580 | Surface Mine Conservation Inspector | |
| | 75110 | Sanitarian | |
| | 75260 | Radiation Protection Specialist | |
| | 75410 | Air Quality Specialist | |
| | 75610 | Water Quality Specialist | |
| | 75810 | Solid Waste Specialist | |
| | 75910 | Mining Specialist | |
| 75500 | | Industrial Hygienist Trainee | 12 |
| | 75510 | Industrial Hygienist | |
| 91319 | | Highway Maintenance Manager Trainee | 15 |
| | 91320 | Highway Maintenance Manager 1 | |
| 97270 | | Water Treatment Plant Operator Trainee | 6 |
| | 97300 | Water Treatment Plant Operator | |
| 97280 | | Sewage Treatment Plant Operator Trainee | 6 |
| | 97310 | Sewage Treatment Plant Operator | |
| 97290 | | Mine Drainage Treatment Plant Operator Trainee | 6 |
| | 97320 | Mine Drainage Treatment Plant Operator | |

| Trainee Class Code | Working-Level Class Code | Class Title | Training Months |
|---|---|---|---|
| G1000 | | Fixed Utility Financial Analyst Trainee | 12 |
| | G1001 | Fixed Utility Financial Analyst 1 | |
| | G4001 | Utility Energy and Conservation Analyst 1 | |
| G1100 | | Public Utility Auditor Trainee | 12 |
| | G1101 | Public Utility Auditor 1 | |
| G2000 | | Fixed Utility Valuation Engineer Trainee | 12 |
| | G2001 | Fixed Utility Valuation Engineer 1 | |
| G3000 | | Transportation Tariff Examiner Trainee | 12 |
| | G3001 | Transportation Tariff Examiner 1 | |
| G3100 | | Transportation Application Specialist Trainee | 12 |
| | G3101 | Transportation Application Specialist | |
| L0002 | | County Public Services Trainee Clerical Services | 3 to 6 |
| | L0011 | Clerk 1 | |
| | L0021 | Clerk Stenographer 1 | |
| | L0031 | Clerk Typist 1 | |
| | L0081 | Stock Clerk 1 | |
| L0003* | | County Public Services Trainee Human Services | 3 to 6 |
| L0044 | | Data Recording Machine Trainee | 6 |
| | L0045 | Data Recording Machine Operator | |
| L0310 | | Accountant Trainee | 12 |
| | L0311 | Accountant 1 | |
| L0350 | | Field Auditor Trainee | 12 |
| | L0351 | Field Auditor 1 | |
| L0400* | | Administrative Analyst (Public Admin.) | 12 |
| L0430 | | Computer Operation Trainee | 6 |
| | L0431 | Computer Operator 1 | |
| L0434 | | Computer Programming Trainee | 6 |
| | L0435 | Computer Programmer 1 | |
| L0560 | | Planner Trainee | 12 |
| | L0561 | Planner 1 | |
| L0618 | | County Social Casework Intern | 6 |
| | L0624 | County Caseworker 2 | |
| | L0635 | Aging Care Manager 2 | |
| L0647 | | Aging Care Manager 1 | 6 |
| | L0635 | Aging Care Manager 2 | |
| L0680 | | Drug/Alcohol Prevention Specialist Trainee | 12 |
| | L0681 | Drug/Alcohol Prevention Specialist | |

| Trainee Class Code | Working-Level Class Code | Class Title | Training Months |
|---|---|---|---|
| L0685 | | Drug/Alcohol Case Management Specialist Trainee | 12 |
| | L0686 | Drug/Alcohol Case Management Specialist | |
| L0690 | | Drug/Alcohol Resident Worker Trainee | 6 |
| | L0691 | Drug/Alcohol Residential Worker | |
| L0700 | | Drug/Alcohol Treatment Specialist Trainee | 12 |
| | L0710 | Drug/Alcohol Treatment Specialist | |
| L0770 | | Psychological Services Associate Trainee | 12 |
| | L0771 | Psychological Services Associate 1 | |
| L0780 | | Rehabilitation Counselor Trainee | 12 |
| | L0781 | Rehabilitation Counselor 1 | |
| L0785 | | Residential Program Trainee | 6 |
| | L0786 | Residential Program Worker | |
| L0881 | | Therapeutic Recreational Services Trainee | 12 |
| | L0882 | Therapeutic Recreational Services Worker | |
| L0901 | | Vocational Adjustment Services Trainee | 6 |
| | L0902 | Vocational Adjustment Services Worker | |
| L0910 | | Volunteer Resources Coordinator Trainee | 12 |
| | L0911 | Volunteer Resources Coordinator 1 | |
| L0930 | | Youth Development Counselor Trainee | 12 |
| | L0931 | Youth Development Counselor 1 | |
| L1040 | | Homemaker Trainee | 6 |
| | L1041 | Homemaker | |
| L1164 | | Aide Trainee | 6 |
| | L0651 | Mental Retardation Aide 1 | |
| | L0865 | Therapeutic Activities Aide | |
| | L1165 | Psychiatric Aide 1 | |
| R9556 | | SERS Retirement Counselor Trainee | 12 |
| | R9557 | SERS Retirement Counselor | |

*Working-level job title(s) to be identified by user agency subject to OA and SCSC review and approval.

**Necessary Special Requirement: Certain positions in this class will require licensure as a professional engineer by the Commonwealth of Pennsylvania or a reciprocal jurisdiction. These are positions where there can be no exemption from such licensure, as defined under *Section 5, Exemption from Licensure, Professional Engineers Registration Law (as amended)*.

***The standard training period is 15 months. However, the training period may be reduced to 12 months if the trainee has appropriate summer intern work experience.

Requests for the use of job titles not listed should be sent to the Training and Development Division, Bureau of Personnel. OA, for state agencies and the SCSC for non-state agencies.

**Current as of Executive Board Amendment No. 591**

## GUIDELINES FOR DEVELOPING INDIVIDUAL
## WORK-TRAINING PLANS FOR TRAINEES

The following applies to the development of individual work-training plans.  Each will:

1.  Begin with a brief general statement of purpose to include the following elements:

    a.  Space for trainee's name, social security number, employe number for state agencies, work location, and telephone number.
    b.  Name of the department/commission/bureau/division/etc. providing the training experiences.
    c.  Beginning and ending dates of the training period.
    d.  Specific training experiences to be provided.
    e.  Trainee job title and working level job title.

2.  Identify specific performance-based objectives to be accomplished by the conclusion of the training period.

    a.  Each objective should describe what the trainee should be able to do.
    b.  Specific learning objectives should be stated for training experiences provided by each assigning division/unit/etc.

3.  Identify the person responsible for training.

4.  Include a schedule of training experiences to identify the step-by-step training process.  For each training experience the schedule should contain:

    a.  A detailed identification.
    b.  Objectives.
    c.  A specific time frame for each segment of training.
    d.  Name and job title of each supervisor.

5.  Identify all essential in-service and out-service training experiences to include:

    a.  Purpose.
    b.  Objectives.
    c.  Time frame.
    d.  Source.

6.  Identify the evaluator of the trainee's performance for each phase of the training experience.

7.  Provide name, position, date, and signature of trainee's supervisor.

8.  Provide name, position, date, and signature of trainee.

9.  Give a statement of approval or disapproval, including name, position, date, and signature of agency personnel training officer.  If disapproval is recommended, the reasons must be stated.



| NOTICE OF EXAMINATION RESULTS | Commonwealth of Pennsylvania State Civil Service Commission Harrisburg, PA. 17108-0569 | SCSC-5000 Rev. 04-97 |
|---|---|---|

| SOCIAL SECURITY NUMBER | VETERANS' PREFERENCE GRANTED | INFORMATION ACCURATE AS OF |
|---|---|---|
| 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 | YES | OCT. 16. 2002 |

NAME - ADDRESS

DOWS          D A
RR 3
EDINBORO          PA  16412

| JOB TITLE(S) | TEST RESULTS | ON LIST UNTIL | COUNTY | NUMBER ON LIST | | |
|---|---|---|---|---|---|---|
| | | | | HIGHER THAN YOU | SAME AS YOU | LOWER THAN YOU |
| DRUG & ALCOHOL CASE MANAGEMENT SPECIALIST TRAINEE | 100 E | OCTO4 | ERIE | 0 | 0 | 12 |
| | | | CRAWFORD | 0 | 0 | 6 |
| DRUG & ALCOHOL CASE MANAGEMENT SPECIALIST......... | 100 E | OCTO4 | ERIE | 0 | 0 | 4 |
| | | | CRAWFORD | 0 | 0 | 3 |
| DRUG & ALCOHOL CASE MANAGEMENT SUPERVISOR......... | INEL | | SEE COMMENT | Z03 | | |

    COMMENTS:
Z03 - YOU DO NOT HAVE THE REQUIRED EXPERIENCE.



DEPOSITION
EXHIBIT
2



| NOTICE OF EXAMINATION RESULTS | Commonwealth of Pennsylvania State Civil Service Commission Harrisburg, PA. 17108-0569 | SCSC-5000 Rev 04-97 |
|---|---|---|

| SOCIAL SECURITY NUMBER | VETERANS' PREFERENCE GRANTED | INFORMATION ACCURATE AS OF |
|---|---|---|
| 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 | YES | NOV. 13. 2002 |

NAME - ADDRESS

```
DOWS            D A
RR 3
EDINBORO           PA  16412
```

| JOB TITLE(S) | TEST RESULTS | ON LIST UNTIL | COUNTY | NUMBER ON LIST | | |
|---|---|---|---|---|---|---|
| | | | | HIGHER THAN YOU | SAME AS YOU | LOWER THAN YOU |
| COUNTY CASEWORKER 1 (LOCAL GOVERNMENT)............. | 102 E | NOV04 | ERIE | 0 | 0 | 81 |
| | | | CRAWFORD | 0 | 0 | 65 |
| COUNTY CASEWORKER 2 (LOCAL GOVERNMENT)............. | INEL | | SEE COMMENT | Z03 | | |
| COUNTY CASEWORKER 3 (LOCAL GOVERNMENT)............. | INEL | | SEE COMMENT | Z03 | | |

```
    COMMENTS:
Z03 - YOU DO NOT HAVE THE REQUIRED EXPERIENCE.
```

DEPOSITION EXHIBIT
3
11/12/05
PENGAD 800-631-6989

3

## COMMONWEALTH OF PENNSYLVANIA

State Civil Service Commission     :     State Civil Service Commission

              v.                 :

ErieCounty Children and Youth,     :
ErieCounty Child Welfare Service     :     Appeal No. 23874

Earl Dryer                        John Onorato
Attorney for State Civil Service      Attorney for Appointing Authority
    Commission

## ADJUDICATION

The State Civil Service Commission (hereafter "Commission")[1] held an investigative hearing under Section 951(d) of the Civil Service Act to determine whether the Erie County Children and Youth, Erie County Child Welfare Service (hereinafter "Respondent") is in violation of the Civil Service Act or Rules when it makes appointments and/or enters into contractual arrangements with individuals that avoid civil service hiring procedures. A hearing was held on August 23, 2004, in the State Office Building in Pittsburgh, Pennsylvania, before Commissioner James W. Martin, Commissioner Marwan Kreidie, and Chairman Katherene E. Holtzinger Conner, who presided.

The Commissioners have reviewed the Notes of Testimony and exhibits introduced at the hearing. The issues before the Commission are whether the following have been violated: (1) Section 903 of the Civil Service Act, which prohibits obstructing any person in regard to the right of appointment; (2) Section 501 of the Civil Service Act, which requires that appointments to civil service positions be accompanied by use of an eligible list established by the SCSC; (3) Rule 103.5 (4 Pa. Code § 103.5), which requires each appointing authority to report all appointments or any change in

http://www.scsc.state.pa.us/Adjdoc/23874.htm



12/6/04

positions to the Commission's Executive Director.

## FINDINGS OF FACT

1.      An investigative hearing was convened before this Commission under Section 951(d) of the Civil Service Act.[2]

2.      In a contract dated June 26, 1973, the SCSC, the Department of Public Welfare, and Erie County entered into an agreement which provides that all positions in the County Child Welfare Agencies shall be considered to be in the classified service as defined in the Civil Service Act, and that the Civil Service Act and Rules shall apply to all Child Welfare personnel of Erie County as though originally specified[3] in the Civil Service Act.  SCSC Ex. 1.

3.      In November of 2003, David Dows wrote a letter to the SCSC requesting information concerning eligible lists issued by the SCSC to Respondent for the position of Caseworker.  N.T. pp. 21-22.

4.      Dows indicated to Steve Shartle, Chief of the Division of Audit and Technical Services at SCSC that he, Dows, had previously been employed as a Caseworker with Respondent: .  N.T. p. 22.

   a.      Respondent appointed Dows to a per diem Professional position effective August 4, 2003.  SCSC Ex. 13.

   b.      Dows was involuntarily removed from the position effective October 10, 2003.  N.T.

pp. 22, 25; SCSC Ex. 13.

5.  When Shartle reviewed the SCSC computer records of caseworkers for Respondent, which had no indication that Dows had been an employee of Respondent. N.T. p. 22.

6.  Patrice Berchtold, Human Resource Analyst 2 with Respondent, advised Shartle that Dows had been a per diem employee of Respondent who had been fired but that this had not been reported to the SCSC. N.T. pp. 22, 25.

7.  Respondent hired per diem employees on a substitute basis to determine if they would work out and become permanent civil service employees. N.T. p. 22.

8.  Berchtold advised Shartle that Respondent had hired two Clerk Typists, Michele Tharp and Lisa Traeger, without civil service certifications. N.T. p. 26.

9.  Traeger was added to Respondent's payroll as a per diem Clerk Typist effective June 16, 2003. SCSC Ex. 2.

10.  Tharp was added to Respondent's payroll as a per diem Clerk Typist effective November 17, 2003. SCSC Ex. 3.

11.  Neither Traeger's nor Tharp's appointment was reported to the SCSC. N.T. p. 31.

12.  Respondent terminated Tharp and Traeger on March 31, 2004.  N.T. pp. 27-28.

13.  In February 2004, Shartle and another SCSC staff member performed an audit of Respondent's civil service personnel transactions, including appointments, made during the prior 18 months.  N.T. p. 28.

14.  As part of the audit, Shartle reviewed Respondent's personnel records and spoke with Berchtold; Colleen Locke, a Human Resource Analyst 3; and Debbie Liebel, the Administrator of Respondent.  N.T. pp. 28-29.

15.  The personnel records revealed the following personnel transactions:

   a.  Respondent promoted Nicole Johnson to the position of Caseworker 1 effective May 10, 2004.  N.T. pp. 38-40; SCSC Ex. 4, p. 2.

   b.  Respondent did not notify the SCSC of Johnson's promotion to Caseworker 1: the SCSC's records indicated that Johnson was appointed to Social Casework Intern (Local Government) on January 5, 2004.  N.T. pp. 38, 40.

   c.  Shannon Randall worked as a County Caseworker 2 at Respondent. Randall left effective July 23, 2004 to take another position.  Respondent did not report Randall's separation from employment to the SCSC.  N.T. pp. 41, 79; SCSC Ex. 5.

   d.  Effective May 24, 2004, Respondent promoted Barbara Kowalski to the position of Statistical Assistant. Respondent reported the effective date of

the promotion to the SCSC as June 29, 2004. SCSC Ex. 6.

e.   Respondent promoted Tami Petrucelli to the position of Casework Supervisor effective May 3, 2004. Respondent reported to the SCSC that the effective date of the promotion was May 4, 2004. SCSC Ex. 6.

f.   Respondent promoted Edith Joseph to the position of Casework Supervisor, effective January 31, 2003. The effective date reported to the SCSC was February 3, 2003. N.T. p. 45; SCSC Ex. 6, pp. 5-6.

g.   A certification for Joseph's promotion was not issued by the SCSC until February 3, 2003. N.T. p. 45.

h.   Respondent appointed Ann Marie DeSantis to the position of Clerk 3, effective October 13, 2003. The effective date reported to the SCSC was December 12, 2003. N.T. pp. 46-47; SCSC Ex. 6, p. 7.

i.   Respondent promoted Karen Heberle to the position of Casework Supervisor effective October 6, 2003. The effective date reported to the SCSC was October 17, 2003. N.T. p. 47; SCSC Ex. 6, pp. 13-14.

j.   Respondent promoted Laura Deitsch from Social Casework Intern to Caseworker effective July 1, 2003. The effective date reported to SCSC was July 14, 2003. N.T. p. 47; SCSC Ex. 6, pp. 18-19.

k.   Respondent promoted Brian Davis from per diem professional to Caseworker 1, effective June 16, 2003. Respondent reported the personnel transaction to the SCSC as a promotion from Social Casework Intern to County Caseworker 2

(Local Government) on July 14, 2003. SCSC Ex. 6, pp. 20-21.

l.      Respondent promoted Rita Yannayon to Clerk Typist 3 effective May 19, 2003 while Yannayon was in probationary status as a Clerk Typist 2. The posting for the position required that candidates have regular status. N.T. p. 49; SCSC Ex. 6, pp. 22-24.

m.     Respondent reported to the SCSC an effective date of October 23, 2003 for Yannayon's promotion. N.T. p. 49; SCSC Ex. 6, pp. 22-24.

n.     Respondent appointed Frank Rodriguez to a per diem position as a Juvenile Counselor effective June 3, 2003. The SCSC had no record of Rodriguez's employment[4] with Respondent. N.T. p. 52; SCSC Ex. 7.

o.     Respondent appointed Karen Dabrowski to the per diem position of Juvenile Counselor on June 3, 2003. N.T. p. 52; SCSC Ex. 8.

p.     Respondent appointed Maureen Legler to a per diem clerical position on July 1, 2003. SCSC Ex. 9.

q.     Legler left the position on August 22, 2003 in order to return to college; however, she was again appointed to a per diem position as a Clerk Typist on December 15, 2004 and remained in the position until January 7, 2004. SCSC Ex. 9.

r.     Neither of Legler's appointments was reported to SCSC. N.T. p. 54.

s.     Respondent appointed Jennifer Frank to a per diem Clerk Typist position on July 9, 2003. SCSC Ex. 10.

t.  Frank voluntarily left employment with Respondent on August 22, 2003. SCSC Ex. 10.

u.  Respondent did not report Frank's employment to the SCSC. N.T. p. 54; SCSC Ex. 10.

v.  Respondent appointed Christina Duska to a per diem Clerk Typist position effective September 29, 2003. N.T. p. 55. Duska voluntarily left the position effective November 24, 2003.[5] SCSC. Ex. 11.

w.  Neither Duska's appointment nor her leaving the position was reported to the SCSC. N.T. pp. 55-56.

16.  The effective dates of the personnel transactions were different than the dates reported to SCSC. N.T. pp. 38-55; SCSC Exs. 4-10.

17.  Respondent sends paperwork concerning personnel transactions to the Department of Public Welfare, which inputs the information into the SCSC computer system that contains the records of personnel transactions. N.T. p. 79.

18.  On February 28, 2004, several administrators of Respondent retired. N.T. pp. 130-131.

19.  The retirements resulted in a reorganization of the Office of Children and Youth and resulted in Colleen Locke taking over the duties of Assistant Director. N.T. p. 131.

20.  Respondent requested and was issued by the SCSC a

certification of eligibles for the reassignment of Locke to Children and Youth Assistant Administrator 2 (Local Government) effective March 1, 2004. N.T. p. 62; SCSC Ex. 14.

21.   Locke had previously been classified as a Personnel Analyst 3 for approximately two-and-a-half years. In that position, Locke had served as Respondent's Personnel Director, Director of Court Related Services, and Director of Residential Services. N.T. pp. 127-128.

22.   Also effective March 1, 2004, Respondent processed a pay increase for Locke that raised her salary from $60,938 to $63,437 per year. N.T. p. 62; SCSC Ex. 14.

23.   As a result of the reorganization, some of the duties formerly performed by Locke were given to Carla Krott. N.T. p. 121.

24.   The County of Erie Personnel Change and Payroll Authorization form indicated that effective March 1, 2004 Krott was going from a position as Program Director, pay grade M-1, to Director of Administrative Services, pay grade M-2. SCSC Ex. 15.

25.   The comments on the form indicated, "Requesting transfer and reclassification of Ms. Krott to position vacated by transfer of Colleen Locke. Rate/salary represents a 4.2% increase." SCSC Ex. 15.

26.   Krott's civil service classification, County Casework Manager 2 (Local Government), remained the same. SCSC Ex. 15.

27.   On October 28, 2003, Respondent obtained a certification of eligibles for the full-time, substitute position of County Caseworker 2. N.T. p. 68; SCSC Ex. 19.

28.   David Dows appeared first on the October 28 certification with a final earned rating of 101. Dows is a veteran. SCSC Ex. 19.

29.   Tina Trohoske appeared second on the October 28 certification with a final earned rating of 92. Trohoske is not a veteran. SCSC Ex. 19.

30.   Respondent did not make any appointments from the October 28 certification. SCSC Ex. 19.

31.   On October 29, Respondent requested a list of part-time eligibles for the position of County Caseworker 2. N.T. pp. 69-70.

32.   On October 29, 2003, the SCSC issued certification 14313 for part-time, substitute County Caseworker 2 (Local Government) for Erie County. SCSC Ex. 18.

33.   Two eligibles from Erie County appeared on the October 29 certification: Trohoske and K. L. Dabrowski. SCSC Ex. 18.

34.    Several weeks before Respondent requested the part-time certification, Trohoske had changed her availability to indicate that she would accept part-time County Caseworker 2 positions. N.T. pp. 69-70; SCSC Ex. 17.

35.    Respondent appointed Trohoske to a part-time County Caseworker 2 position on November 12, 2003 from the October 29 certification.[6]  SCSC Ex. 18.

36.    On February 9, 2004, Respondent changed Trohoske's status from part-time employee to full-time employee as a County Caseworker 2. N.T. p. 71; SCSC Ex. 19.

37.    At the time of the hearing, Respondent was no longer using per diem employees. N.T. pp. 112-113, 126.

## DISCUSSION

The Commission convened a hearing under Section 951(d) of the Civil Service Act to allow the parties to present evidence in support of their respective positions regarding whether the hiring practices of Respondent are in violation of the Civil Service Act or Rules when it makes appointments and/or enters into contractual arrangements with individuals that avoid civil service hiring procedures. The hearing was convened to allow the Commission to investigate whether the following have been violated: (1) Section 903 of the Civil Service Act, which prohibits obstructing any person in regard to the right of appointment; (2) Section 501 of the Civil Service Act, which requires that appointments to civil service positions be accompanied by use of an eligible list established by the SCSC; (3) SCSC Rule 103.5 (4 Pa. Code § 103.5), which requires each appointing authority to report all appointments or any change in positions to the SCSC's Executive Director. In an investigatory hearing conducted under Section

951(d) of the Act, the Commission assesses no burden on either party.

In support of its position, the SCSC presented the testimony of Steve Shartle, the Chief of the Division of Audit and Technical Services at the SCSC. N.T. pp. 15-16. In response, Respondent presented the testimony of Patrice Berchtold, a Human Resource Analyst 2 with Respondent, and Colleen Locke, who was classified as a Children and Youth Assistant Administrator 2 (Local Government) with Respondent. N.T. pp. 22, 28-29.

The preliminary facts in the present case are largely undisputed. The SCSC, the Department of Public Welfare, and Erie County entered into a contract on June 26, 1973, which provides that all positions in the County Child Welfare Agencies shall be considered to be in the classified service as defined in the Civil Service Act, and that the Civil Service Act and Rules shall apply to all Child Welfare personnel of Erie County as though originally specified in the Civil Service Act. SCSC Ex. 1.

In November of 2003, David Dows wrote a letter to the SCSC requesting information concerning eligible lists issued by the SCSC to Respondent for the position of Caseworker. N.T. pp. 21-22. During a subsequent conversation with Steve Shartle, Dows indicated that he had previously been employed as a Caseworker with Respondent. N.T. pp. 15-16, 22. Respondent had appointed Dows to a per diem "Professional" position effective August 4, 2003.[7] SCSC Ex. 13. Dows was involuntarily removed from the position effective October 10, 2003. N.T. pp. 22, 25; SCSC Ex. 13. Shartle reviewed the SCSC computer records for employment transactions of Respondent; there was no indication that Dows had been an employee of Respondent. N.T. p. 22.

Shartle subsequently spoke with Patrice Berchtold, the employee of Respondent who is the normal contact person for the SCSC. N.T. p. 22. Shartle testified that Berchtold advised him that Dows had been a per diem employee of Respondent who had been fired, and that this had not been reported to the SCSC.[8] N.T. pp. 22, 25. According to Shartle, Berchtold advised him that Respondent hired per

diem employees on a substitute basis to determine if they would work out and become permanent civil service employees. N.T. p. 22. Berchtold told Shartle that Respondent had hired two Clerk Typists, Michele Tharp and Lisa Traeger, without civil service certifications. N.T. p. 26. Traeger was added to Respondent's payroll as a per diem Clerk Typist effective June 16, 2003. SCSC Ex. 2. The County of Erie Personnel Change and Payroll Authorization form indicated that Respondent was recommending appointment of Traeger in "per-diem capacity to temporarily fill vacancy created by a transfer and reclassification of Jennifer Prichard. There were no AFSCME bidders and no one available on the Civil Service List." SCSC Ex. 2. Tharp was added to Respondent's payroll as a per diem Clerk Typist effective November 17, 2003. SCSC Ex. 3. The County of Erie Personnel Change and Payroll Authorization form indicated that Tharp was being recommended to "fill clerical vacancy created by a clerk typist on medical leave (Marion Klocko.) Anticipated duration 4-6 weeks." SCSC Ex. 3. Shartle advised Berchtold that Respondent would have to fill the positions held by Traeger and Tharp through the normal civil service procedures. N.T. p. 26.

Shartle further testified concerning the SCSC's actions after learning that Tharp and Traeger had been appointed without civil service certifications. These actions included issuing Respondent a comparable list, a list for Clerk Typist 3. N.T. p. 26. After surveying the list, only one eligible was available—this was the same person who had been available in March or April of 2003 when Respondent had looked at the Clerk Typist 3 list. N.T. p. 26. Consequently, the SCSC's Bureau of Personnel Assessment performed a localized test for Respondent. Candidates were added to the list of eligibles and a certification was issued to Respondent. N.T. p. 27. Respondent hired two Clerk Typist 3s from the certification. Tharp and Traeger were not within the rule of three on the certification and were ultimately terminated, effective March 31, 2004. N.T. p. 28; SCSC Exs. 2-3.

Shartle also testified that there are procedures under the Civil Service Act for filling positions on a substitute basis and for making emergency appointments. N.T. pp. 23-24. Shartle explained that substitute positions in the classified service are filled in the same manner as other civil service positions: using a list or other method of

filling a position permitted by the civil service regulations. N.T. pp. 23-24. Concerning emergency appointments, Section 606 of the Act provides,

> Any appointing authority or any subordinate authorized by him may, to prevent serious impairment of the public business when an emergency arises and time will not permit securing the authorization from the director for the appointment of a certified eligible, appoint any qualified person during the emergency for a period not exceeding thirty days and may with the approval of the commission be extended for a further period not to exceed thirty days. The existence of a vacancy of which the appointing authority has had reasonable notice or of employment conditions of which the appointing authority had previous knowledge shall not be considered an emergency. Persons thus appointed shall be known as emergency employees. Appointing authorities shall forthwith report to the director all emergency appointments, and such appointments shall not be renewed.

71 P.S. § 741.606. Section 3 of Management Directive 515.3, "Classified Service Emergency Appointments," requires that the appointing authority submit the required supporting documentation for an emergency appointment to the SCSC within five days after the effective date of the appointment. The documentation consists of a civil service application, employment questionnaire, research questionnaire, a personnel authorization form or report of personnel transactions for non-state employees, and a written explanation of the circumstances which necessitated the emergency appointment.

Shartle testified that at the end of February 2004, he and another SCSC staff member performed an audit of Respondent's personnel transactions, including appointments, made during the prior 18 months. N.T. p. 28. As part of the audit, Shartle reviewed Respondent's personnel records and spoke with Berchtold, Colleen Locke, and Debbie Liebel, the Administrator of Respondent. N.T. p. 28. Shartle testified that during the audit, Respondent was cooperative and provided Shartle with access to any file that he wanted. N.T. p. 76. After the audit was complete, Respondent provided Shartle with further documentation of personnel transactions.

N.T. pp. 36-37.

Shartle discovered a number of personnel transactions that had not been reported to the SCSC.[9]  Shartle also testified that the effective date for an appointing authority's personnel transaction should be the same as the date reported to the SCSC. N.T. p. 44.  Shartle acknowledged that Respondent sends paperwork concerning personnel transactions to the Department of Public Welfare which inputs the information into the computer system that contains the records of personnel transactions. N.T. p. 79.  The SCSC presented evidence concerning a number of personnel transactions for which the date of the transaction was different than the date reported for the transaction to the SCSC.[10]

Shartle also testified concerning anomalies in other personnel transactions of Respondent.  Respondent promoted Rita Yannayon to Clerk Typist 3 effective May 19, 2003 while Yannayon was in probationary status as a Clerk Typist 2.  Yannayon had been appointed as a Clerk Typist 2 in the beginning of April 2003.  SCSC Ex. 6, pp. 22, 24.  The posting for the position required that candidates have regular status in order to be promoted. N.T. p. 49; SCSC Ex. 6, pp. 22-24.  Respondent reported to the SCSC an effective date of October 23, 2003 for Yannayon's promotion. N.T. p. 49; SCSC Ex. 6, pp. 22-24.

The SCSC also presented evidence of "per diem" appointments that Respondent had made.[11]  Shartle testified that per diem employees are not recognized under the Civil Service Act or Rules.  Per diem was used by Respondent as an internal designation for an employee who would be part-time or as an employee who is in the position for a short period of time as a substitute. N.T. p. 98.  Shartle explained that the SCSC does recognize part-time or substitute employees who are hired through normal civil service procedures. N.T. p. 98.

The SCSC also presented evidence concerning what appears to be an attempt by Respondent to avoid appointing Dows to a Caseworker position in the fall of 2003.  On October 28, 2003, Respondent obtained a certification of eligibles for the

full-time, substitute position of County Caseworker 2. N.T. p. 68; SCSC Ex. 19. David Dows, a veteran, was first on the October 28 certification with a final earned rating of 101. SCSC Ex. 19. Tina Trohoske, who is not a veteran, appeared second on the October 28 certification with a final earned rating of 92. SCSC Ex. 19. Respondent did not make any appointments from the October 28 certification. SCSC Ex. 19. On October 29, Respondent requested a list of part-time eligibles for the position of County Caseworker 2. N.T. pp. 69-70. On October 29, 2003, the SCSC issued certification 14313 for part-time, substitute County Caseworker 2 (Local Government) for Erie County. SCSC Ex. 18. Two eligibles from Erie County appeared on the October 29 certification: Tina Trohoske and K. L. Dabrowski. SCSC Ex. 18. Several weeks before Respondent requested the part-time certification, Trohoske had changed her availability to indicate that she would accept part-time County Caseworker 2 positions. N.T. pp. 69-70; SCSC Ex. 17. Respondent appointed Trohoske to a part-time County Caseworker 2 position on November 12, 2003 from the October 29 certification.[12] SCSC Ex. 18. On February 9, 2004, Respondent changed Trohoske's status from part-time employee to full-time employee as a County Caseworker 2. N.T. p. 71; SCSC Ex. 19.

Shartle also testified concerning a change in Colleen Locke's classification. Locke had been classified as a Personnel Analyst 3 for approximately two-and-a-half years. Locke testified that in that position, she had served as Respondent's Personnel Director, Director of Court Related Services, and Director of Residential Services. N.T. pp. 127-128. Respondent requested and was issued by the SCSC a certification of eligibles for the reassignment of Locke to Children and Youth Assistant Administrator 2 (Local Government) effective March 1, 2004. N.T. p. 62; SCSC Ex. 14. Also effective March 1, 2004, Respondent processed a pay increase for Locke that raised her salary from $60,938 to $63,437 per year. N.T. p. 62; SCSC Ex. 14. Shartle testified that this transaction looked like a promotion. N.T. p. 63. Berchtold testified that the personnel action was not a promotion because Locke remained in the same pay grade; the personnel action was a meritorious pay increase.

According to Locke, on February 28, 2004, several administrators of Respondent retired. N.T. pp. 130-131. The retirements resulted in a reorganization of the Office of Children and Youth, and in Locke taking over the duties of Assistant Director. N.T. p. 131. Berchtold testified that as a result of the reorganization, some of the duties formerly performed by Locke were given to Carla Krott. N.T. p. 121. The County of Erie Personnel Change and Payroll Authorization form indicated that effective March 1, 2004, Krott was going from a position as Program Director, pay grade M-1, to Director of Administrative Services, pay grade M-2. SCSC Ex. 15. The comments on the form indicated, "Requesting transfer and reclassification of Ms. Krott to position vacated by transfer of Colleen Locke. Rate/salary represents a 4.2% increase." SCSC Ex. 15. Krott's civil service classification, County Casework Manager 2 (Local Government), remained the same. SCSC Ex. 15. According to Berchtold, since Krott's classification remained the same, the personnel action was not a promotion. N.T. pp. 121-122.

Berchtold also testified on behalf of Respondent concerning the per diem appointments, including per diem appointments of student interns at Respondent. According to Berchtold, Respondent usually has four or five student interns who are part of a program whereby the interns are paid by the State and do not appear on the County's payroll. N.T. pp. 109-110. Davis, Deitsch, and Johnson were interns for Respondent in the program. Once the students graduate, their state stipend stops. N.T. p. 110. Locke testified that students must have 975 hours of time working in order to become permanent civil service employees. N.T. p. 135. According to Berchtold, "nine out of ten times they have not finished their civil service requirement of the 975 hours, so at that point . . . we put them on with the County as a per diem status, so we can pay them until they have finished their 975 hours. Then at that point we promote them to County Caseworker 2." N.T. p. 110. Berchtold testified that the use of per diem status was done in an attempt to, "Fill vacant positions with people we have already invested time and money into." N.T. p. 111.

According to Berchtold, per diem employees were allowed throughout the

County in all agencies. The per diem employees were not used often. They were also used at the Edmond Thomas Center, during busy times such as vacations, for clerical help, or if someone was on medical leave. N.T. pp. 123, 125. Concerning the Edmond Thomas Center, Locke testified that the center is a
24-hour facility that includes a detention center for delinquent children and a dependent child facility. N.T. p. 132. One or two of the shifts at the center were not fully covered by their full staff complement. N.T. p. 132.

Berchtold testified that Respondent did not submit the salaries paid to the per diem workers to the State for reimbursement. N.T. p. 111. Respondent no longer uses per diem employees; once Respondent became aware that this was not the proper procedure to fill positions, they stopped using per diems. N.T. pp. 112-113.

Berchtold also explained why there were often discrepancies between the dates of the personnel transactions and the dates recorded for those transactions on the SCSC's computer records. Berchtold explained that they must allow at least a week for the county paperwork to be approved by the county executive, and subsequently, the civil service paperwork is completed. N.T. pp. 113-114. The employee is required to complete an application and it is sent to the SCSC to obtain a certification. N.T. p. 114. According to Bercthold, it takes between two days and two weeks to obtain a certification. N.T. p. 114. For employees promoted, the employee begins receiving the increased pay as of the date of the county approval, but their probationary period starts as of the date of SCSC approval. N.T. p. 115.

A careful review of the evidence in the present case reveals that Respondent made numerous appointments and completed multiple personnel transactions in violation of the Civil Service Act and Rules. With regard to per diem employees, none of these employees was appointed pursuant to an eligible list as required by Section 501 of the Act. Furthermore, there is simply no provision in the Act or Rules that allows for the use of per diem employees that Respondent was using to staff various positions. What emerges from the evidence presented at the hearing is a disturbing pattern of Respondent appointing individuals to civil service positions

without according those individuals the appropriate civil service status. Use of such employees on a trial basis is completely unacceptable and directly contravenes the Act. Procedures are available under the Civil Service Act and Rules to appoint employees on a part-time, substitute,[14] or emergency basis, all while according the appointed individuals the appropriate civil service status. If Respondent had the need for employees on an emergency basis, they should have followed the procedures for emergency appointments under Section 606 of the Act and Management Directive 515.3. We note that Respondent has recognized the impropriety of using per diem employees and had ceased using them as of the date of the hearing. N.T. pp. 112-113, 126.

We also find that Respondent failed to notify the SCSC of personnel transactions as required by the Commission's Rules. Commission Rule 103.5 requires each appointing authority to "promptly report to the Director an appointment or change in position, status or residence of an employee in the classified service under its jurisdiction, or a permanent change in the salary or other basis upon which an employee is paid and the effective date of the change." 4 Pa. § Code 103.5. As noted previously, none of the employees appointed to per diem positions were reported to the SCSC; the SCSC did not have any record of these employees. Respondent also failed to report to the SCSC Nicole Johnson's

promotion or Shannon Randall leaving the employment of Respondent. We also note the discrepancies in the dates of the actual personnel transactions from the dates reported to the SCSC for numerous personnel transactions. As credibly explained by the SCSC's witness, these dates should have been the same; Respondent failed to report these personnel transactions promptly to the SCSC as required by Rule 103.5.

Concerning David Dows, the Commission's impression is that his case is a striking example of the consequence of failure to comply with the rules and regulations of the Commission. Had Respondent first hired Dows in accordance with the regulations, he would have been a probationary status employee. The Respondent would have had at least six months to evaluate Dows' performance and to remove him if he did not perform his job duties in accordance with the expectations of Respondent.

Dows would have had a remedy, but also his burden, before the Commission upon a showing of discrimination. Instead, Respondent utilized an improper per diem hiring that resulted in Dows involuntary removal; and, because the per diem hiring was not in compliance with the regulations, Dows performance in that role, good or bad, could not be considered by the Commission as a proper basis to remove Dows name from the list of eligible candidates for Caseworker 1.[15] Further utilizing other candidates in a part-time status to avoid hiring Dows compounded the error.

With regard to the college interns utilized by Respondent, the Commission notes that Respondent is no longer using per diem employees. That said, the Commission recognizes the tremendous value to using college internships and notes that there are several different programs and regulations to facilitate that concept.

Turning to the change in Colleen Locke's classification, while Respondent processed the personnel transaction as a reassignment, it appears to the Commission that this personnel action is more properly characterized as a promotion. Under the Commission's Rules, a promotion is, "The movement of an employee to another class in a pay range with a higher maximum salary." 4 Pa. Code § 91.3. A reassignment is defined as, "The movement of an employee from one position to another position in the same class or in a similar class for which the employee qualifies at the same maximum salary." 4 Pa. Code § 91.3. In Locke's case, we note that simultaneously, Respondent increased Locke's salary from $60,938 to $63,437, changed her classification from Personnel Analyst 3 to Children and Youth Assistant Administrator 2 (Local Government), and gave her new duties as Assistant Director. Respondent should have followed the proper procedures under the Act to promote Locke to the new position by appointing her from a list as required by Section 501 of the Act, or by following the procedures for promotion without examination provided for by Section 501, Commission Rule 95.7 (4 Pa. Code § 95.7), and Management Directive 580.19. With regard to the change in Krott's duties, we are unable to conclude, based upon the evidence in this record, that the change in Krott's position was a promotion.

Concerning Yannayon's promotion to Clerk Typist 3, Respondent promoted her to that position while she was still in probationary status as a Clerk Typist 2. Under the Act and Rules, an employee must have or have had regular status in order to be promoted without examination. *See* 71 P.S. § 741.501, 4 Pa. Code § 95.7(c) and Management Directive 580.19. We also note, however, that Respondent delayed processing the promotion of Yannayon with the SCSC until the time when Yannayon would have ordinarily achieved regular status as a Clerk Typist 2—a delay which we interpret as an attempt to conceal Yannayon's status.

Having found numerous irregularities and improprieties in Respondent's personnel transactions, we are directing that Respondent fully comply with the requirements under the Civil Service Act and Rules in its future personnel actions. This includes following the proper procedures with regard to appointments and promotions, and notifying the SCSC of its personnel transactions in a prompt manner. We further direct that an audit be performed by the SCSC's Bureau of Audit and Technical Services of Respondent's personnel transactions within twelve months of the date of this adjudication to ensure that Respondent's personnel transactions are compliant with the Civil Service Act and Rules. Accordingly, we enter the following

## CONCLUSIONS OF LAW

1.   Respondent has made appointments to civil service positions without the use of eligible lists established by the SCSC as required by Section 501 of the Civil Service Act, as amended.

2.   Respondent failed to promptly report appointments or changes in the position of employees under their jurisdiction as required by Commission Rule 103.5 (4 Pa. Code § 103.5).

3.   Respondent promoted employees to positions without

following the procedures under Section 501 of the Act, as amended, and Commission Rule 95.7 (4 Pa. Code § 95.7).


## ORDER

AND NOW, the State Civil Service Commission, by agreement of its members, directs the Erie County Children and Youth, Erie County Child Welfare Service to adhere to all requirements of the Civil Service Act and Rules in its appointments, promotions and all other personnel transactions. We further order that the Erie County Children and Youth, Erie County Child Welfare Service submit all required paperwork concerning personnel transactions to the SCSC in a timely fashion. At the conclusion of twelve months from the date of this order, the SCSC's Bureau of Audit and Technical Services will perform an audit of the personnel transactions of the Erie County Children and Youth, Erie County Child Welfare Service from the date of this order to ensure that they have complied with the Civil Service Act and Rules.

State Civil Service Commission


_____
Katherene E. Holtzinger Conner, Esquire
Chairman


_____
James W. Martin
Commissioner


_____
Marwan Kreidie
Commissioner

Mailed: November 23, 2004

---

[1] To avoid confusion, "Commission" will be used to indicate the adjudicatory branch of the State Civil Service Commission and "SCSC" will be used to indicate the administrative branch.

[2] Section 951(d) provides that:

> Notwithstanding any other provisions of this section, the commission may, upon its own motion, investigate any personnel action taken pursuant to this act and, in its discretion, hold public hearings, record its findings and conclusions, and make such orders as it deems appropriate to assure observance of the provisions of this act and the rules and regulations thereunder.

71 P.S. § 741.951(d).

[3] The contract contains several exceptions which are not relevant to the present case.

[4] Effective August 25, 2003, Rodriguez left his position. SCSC Ex. 7.

[5] The actual date listed on the Exhibit is November 24, 2004. SCSC Ex. 11.

[6] The County of Erie Personnel Change and Payroll Authorization form indicated that Trohoske was being appointed to a per diem Professional position "to fill vacant casework position due to unpaid long term leaves of absences." SCSC Ex. 20.

[7] The County of Erie Personnel Change and Payroll Authorization form indicated, "Recommending appointment of Mr. Dows in per-diem capacity to fill vacant casework positions due to unpaid long term leaves of absence. Rate/salary represents starting salary for Caseworker Trainee." SCSC Ex. 13.

[8] Prior to the investigatory hearing convened pursuant to Section 951(d) of the Act, Respondent had submitted a list removal request (Appeal No. LR2004-010) asking the Commission to remove Dows name from the eligible list for County Caseworker 1 and Caseworker 2. N.T. p. 9. By order dated May 4, 2004, the Commission denied the request and directed Respondent to promptly offer Dows a County Caseworker 2 position. Appeal No. LR2004-010.

[9] Details concerning these transactions are set forth in findings of fact 15.a through 15.c.

[10] Details concerning these transactions are set forth in findings of fact 15.d through 15.k..

[11] Details concerning these transactions are set forth in findings of fact numbers 33 through 43.

[12] The County of Erie Personnel Change and Payroll Authorization form indicated that Trohoske was being appointed to a per diem Professional position "to fill vacant casework position due to unpaid long term leaves of absences." SCSC Ex. 20.

[13] Berchtold also explained that Respondent's Executive Director, Debbie Liebel, had requested the pay increase from the County Commissioners. N.T. p. 118.

[14] Commission Rule 97.20 provides that substitute appointments or promotions "shall be made to fill permanent positions whenever the probationary or regular status incumbent of the position is: (1) On military, parental, sick or other leave where right of return is guaranteed. (2) Promoted." 4 Pa. Code § 97.20.

[15] This issue has been remedied by the Commission's order dated May 4, 2004 (Appeal No. LR2004-010) directing Respondent to offer Dows a County Caseworker 2 position. Because the Commission can take judicial notice of other proceedings, we note that Respondent did want to remove Dows based on his performance. As noted, however, Dows earlier employment with Respondent as a per diem on a trial basis was, like the other per diem appointments, not reported to SCSC and contrary to the regulations. Thus, effectively precluding the Commission from considering that experience as a legitimate reason to remove a candidate from the list of eligibles.

COMMONWEALTH OF PENNSYLVANIA

| | | |
|---|---|---|
| Erie County Office of Children, and Youth, | : | State Civil Service Commission |
|         Requesting Agency | : | |
| | : | |
|         v. | : | |
| | : | |
| David A. Dows, | : | |
|         Respondent | : | Appeal No. LR2004-010 |

## ORDER

AND NOW, upon careful review of the Erie County Office of Children and Youth's list removal request dated February 20, 2004, the State Civil Service Commission hereby denies the request.  Respondent's name will not be removed from the eligible list for a position as County Caseworker 1 and  County Caseworker 2 (Classification Code L0623). An  appropriate  remedy  will  be  provided  to  David  A.  Dows  in  accordance  with  the requirements of Management Directive 580.34.  The State Civil Service Commission will administratively extend David Dow's time on the eligible list for a period of time equal to the time period during which this request for removal was pending.  M.D. 580.34(3)(c)(2).  The eligible shall be notified in writing by the Commission that the required remedial action has been implemented.  A copy of the notice will be sent to the State Civil Service Commission's Executive Director within thirty (30) days of the date of this Order.

State Civil Service Commission

*Katherene E. Holzinger Conner, Esq.*

Katherene E. Holtzinger Conner, Esquire
Chairman

Mailed:  April 23, 2004



DEPOSITION
EXHIBIT

5



COMMONWEALTH OF PENNSYLVANIA

KATHERENE E. HOLTZINGER CONNER, Esq.
Chairman

BARBARA L. KRAUSE, Esq.
Commissioner

JAMES W. MARTIN
Commissioner

**STATE CIVIL SERVICE COMMISSION**
P.O. Box 569
Harrisburg, PA 17108-0569

RONALD K. ROWE
Executive Director

December 12, 2003

(717) 787-3094

Mr. David A. Dows
R.R. #3
Edinboro, Pennsylvania 16412

Dear Mr. Dows:

This is in response to your letter dated November 20, 2003 requesting information under the Pennsylvania Right to Know statute. The information requested is as follows:

1. As Steve Shartle, of my staff, explained to you by telephone, the Commission does not have the means to re-create a civil service list on a specific date. We are able to provide the requested information if a list, known as a Certification of Eligibles, was issued to the agency. The Erie County Children and Youth Services requested and the Commission issued a Caseworker 2 Certification of Eligibles on May 23, 2003 which is the closest date to the requested August 4, 2003. It is my understanding that in conversation with Mr. Shartle, you indicated that the information from May 23, 2003 is satisfactory. It should be noted that it would be inappropriate to provide age and gender information on specific applicants as requested. I have provided age ranges and numbers for each gender on the attached Certification of Eligibles (Number 6889 from May 23, 2003). Information on age and gender includes only the Erie County residents on the Certification of Eligibles because the Children and Youth Services give preference to county residents. Therefore, the information includes eligibles through and including L. Gamble. A. R. Lawton was selected from this certification.

2. The Certification of Eligibles provided was issued on October 28, 2003 which again is the closest date to the October 10, 2003 date requested. Again it is my understanding that you advised Mr. Shartle



DEPOSITION
EXHIBIT
6
PENGAD 800-631-6989

Mr. David A. Dows
Page 2
December 12, 2003

that this information would be satisfactory. The age and gender information on Certification of Eligibles (Number 14204 issued on October 28, 2003) includes eligibles to and including A. E. Fisher and these eligibles are county residents. There were no selections from this certification.

3. As County Caseworker 2 is not a state job title, the authority for the class is not processed via the Pennsylvania Code or Pennsylvania Bulletin. I have provided the examination announcement for County Caseworker 2 which provides information on the job. I have also provided the *Certification of Eligibles Manual*, M580.1, which provides agencies with instructions on hiring in any civil service job including County Caseworker 2.

4. As stated above in Number 3, the County Social Caseworker Intern is not a state job title and, therefore, is not included in the Pennsylvania Code or Pennsylvania Bulletin. I have enclosed the examination announcement for the class and Management Directive 535.5, *Use of Trainee Classes in the Classified Service*, which describes the use of training/intern classes including the County Social Casework Intern.

5. The information requested cannot be provided by this office. We suggest that you contact an attorney or other legal services to conduct the requested research.

If you have any questions, please contact my office.

Sincerely,

Ronald K. Rowe
Executive Director

Enclosures

| You must submit <u>Application Supplement No. 1988-984-2</u> with your Application for Employment/Promotion. | TEST ANNOUNCEMENT NUMBER: 1988-984 AMENDED AND REISSUED: August 24, 2001 |
| --- | --- |

### Commonwealth of Pennsylvania
### State Civil Service Commission

Examination



for

### COUNTY SOCIAL CASEWORK INTERN
### (Local Government)

NO WRITTEN TEST REQUIRED

| Exam. No. | Job Title | Job Code | Pay Schedule and Range * |
| --- | --- | --- | --- |
| 1. | County Social Casework Intern | L0618 | |

*Local government salaries vary. Contact the Personnel Office of the local government agency where you are interested in working for specific information.

APPLICATIONS WILL BE ACCEPTED UNTIL FURTHER NOTICE.

| NATURE OF WORK | JOB REQUIREMENTS |
| --- | --- |
| JOB OPPORTUNITIES | TESTING |
| TEST RESULTS | HOW TO APPLY |

### NATURE OF WORK

This is work of a training nature involving the performance of social casework duties. Employees participate in a structured six-month internship program in a local government agency, such as Children, Youth and Families, Mental Health/Mental Retardation, Drug and Alcohol, Area Agencies on Aging or other human services agencies. Interns may elect to serve one continuous six-month internship or two three-month internships. The six-month internship occurs sometime between the end of the first semester of the junior year and graduation. The two three-month

internships occur sometime between the end of the first semester of the junior year and approximately three months after graduation. (Variations of these time periods may be possible.)

Assignments are structured to provide practical work experience which applies general social work principles in order that knowledge acquired through course curriculum are transformed into working skills. Upon completion of the internship period, the employee can function competently in the field of social services. The intent of this program is to prepare employees and provide career opportunities for full-time employment in the field of social services.

## JOB REQUIREMENTS

Please make sure you meet all requirements. If after reading the requirements you are not sure you qualify, contact one of the Commission's offices listed at the end of this announcement.

You must be of good moral character and able to perform the essential functions of the job.

Some of the positions in these job titles come under the provisions of the Child Protective Services Law. If you are a final candidate for one of these positions, you will have to provide reports on your background from such sources as the Pennsylvania State Police and the Pennsylvania Department of Public Welfare. If you are a final candidate and not a Pennsylvania resident, you must also obtain a report of Federal Criminal History Record Information from the Federal Bureau of Investigation. If your background is unacceptable, you will be disqualified for employment in such positions. You will receive information about these requirements and how to obtain the required reports at the time you are being considered for employment.

Some of the positions in these job titles come under the provisions of the Older Adults Protective Services Act. If you are a final candidate for one of these positions, you will have to obtain a report of criminal record information from the Pennsylvania State Police or a statement that the State Police Central Repository contains no information relating to you. If you are a final candidate and not currently a Pennsylvania resident, or if you are currently a Pennsylvania resident and a final candidate but have not been a resident for two years prior to the date that you received notification that you are a final candidate, you are also required to furnish a report of Federal Criminal History Record Information from the Federal Bureau of Investigation. If your background is unacceptable, you will be disqualified for employment in such positions. You will receive information about this requirement and how to obtain the required reports at the time you are being considered for employment.

Minimum Requirements:
Enrollment as a full-time student with junior standing in an accredited undergraduate bachelor's degree program in sociology, social welfare, psychology, gerontology, or other related social sciences; completion of the first semester of the junior year (or 75 credits); and satisfactory completion of fifteen (15) credits in one of

the major fields of study.

NOTE:  Students who anticipate meeting the Minimum Requirements at the end of their current semester may apply. Selection for participation in the Intern program is conditional upon successful completion of the required education.

## JOB OPPORTUNITIES

### EQUAL OPPORTUNITY EMPLOYER

These positions are located throughout the State in local government Children, Youth and Families, Mental Health/Mental Retardation, and Drug and Alcohol programs, Area Agency on Aging (AAA) offices, and other human services agencies.

There are no current positions or expected future job openings in Philadelphia.

Employment preference may be given to residents in counties in which these job are located.

Employment preference may be granted to individuals aged 60 and over for jobs with the Area Agency on Aging Offices.

For the most recent information on job opportunities, contact the office(s) of the county program(s) where you are interested in working. See your local telephone directory for addresses and telephone numbers.

### TESTING

You will be rated on your experience and training. Your score will be based on what you report on your Application for Employment/Promotion and Application Supplement.

If you take the test and want to take it again, you may be retested after six months from the date of your "Notice of Examination Results." A new application and application supplement are required for a retest.

If your name is on an eligible list for these jobs and you take this test, your most recent examination result will be the only one counted.

### TEST RESULTS

County and State employment lists will be established. You will be notified in writing of your test results.

### HOW TO APPLY

Applications, Application Supplement No. 1988-984-2 and further information can be obtained from:

1.    State Civil Service Commission:

Harrisburg: 2nd Level, Strawberry Sq. Complex,
320 Market St., P.O. Box 569, Hbg., 17108-0569;
Telephone (Voice) (717) 783-3058, Text Telephone
**(Deaf/Hard-of-Hearing callers only)** (717) 772-2685

Philadelphia: 2nd Floor, 10 South 11th St., Phila., 19107;
Telephone (Voice) (215) 560-2253, Text Telephone
**(Deaf/Hard-of-Hearing callers only)** (215) 560-4367

Pittsburgh: State Office Building, Rm. 1503, 300 Liberty Ave.,
Pgh., 15222; Telephone (Voice) (412) 565-7666, Text Telephone
**(Deaf/Hard-of-Hearing callers only)** (412) 565-2484

Internet at http://www.scsc.state.pa.us

2.    Team Pennsylvania CareerLink Centers

3.    The county government programs listed under the "JOB OPPORTUNITIES"
section of this announcement

You must submit your application directly to the State Civil Service Commission,
Bureau of Information Technology Systems, P.O. Box 569, Harrisburg, PA 17108-
0569.

For further information on testing, assistance for persons with disabilities, veterans'
preference and other items, refer to the instructions provided with the "Application
for Employment/Promotion."

Return to Summary of Civil Service Examination Programs

Rev. 7/01

| SCSC USE | |
|---|---|
| Total Score | Evaluator |

| Social Security Number | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
|  |  |  |  |  |  |  |  |  |

**COMMONWEALTH OF PENNSYLVANIA**
**State Civil Service Commission**

**APPLICATION SUPPLEMENT NO. 1988-984-2**

**FOR**

**COUNTY SOCIAL CASEWORK INTERN**
**(L0618)**

BE SURE TO READ ANNOUNCEMENT NO. 1988-984 THOROUGHLY BEFORE YOU COMPLETE THIS SUPPLEMENT. THE ANNOUNCEMENT PROVIDES INFORMATION ON MINIMUM REQUIREMENTS, JOB DUTIES, EXAMINATION AND OTHER INFORMATION.

If you have any questions about eligibility for this job or about completing this Supplement or your Application for Employment/Promotion, contact one of the Pennsylvania Civil Service Commission's offices. The addresses and telephone numbers are listed at the end of the announcement.

**SECTION A – MINIMUM JOB REQUIREMENTS**
The following requirements must be met by all applicants.

1. Have you been or are you currently enrolled as a full-time student with junior standing in an accredited undergraduate bachelor's degree program?

Yes _____   No _____

School _____

Address _____

Graduation Date _____

2. Have you completed (by the end of the first semester of your junior year) 75 credits, which include completion of fifteen credits in your field of study? (Attach a transcript or a copy of a transcript.)

Yes _____   No _____

List field of study: _____

If you answered "No" to either of the above questions, do not complete the remainder of this Application Supplement and do not apply for this job title.

| Social Security Number | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |

If you answered "Yes" to both of the above questions, complete the rest of this Application Supplement.

## SECTION B – REPORTING YOUR EXPERIENCE AND TRAINING
Your Application and Application Supplement will be used to determine if you meet the minimum requirements for this job. It also will be used to rate your qualifications. The data you submit must be complete and accurate.

Before you complete this Supplement, please review it completely to familiarize yourself with the information you should report. Please type or print legibly. When reporting your training, list your college coursework under the appropriate subject area. When reporting your experience, be sure to report who you were employed by, your job title, when you were employed, and the section of your application where you reported this information. Enter your Social Security Number on all pages. Do not attach a resume and make remarks such as "see attached resume" to indicate your experience and/or training. Resumes do not usually contain sufficient detail as requested in this Supplement.

After you have finished, sign and date the statement in Section C on the last page of this Supplement.

| Social Security Number |
|---|
|  |  |  |  |  |  |  |  |  |

## 1. TRAINING

Listed below are a number of subject areas considered appropriate to the work of a County Social Casework Intern.  Indicate under each Subject Area heading the specific courses (and course numbers) you have successfully completely or expect to complete shortly.  If a course covers two or more subject areas, list it under the major subject area covered.  Do not list any course more than once.

| Subject Area | Sem. Hrs. | Subject Area | Sem. Hrs. |
|---|---|---|---|
| A.  Social Work | | F.  Community Development | |

| Subject Area | Sem. Hrs. |
|---|---|
| B.  Sociology | |

G.  Counseling

C.  Social Welfare

H.  Psychology

D.  Gerontology

I.  Technical Report Writing/Speech

E.  Interpersonal Relations

J.  List below other courses you believe are related and should be considered in your rating.

K.  List below (school related) clubs, extra-curricular activities in which you are a participating member, which are related to the subject areas listed above.

3

| Social Security Number |
|---|
|  |  |  |  |  |  |  |  |  |

2.  EXPERIENCE

| Provide the following information for each area of work experience: Employer Job Title Dates (From/To) Application Section | Describe your work experience (paid or volunteer) relating to the job of County Social Casework Intern.  This should include internships, practicums, and/or field placements.  Experience can be in any of the areas listed below. |
|---|---|
|  | Counseling |
|  | Social Welfare Institutions |
|  | Gerontology |
|  | Community Development |
|  | Any Other Related Field |

4

| Social Security Number | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
|  |  |  |  |  |  |  |  |  |

### SECTION C - AUTHENTICATION

I understand this Supplement and all additional sheets attached to it constitute part of my Civil Service Application for Employment/Promotion. I further understand that the oath attesting to the accuracy of the Application applies as well to all information presented in this Supplement and attachments. If requested, I will provide documentation and the names, addresses and phone numbers of persons who can verify the validity of the claims I make in this Supplement and the information reported elsewhere as part of this Application.

_____          _____
Signature of Applicant                             Name (Please Print)

_____          _____
Daytime Telephone Number                          Date

_____          _____
Address                                    City            State      Zip Code

PLEASE NOTE THAT THE RATING AND SCORING OF YOUR QUALIFICATIONS ARE A TEST. FOR THIS REASON, IT IS IMPORTANT THAT YOU SUBMIT COMPLETE AND ACCURATE DATA ABOUT YOUR BACKGROUND. ALL INFORMATION YOU SUPPLY IN CONNECTION WITH YOUR APPLICATION, AND THE CLAIMS YOU MAKE IN THIS SUPPLEMENT ARE SUBJECT TO VERIFICATION. ANY MISREPRESENTATION, FALSIFICATION OR OMISSION OF MATERIAL FACTS IS SUBJECT TO PENALTY.